UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KRISTI NOEM, in her official capacity as | ) | No. 25 C 12765 |
| Secretary of Homeland Security, | ) | |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY, FEDERAL EMERGENCY | ) | Judge Shah |
| MANAGEMENT AGENCY, and DAVID | ) | |
| RICHARDSON, in his official capacity as | ) | |
| Senior Official Performing the Duties of | ) | |
| FEMA Administrator, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**Table of Contents**

Table of Authorities ............................................................................................................ ii

Introduction .......................................................................................................................... 1

Background ........................................................................................................................... 2

   I.  Legal Background ...................................................................................................... 2

   II.  This Litigation .......................................................................................................... 4

Argument .............................................................................................................................. 5

   I.  Plaintiffs Have Failed to Establish This Court's Jurisdiction. ............................ 5

      A.  This Court Lacks the Power to Order Direct Monetary Payments. .............. 5

      B.  Plaintiffs Do Not Have Standing to Challenge Five Named Programs. ....... 7

   II.  Plaintiffs Are Unlikely to Succeed on the Merits. ............................................. 9

      A.  All Challenged DHS Conditions Are Lawful and Constitutional. ................ 9

         1.  The Anti-Discrimination Condition Is Constitutional. ........................... 9

            a.  The Anti-Discrimination Condition Does Not Violate the "Separation of
Powers." .................................................................................................... 12

            b.  The Anti-Discrimination Condition Does Not Violate the Spending Clause. 15

         2.  The EO Condition Is Constitutional. ...................................................... 18

            a.  The EO Condition Does Not Violate the "Separation of Powers." ............... 18

            b.  The EO Condition Does Not Violate the Spending Clause. ........................... 19

      B.  All Challenged DHS Conditions Do Not Violate the APA. ....................................... 20

         1.  Awards for Seven Grants Are Not Reviewable Because They Are Discretionary
Grants Committed to Agency Discretion................................................. 20

         2.  Plaintiffs' APA Claim Also Fails on the Merits. ................................... 22

   III.  Plaintiffs Have Failed to Demonstrate Irreparable Harm. ................................. 23

   IV.  The Balance of the Equities Favors Denying the Motion.................................. 25

Conclusion ........................................................................................................................... 25

**Table of Authorities**

**Cases**

*Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013) ............................ 24

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62 (D.C. Cir. 2004) ......................................................................................................................................... 6

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470 (9th Cir. 1985) ................... 24

*Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015) ............................................. 13

*Bd. of Educ. for the Silver Consol. Schs. v. McMahon*, 2025 WL 2017177 (D.N.M. July 18, 2025) ....................................................................................................................................... 15

*Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32 (1991) ........................ 13

*Bevis v. City of Naperville, Illinois*, 85 F.4th 1175 (7th Cir. 2023) ............................................... 5

*Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020) ............................................................. 17

*Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668 (9th Cir 1988) ................................... 23

*City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019) ......................................................... 17

*Climate United Fund v. Citibank, N.A.*, --- F.4th ----, 2025 WL 2502881 (D.C. Cir. Sept. 2, 2025) ....................................................................................................................................... 12

*Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497 (N.D. Cal. 2017) ....................................... 14

*Comm'n v. Texas*, 605 U.S. 665 (2025) ....................................................................................... 13

*Commonwealth of Puerto Rico v. United States*, 490 F.3d 50 (1st Cir. 2007) ............................ 13

*Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11 (D.D.C. 2020) ................................ 13

*Dalton v. Specter*, 511 U.S. 462 (1994) ...................................................................................... 12

*Dep't of Educ. v. California*, 604 U.S. 650 (2025) .................................................................... 5, 6

*Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 2121 (2025) ...................... 7

*Employers Ins. of Wausau v. Browner*, 52 F.3d 656 (7th Cir. 1995) .......................................... 13

*FCC v. Prometheus Radio Project*, 592 U.S. 414 (2021) ............................................................ 22

*Federal Express Corp. v. U.S. Dep't of Commerce,* 39 F.4th 756 (D.C. Cir. 2022) .................... 13

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) ......................................... 5

*Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582 (1983) .............. 10, 14

*Heckler v. Chaney*, 470 U.S. 821 (1985) ................................................................................ 21

*Holley v. United States*, 124 F.3d 1462 (Fed. Cir. 1997) ......................................................... 7

*Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985) ........................................ 6

*Lamie v. U.S. Tr.*, 540 U.S. 526 (2004) ................................................................................. 17

*Lincoln v. Vigil*, 508 U.S. 182 (1993) .................................................................................... 21

*Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025 (9th Cir. 2013) ....... 21

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ....................................................................... 8

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012) ...... 6

*Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) ................................................ 15, 16, 19

*Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002) ................................................ 21

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) .................................................................. 20

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) .................... 22

*Murthy v. Missouri*, 603 U.S. 43 (2024) .............................................................................. 7, 8

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (Mem. 2025) .................... 6, 25

*Nken v. Holder*, 556 U.S. 418 (2009) .................................................................................. 5, 25

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) ......................................... 15, 24

*Perry Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) ................................................. 7

*Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62 (D.D.C. 2018) .......................................... 22

*Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991) ................................................................................................................................ 24

*San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184 (N.D. Cal. 2025) .................... 11

*Serrato v. Clark*, 486 F.3d 560 (9th Cir. 2007) .................................................................... 21

*South Dakota v. Dole*, 483 U.S. 203 (1987) .......................................................................... 15

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .......................................................................... 7

*Stanley v. Univ. of S. Cal.*, 13 F.3d 1313 (9th Cir. 1994) ....................................................... 24

iii

*State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015 (N.D. Cal. 2018) ...................... 15, 17, 20

*State v. Dep't of Just.*, 951 F.3d 84 (2d Cir. 2020) ................................................ 18

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) .................................................................................................................... 10, 16, 23

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ................................................ 7

*Trump v. Boyle*, 145 S. Ct. 2653 (2025) .................................................................. 25

*Trump v. Wilcox*, 145 S. Ct. 1415 (2025) ............................................................... 25

*United States v. Virginia*, 518 U.S. 515 (1996) ..................................................... 23

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016) ................. 10

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .................................... 5, 23, 25

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ............................ 12

**Statutes**

5 U.S.C. § 701(a)(2) ............................................................................................... 21

5 U.S.C. § 702 ......................................................................................................... 13

6 U.S.C. § 596 ......................................................................................................... 20

6 U.S.C. § 604 ........................................................................................................... 8

6 U.S.C. § 762(b) ...................................................................................................... 8

6 U.S.C. § 1135(a)(1) ............................................................................................. 20

15 U.S.C. § 2229 ............................................................................................... 21, 22

28 U.S.C. § 1491(a)(1) ............................................................................................. 6

31 U.S.C. § 372(b)(4) ............................................................................................... 9

42 U.S.C. § 2000d ............................................................................................ 9, 14, 17

42 U.S.C. § 5170c(a) .............................................................................................. 21

46 U.S.C. § 70107(a) .............................................................................................. 20

**Regulations**

2 C.F.R. Part 200 ..................................................................................................... 19

iv

2 C.F.R. § 170.315 ............................................................................................................... 19

2 C.F.R. § 200.300(a) ................................................................................................. 9, 12, 14

2 C.F.R. § 200.300(b) ......................................................................................................... 17

2 C.F.R. § 200.303(b) ......................................................................................................... 17

44 C.F.R. § 206.436(c) ........................................................................................................ 20

90 Fed. Reg. 8339 (Jan. 20, 2025) ........................................................................................ 2

90 Fed. Reg. 8633 (Jan. 21, 2025) ........................................................................................ 2

90 Fed. Reg. 8853 (Jan. 29, 2025) ........................................................................................ 3

## Executive Orders

Executive Order 14,151 ........................................................................................................ 2

Executive Order 14,173 ................................................................................................... 2, 11

Executive Order 14,190 .......................................................................................... 3, 4, 9, 10

**Introduction**

Plaintiffs are a group of municipalities and municipal agencies from throughout the country seeking to dictate the terms for how the Federal Emergency Management Agency ("FEMA")—a component of the Department of Homeland Security ("DHS")—administers its grant awards and seeking emergency relief to allow them to continue accepting government funding without complying with the necessary terms and conditions. Specifically, plaintiffs moved for a preliminary injunction that would upset the status quo during the pendency of the litigation by requiring FEMA to issue and accept federal grant awards, and disburse potentially unrecoverable federal funds to recipients, without terms that it has determined properly implement and effectuate the grant programs. Such sweeping relief is inappropriate.

To begin, the court lacks jurisdiction over many aspects of this dispute. To the extent that plaintiffs seek to require the United States to pay money pursuant to federal grants, the Tucker Act places those claims within the exclusive jurisdiction of the Court of Federal Claims, and plaintiffs lack standing to challenge the implementation of the conditions at issue for several discretionary grant programs because no plaintiff is alleged to have been awarded those grants.

Even if the court had jurisdiction, plaintiffs' substantive arguments are unlikely to succeed on the merits. Plaintiffs argue that FEMA cannot enforce two conditions that implement federal anti-discrimination law and all executive orders related to grants for several reasons, claiming that the conditions violate both the Constitution and the Administrative Procedure Act. But FEMA has the statutory authority to implement these conditions and has done so in the past. There is nothing unlawful about ensuring that recipients of federal funds comply with federal law, so plaintiffs' arguments fail.

Plaintiffs also fail to satisfy the other factors for the extraordinary remedy of a preliminary injunction. There is no irreparable injury because all their damages are economic and are thus reparable, and the balance of equities favor the United States. The court should thus deny plaintiffs' motion for a preliminary injunction.

## Background

### I.    Legal Background

Since taking office on January 20, 2025, the President has issued several executive orders consistent with federal law, setting the policy priorities for his administration intended to eliminate all types of discrimination.  Many focus on the expenditure of federal funds, instructing federal agencies to terminate, review, or revise federal grants.  One of those orders is Executive Order 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025), entitled *Ending Radical and Wasteful Government DEI Programs and Preferencin*g ("EO 14,151").  The President issued EO 14,151 to eliminate "illegal and immoral discrimination programs, going by the name 'diversity, equity, and inclusion' (DEI)," in the government, *id.* § 1, and in it, the President instructed "[e]ach agency, department, or commission head" to "terminate, to the maximum extent *allowed by law, . . .* 'equity-related' grants or contracts."  *Id.* § 2(b) (emphasis added).

Similarly, on January 21, 2025, the President issued Executive Order 14,173, 90 Fed. Reg. 8633, entitled *Ending Illegal Discrimination and Restoring Merit-Based Opportunity* ("EO 14,173"), to "enforc[e] our civil-rights laws" by "ending illegal preferences and discrimination."  EO 14,173 § 1. That EO contains a certification provision instructing all agency heads to "include in every contract or grant award" a requirement that the recipient "certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws" because that certification is material to the government's payment decisions.  *Id.* § 3(b)(iv)(A)-(B).  EO 14,173 also directs the Attorney General, in consultation with federal agencies, to write a report identifying the "most egregious and discriminatory DEI practitioners" and outlining a plan of action to "deter DEI programs or principles . . . that constitute illegal discrimination or preferences," including through "[l]itigation," "[p]otential regulatory action and sub-regulatory guidance," and "[o]ther strategies."  *Id.* § 4(b).  EO 14,173 made

2

clear, however, that it did not restrict recipients "from engaging in First Amendment-protected speech." *Id*. § 7(b).

Consistent with those executive orders, DHS revised its standard terms and conditions for all new federal awards of financial assistance for which the federal award date occurs in FY 2025 and flows down to subrecipients. *See* U.S. Dep't of Homeland Sec, FY 2025 DHS Standard Terms and Conditions *Version 3* (Apr. 18, 2025), ECF No. 1-1, ("Standard Conditions").[1]  Relevant here, those terms and conditions require recipients to agree that they will comply with two requirements.

*First*, the Standard Conditions say, "Recipients must comply with all applicable Federal anti-discrimination laws," including by not "operat[ing] any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination law" or by "engag[ing] in . . . a discriminatory prohibited boycott." *Id*. § C.XVII(2)(a)(i)-(ii).  DEI is defined as "diversity, equity, and inclusion"; DEIA is defined as "diversity, equity, inclusion, and accessibility"; and discriminatory equity ideology is defined by reference to Executive Order 14,190, 90 Fed. Reg. 8853 (Jan. 29, 2025), entitled *Ending Radical Indoctrination in K-12 Schooling* ("EO 14,190").  Standard Conditions § C.XVII(1)(a)-(c).  EO 14,190, in turn, defines that term as "an ideology that treats individuals as members of preferred or disfavored groups, rather than as individuals, and minimizes agency, merit, and capability in favor of immoral generalizations," and it provides examples of discriminatory treatments, such as (1) saying members of one race, color, sex, or national origin are "inherently superior" to members of another; (2) ascribing moral character or status based on race, color, sex, or national origin; (3) saying members of a certain race, color, sex, or national origin should feel guilty or receive adverse treatment based on actions committed by other members of the same race, color, sex, or national origin; and (4) discriminating against or receiving adverse treatment to achieve diversity, equity, and inclusion.

---

[1] https://www.dhs.gov/sites/default/files/2025-08/2025_0418_fy2025_dhs_terms_and_conditions_version_3.pdf.

EO 14,190 § 2(b). Plaintiffs refer to this provision as the "Discrimination Condition," Compl. (Dkt. 1) ¶ 8; Pls.' Mem. in Supp. of Mot. for a Prelim. Inj. (Dkt. 41) ("P. Mem.") at 5, even though a more apt name is the "Anti-Discrimination Condition." since its express purpose is to end any types of discrimination to the maximum extent allowed by law.

Relatedly, plaintiffs argue that "recipients of certain awards [must] agree to comply with derivative conditions in FEMA's August 2025 Preparedness Grants Manual" (the "Grants Manual"), including requiring "[a]ll non-disaster grant program reimbursement requests must be reviewed and approved by FEMA prior to drawdowns" and that those requests must indicate whether subrecipients have "any diversity, equity, [or] inclusion practices" if funding is provided. Mem. at 6 (quoting Grants Manual § 6.11.3[2]).

*Second*, the Standard Conditions say, "Recipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference." Standard Conditions § C.XXXI. Plaintiffs describe this as the "EO Condition." Compl. ¶ 8; P. Mem. at 6.

## II. This Litigation

Plaintiffs are public municipalities and municipal agencies that allegedly "have received or been awarded, or anticipate receiving or being awarded, grants or subgrants under one or more" of nine grant programs administered by FEMA involving federal funds. Compl. ¶¶ 65-66. No plaintiff is alleged to have been awarded funds under the current Standard Conditions for two of those grant programs: (1) the Hazard Mitigation Assistance Program ("HMA"), *see* Compl. ¶¶ 88-94; and (2) the Staffing for Adequate Fire and Emergency Response ("SAFER") Program, *see* Compl. ¶¶ 106-110. And for a third grant program, the Fire Prevention and Safety grant program ("FP&S"), only plaintiff Baltimore alleges

---

[2] https://www.fema.gov/sites/default/files/documents/fema_gpd_fy2025-preparedness-grants-manual_082025.pdf (last visited Oct. 22, 2025)).

to have been awarded grant funds under the current Standard Conditions, and it has already accepted such award. Compl. ¶ 120.

Plaintiffs brought this action arguing that the grant terms are unlawful because they constitute *ultra vires* agency action and they violate the Separation of Powers, the Spending Cause, and the APA. Compl. ¶¶ 212-262. Plaintiffs then moved for a preliminary injunction to enjoin these two conditions. P. Mem. at 1.

**Argument**

Plaintiffs are not entitled to any emergency relief. A preliminary injunction is "'an extraordinary remedy never awarded as of right.'" *Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1188 (7th Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The movant "'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Bevis*, 85 F.4th at 1188 (quoting W*inter*, 555 U.S. at 20). For the first factor, the movant must make a "'strong' showing that reveals how it proposes to prove its case." *Id.* For the second factor, "a mere possibility of irreparable harm will not suffice." *Id.* Finally, when "the Government is the opposing party," the assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs cannot satisfy these requirements.

## I. Plaintiffs Have Failed to Establish This Court's Jurisdiction.

### A. This Court Lacks the Power to Order Direct Monetary Payments.

Generally, federal district courts lack jurisdiction to "order the payment of money under" the APA because the federal government's sovereign immunity for claims seeking non-monetary relief "does not extend to orders 'to enforce a contractual obligation to pay money.'" *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). The APA's limited waiver also does not apply "if any other statute that grants consent

5

to suit expressly or impliedly forbids the relief which is sought." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). The Tucker Act (28 U.S.C. § 1491(a)(1)) is one such statute that "grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *California*, 604 U.S. at 651 (quoting 28 U.S.C. § 1491(a)(1)). Specifically, the Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1), and it "impliedly forbids" bringing "contract actions" against "the government in a federal district court." *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) (citation omitted). This jurisdictional barrier ensures that contract claims against the United States are channeled into a court that has "unique expertise." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

The Supreme Court has recently reiterated the preclusive scope of the Tucker Act. In April, the Supreme Court stayed a district court order to make payments based on grants because the federal government was "likely to succeed in showing the District Court lacked jurisdiction" to bar termination of various education-related grants because the injunction was effectively an order "to enforce a contractual obligation to pay money." *California*, 604 U.S. at 651 (citation omitted). In August, the Supreme Court stayed a judgment vacating the federal government's termination of grants because the APA's limited waiver does not provide district courts with jurisdiction "to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (Mem.) (2025) ("*NIH*") (citation omitted).

This court should follow the Supreme Court's stay rulings to the extent that plaintiffs are seeking to enforce an obligation to pay money pursuant to the grants they currently hold. For example, plaintiffs allege that Baltimore has already accepted its grant award containing the challenged conditions under

the FP&S program. *See* Compl. ¶ 120. Although they purport to seek an injunction against grant conditions, the relief plaintiffs' request—uninterrupted grant funding pursuant to their federal grant agreements—is fundamentally contractual. Plaintiffs' claims are essentially a contract dispute with the government about their grant terms, while explicitly requesting the court to prevent defendants from enforcing these terms "with respect to any applications submitted by Plaintiffs, and funds awarded to or received by Plaintiffs." Compl. at 64.

As in *California* and *NIH*, any entitlement that plaintiffs may have to the funding they seek to preserve arises solely on the basis of their federal grant awards; they have no statutory or constitutional right to such funding. Because plaintiffs' claims hinge on contractual routing of funding to them as provided for in their grant agreements, cloaking their claims as seeking equitable relief under the Constitution and the APA is irrelevant. *See, e.g.*, *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (district court lacks jurisdiction over any case that "is in 'its essence contractual'"); *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act . . . .").

### B.     Plaintiffs Do Not Have Standing to Challenge Five Named Programs.

Plaintiffs invoking the court's jurisdiction must have Article III standing for "each claim that they press against each defendant," *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted), and "for each form of relief that they seek," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). And to show standing, a plaintiff must demonstrate, among other things, that it has suffered an injury in fact— that is, it has suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted); *see also Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 2121, 2133 (2025) (plaintiffs must have "a personal stake in [a] dispute" and not be a "mere bystander[]"

(citation omitted)). For a plaintiff to have standing to pursue "forward-looking" relief such as an injunction, a party must show that the plaintiff "establish a substantial risk of future injury," not a "speculative" one. *Murthy*, 603 U.S. at 69.

Here, plaintiffs fail to demonstrate that they have suffered an injury or will suffer one as to several grant programs listed in their complaint because none of them has actually received a grant for those programs or presented any facts demonstrating that they will receive those grants. *First*, no plaintiff is alleged to have received or been offered HMA funds. The complaint alleges only that one plaintiff has applied for pass-through HMA funding and that other plaintiffs generally "may apply to other HMA grant programs in the future." Compl. ¶¶ 92-94. *Second*, there are no allegations that any plaintiff has received or been offered SAFER grant funding. Compl. ¶¶ 106-110. *Third*, other than Baltimore, no plaintiff has received or been offered any FP&S funds. Compl. ¶ 120. And as explained above, Baltimore has already accepted the FP&S it was awarded, and therefore, its challenges belong in the Court of Federal Claims.

And for two other programs—the Emergency Management Performance Grant Program ("EMPG") and the Homeland Security Grant Program ("HSGP")—plaintiffs are *subrecipients* of the funds only and have no control over whether the funds are accepted. Each grant is provided directly to States, not municipalities. *See* 6 U.S.C. § 762(b) (EMPG grants are made "to States"); 6 U.S.C. §§ 604 (d)(1), 605(b)(1) (HSGP funds are distributed to States). The complaint concedes this fact. Compl. ¶¶ 42-43 (EMPG funding); ¶¶ 58-59 (HSGP funding). Thus, plaintiffs have no power to make any decision regarding whether to accept those funds, and any decisions about whether those funds are ultimately passed down to plaintiffs are made by non-parties not before the court. any alleged injury is speculative because plaintiffs do not allege that they have a "specific connection" to the HMGP pass-through funding or EMPG funding. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 567 (1992).

## II. Plaintiffs Are Unlikely to Succeed on the Merits.

Plaintiffs have not demonstrated that they are likely to succeed on the merits. In fact, the opposite is true: both the Anti-Discrimination Condition and the EO Condition were implemented within FEMA's statutory authority in a manner consistent with past iterations of the Standard Conditions implementing federal law for all recipients of federal funds.

### A. All Challenged DHS Conditions Are Lawful and Constitutional.

#### 1. The Anti-Discrimination Condition Is Constitutional.

Under Title VI of the Civil Rights Act of 1964, recipients of federal assistance must comply with federal anti-discrimination laws. *See* 42 U.S.C. § 2000d. Title VI further "authorize[s] and direct[s]" federal agencies that award federal funds to effectuate section 2000d by issuing rules and regulations. *Id.* § 2000d-1. Pursuant to this authority, DHS, as a federal agency, and FEMA, as a component of DHS, is required to ensure that all grant awards comply with federal law. Specifically, DHS must administer federal awards in a manner that ensures "that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. § 200.300(a). All relevant requirements must then be communicated to recipients and incorporated into the awards directly or by reference in the terms and conditions of the federal award. *Id.*

That is exactly what DHS did. It provided the terms and conditions required for any award and specifically told recipients of federal funds that they "must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4)," including by not "operat[ing] any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws" or "engag[ing] in . . . a discriminatory prohibited boycott." Standard Conditions § C.XVII. It then incorporated EO 14,190 by reference, which provides specific examples of illegal discriminatory conduct, including programs that

stereotype or demean persons solely because of their race, color, sex, or national origin. *See* EO 14,190 § 2(b). Those provisions make plain that recipients cannot violate federal anti-discrimination law, including by using protected characteristics "as a stereotype or negative." *Cf. Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 213 (2023) (noting race can "never" be used as "a stereotype or negative"). And false certifications of compliance with civil rights laws are false statements that put recipients on notice that their compliance is material, *i.e.*, that it is "capable of influencing" the government's payment decision. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193 (2016).

This provision is not novel. It has been true for decades that "[e]very application for Federal financial assistance must, 'as a *condition* to its approval and the extension of any Federal financial assistance,' contain assurances that the program will comply with Title VI *and* with all requirements imposed pursuant to the executive regulations issued under Title VI." *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 629-30 (1983) (Marshall, J., dissenting) (citing regulations from more than ten federal agencies). These "assurances" of compliance are "given in consideration of" federal aid, "and the federal government extends assistance in reliance on the assurance of compliance"—but the obligations of Title VI apply regardless of any certification. *Id.* at 630 (citation omitted). The requirement here is no different — although recipients must certify specifically that any DEI programs they run comply with federal antidiscrimination law, this certification "does not place upon a recipient any unanticipated burdens because any recipient must anticipate having to comply with the law." *Id.*

Accordingly, another court denied a similar challenge to a DEI certification provision, finding that the plaintiffs "have not demonstrated that they [are] likely to succeed in their challenge to the Certification Provision because they have not shown at this juncture that the provision goes beyond targeting DEI programs that violate federal antidiscrimination law." *San Francisco A.I.D.S. Found. v.*

10

*Trump*, 786 F. Supp. 3d 1184, 1200, 1221-22 (N.D. Cal. 2025), *appeal filed* No. 25-4988 (9th Cir. 2025). Further, the Fourth Circuit unanimously granted the government's motion for a stay in a case challenging Executive Order 14,173, which directs federal agencies to require grant recipients to certify that they do not operate unlawful DEI programs. *See* Order, *National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025); *see id.* at 7 (Harris, J. concurring) (explaining that the challenged provision "appl[ies] only to conduct that violates existing federal anti-discrimination law").

Further, the Anti-Discrimination Condition at issue here, implemented by FEMA, simply requires recipients to certify their compliance with existing law. An incorrect premise in plaintiffs' arguments against the Anti-Discrimination provision is that grantees are required to comply with incorrect interpretations of existing anti-discrimination law. *See, e.g.*, P. Mem at 16 (arguing the Administration's interpretations are "contrary to Supreme Court precedent applying Title VII" and are "inconsistent with Supreme Court precedent that has 'consistently declined to find constitutionally suspect' the adoption of race-neutral criteria"). But plaintiffs are not being asked to sign on to the Administration's policy preferences, or even the Administration's views about the proper interpretation of federal anti-discrimination laws. Plaintiffs are simply agreeing not to violate the laws currently in place. They may disagree with the government's legal interpretations, and policy preferences in this area, but that has little to do with the condition, which simply asks funding recipients to certify that they are complying with anti-discrimination laws. Moreover, plaintiffs have not demonstrated that they actually disagree with DHS as to how those laws apply to a particular set of facts, instead relying on vague assertions that the challenged provision raises "serious questions" about how it would apply in practice. *See* P. Mem. at 6 (claiming "the federal government has now cast doubt on the well-established meaning of" existing anti-discrimination laws); *see also San Francisco A.I.D.S. Found.*, 786 F. Supp. 3d at 1221 ("Plaintiffs have not provided sufficient evidence that the government has enforced or plans to

11

enforce the *Certification Provision* in a way that implicates DEI programs beyond those that 'violate any applicable Federal anti-discrimination law.'").

>   a.   **The Anti-Discrimination Condition Does Not Violate the "Separation of Powers."**

Plaintiffs' Separation of Powers claim is based entirely on the argument that no terms of the governing grant-related statutes authorize DHS to impose the challenged conditions.  P. Mem. at 10-13. This claim fails at the threshold because it is not a constitutional claim under *Dalton* and because the APA provides a statutory path for judicial review.  In any event, this challenge fails on the merits because DHS is duly authorized, and indeed is *required*, to include conditions to ensure that recipients comply with anti-discrimination law.  *See* 2 C.F.R. § 200.300(a).

*First***,** *Dalton v. Specter*, 511 U.S. 462 (1994), forecloses plaintiffs' ability to raise statutory arguments with constitutional dressing.  There, the Supreme Court reversed a federal circuit court that had "reasoned, relying primarily on *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), that whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id.* at 471. The Court stated this reasoning was incorrect because the Supreme Court's "cases do not support the proposition that every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472.  Instead, the Court "often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.*  Therefore, "claims simply alleging that the President [or an executive officer] has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review."  *Id.* at 473; *see Climate United Fund v. Citibank, N.A.*, --- F.4th ----, 2025 WL 2502881, at *10 (D.C. Cir. Sept. 2, 2025) (citing cases); *New York v. NSF*, No. 25-cv-4452, 2025 LEXIS 148779 (S.D.N.Y. Aug. 1, 2025) (challenge to directives and grants was statutory, not constitutional, under *Dalton*).  Because plaintiffs' constitutional claims focus entirely on their

contentions that DHS and FEMA have not acted consistent with their statutory appropriations obligations, such claims are untenable under *Dalton*.

*Second*, even if plaintiffs' claim was properly recognized as a constitutional challenge, it arises under the court's equity powers and must be dismissed because the APA provides a path of judicial review. *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665 (2025). Non-statutory review under the court's equity powers provides a "catch-all remedy" only when "*no statute specifies a path of judicial review*." *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 662 (7th Cir. 1995) (emphasis added). Because non-statutory review "could become an easy end-run around the limitations" of "judicial-review statutes," the Supreme Court has "strictly limited" it. *Nuclear Regul.*, 605 U.S. at 681. Indeed, a non-statutory review claim "is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Id.* at 681-2; *see also Armstrong*, 575 U.S. at 327-28 (the power of federal courts of equity to enjoin unlawful executive action is subject to limitations).

Importantly, the Supreme Court recently held that non-statutory review is "unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review,' or if a statutory review scheme forecloses all other forms of judicial review." *Id.* at 681 (quoting *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)). This is a usual case where a statutory path of judicial review under the APA exists. *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 59-60 (1st Cir. 2007). The APA allows plaintiffs seeking "relief other than money damages" to seek "judicial review" on whether final agency action, 5 U.S.C. § 702, and agency action leading up to it, § 704, is "contrary to constitutional rights," § 706(2)(B). But if "the APA" can "provide adequate relief," as the APA could here, "an equitable remedy via non-statutory review ought not be available." 33 Fed. Prac. & Proc. Judicial Review § 8307 (2d ed.) (May 22, 2025 update); *Ctr. for Biological Diversity*, 453 F. Supp. 3d at 48 ("The Court doubts

that Plaintiffs can bring an equitable claim when a statutory cause of action is available to it" under the APA); *Fed. Express Corp.*, 39 F.4th at 763.

*Finally*, plaintiffs' Separation of Powers claim fails on the merits. As discussed *supra*, FEMA fully complied with the relevant governing statutes by including the Anti-Discrimination Condition in its grant terms and conditions. Indeed, FEMA is *required* to include conditions to ensure that recipients comply with anti-discrimination law. *See* 2 C.F.R. § 200.300(a). The Anti-Discrimination Condition sensibly implements 42 U.S.C. § 2000d. That Congress did not specifically spell out that FEMA must enforce anti-discrimination laws in each statute governing a grant program does not remove FEMA's authority to ensure that recipients follow those laws.

Additionally, "while some courts have reasoned that "*new* conditions on federal funds" may implicate separation of powers, *see Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 516 (N.D. Cal. 2017) (emphasis added), no such concern arises when the Executive merely reinforces preexisting legal obligations. The requirement that federal funding recipients follow the law is not new. *See Guardians*, 463 U.S. at 629-30 & n.22 (1983) (Marshall, J., dissenting). For decades, federal agencies have required recipients to certify their compliance with federal laws, including antidiscrimination laws. *Id*. The Anti-Discrimination provision requires recipients to certify that they are honoring their preexisting obligation to follow the law with respect to DEI programs in particular. That limitation merely renders it narrower than routine compliance-with-law certifications, which plaintiffs do not argue violates Separation of Powers. Thus, there is no basis for a Separation of Powers violation.[3]

_____

[3] Plaintiffs' *ultra vires* claims in Count 2 are based on the same allegations supporting their Separation of Powers claim — that Congress did not authorize defendants to impose the challenged conditions. P. Mem. at 10. These claims fail for two of the three reasons plaintiffs' Separation of Powers claim fails. First, the *ultra vires* claims arise under the court's equity powers and must be dismissed because the APA provides a path of judicial review. Second, DHS has authority to include both challenged conditions into its grant agreements.

14

**b.** **The Anti-Discrimination Condition Does Not Violate the Spending Clause.**

In the alternative, plaintiffs argue that the Anti-Discrimination Condition is unlawful under the U.S. Constitution's Spending Clause. U.S. Const. art. I, § 8, cl. 1. As an initial matter, the Spending Clause does not apply here because it limits only Congress' power to legislate and has no application to Executive Branch decisions about how to expend appropriated funds Congress. *See Bd. of Educ. for the Silver Consol. Schs. v. McMahon*, 2025 WL 2017177, at *10 (D.N.M. July 18, 2025) ("[T]he Spending Clause is only implicated 'when Congress imposes a spending or funding condition.' And without alleging congressional action, Plaintiff 'cannot state a claim under the Spending Clause.'" (citation omitted)). Even if the Spending Clause applied, the challenge would still fail because the condition is unambiguous and relates to the general purpose of enforcing anti-discrimination law.

Under the Spending Clause, statutes passed by Congress must meet certain criteria. Absent a violation of another constitutional provision, all that is required is that they must be "in pursuit of the general welfare" and "unambiguous, clearly communicating . . . the consequences of [] participation in the federally funded scheme." *Mayweathers v. Newland*, 314 F.3d 1062, 1066 (9th Cir. 2002) (citation omitted). The funding must "bear *some relationship* to the purpose of the federal spending," but that is a "low-threshold." *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1034 (N.D. Cal. 2018). In any event, "Congress may . . . 'further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (citation omitted).

Plaintiffs' first argument on this front is that the Anti-Discrimination provision is ambiguous. P. Mem. at 14-17. It's not. The provision specifically requires "compl[iance] with all applicable Federal anti-discrimination laws," including by "operat[ing] any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws" or "engag[ing] in . . . a discriminatory prohibited boycott." Standard Conditions § C.XVII(2)(a)(i)-(ii). To comply with the

15

clear notice requirement of Spending Clause jurisprudence, Congress must only make clear that acceptance of federal funds obligates States to comply with a condition. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981). *Pennhurst* explicitly recognized that a State's obligations under a Spending Clause program may be "largely indeterminate," so long as Congress gives "clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with" the condition. *Id.* at 24–25. States make an "informed choice" when the Federal Government simply makes clear that acceptance of federal money obligates the States to comply with a condition. *Id.* at 25. Indeed, the Spending Clause is satisfied where a "statute's *intention to impose a condition* is expressed clearly," even though the operation of a funding condition "is perhaps unpredictable." *Mayweathers*, 314 F.3d at 1067. There is no requirement to "list every factual instance in which a [funding recipient] will fail to comply with a condition" because requiring "[s]uch specificity would prove too onerous, and perhaps, impossible." *Id.*

Here, there is no doubt that grantees must comply with the Anti-Discrimination provision. Plaintiffs have identified no ambiguity about whether they are subject to the conditions; that is why they filed this lawsuit. While FEMA requires recipients to certify that any DEI programs they operate comply with anti-discrimination law, plaintiffs cannot plausibly argue that the more specific certification is impermissible given that it is subsumed within the broader certification prohibiting funding recipients from operating *any* programs that violate federal anti-discrimination law. Plaintiffs claim the provision is ambiguous because the federal government appears to be interpreting the provision to contradict prevailing anti-discrimination laws. Complt. at ¶¶ 169-70. But that argument ignores both the Supreme Court —which recently reinforced longstanding precedent that stereotyping and discrimination against other races for the benefit of certain races are illegal, *Students for Fair Admissions*, 600 U.S. at 211-12—and Congress's express requirements for recipients to comply with federal anti-discrimination law

16

and for agencies to effectuate that law when awarding federal funding. 42 U.S.C. §§ 2000d, 2000d-1.[4] The consequences of failing to follow anti-discrimination laws, such as an investigation into False Claims Act liability, does not make the requirement to comply ambiguous. *Cf. Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (courts apply "plain, nonabsurd meaning" of a statute "even if . . . the words lead to a harsh outcome").

For these same reasons, there is no merit to plaintiffs' argument about the alleged ambiguity in a provision in FEMA's Grant Manual that requires grantees to provide information about whether any subrecipients of federal funds have diversity, equity, and inclusion practices. *See* Complt. ¶ 236. That provision is clear that recipients of federal funding must pass along "[w]hether the subrecipient has any diversity, equity, and inclusion practices." Grants Manual § 6.11.3. Such information gathering is appropriate for FEMA to ask and can be used to determine whether any of the subrecipients' practices violate federal anti-discrimination law.

Next, plaintiffs argue that the Anti-Discrimination Condition is not "reasonably related" to the expenditure's purpose." P. Mem. at 18. But the reasonable relation requirement is a "low-threshold," *Becerra*, 284 F. Supp. 3d at 1034, and "not demanding." *City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 (9th Cir. 2019). The Supreme "Court has never struck down a condition on federal grants based on th[e] relatedness prong." *Id.*

There is no need for this court to break new ground, as agencies have long applied grant conditions like the Anti-Discrimination Condition to further all manner of purposes and objectives. *See, e.g.*, 2 C.F.R. § 200.303(b) (requiring all recipients of federal grants to "[c]omply with the U.S.

---

[4] Plaintiffs also insinuate that following the Standard Conditions may cause them to ignore the Supreme Court's decision in *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020), *see* P. Mem. at 16, but the relevant regulations make clear that agencies must ensure that recipients do not discriminate "based on sexual orientation and gender identity consistent with the Supreme Court's reasoning in *Bostock*." 2 C.F.R. § 200.300(b). Plaintiffs have not demonstrated that they would be forced to ignore *Bostock* if they choose to accept federal funds.

17

Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award"). Plaintiffs cite no case where similar conditions enforcing federal anti-discrimination law have been held to be unrelated to the grantee's receipt and expenditure of federal funds. That's because these conditions prevent the expenditure of federal funds on activities that violate the law. *Cf. State v. Dep't of Just.*, 951 F.3d 84, 107 (2d Cir. 2020) ("[T]here is something disquieting in the idea of States and localities seeking federal funds to enforce their own laws while themselves hampering the enforcement of federal laws, or worse, violating those laws.").

### 2. The EO Condition Is Constitutional.

Plaintiffs' challenge to the EO Condition is similarly misguided. FEMA included within its Standard Conditions a requirement that all recipients comply with all executive orders by the President related to grants and grants only. *See* Standard Conditions § C.XXXI ("Recipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference."). That condition is imminently reasonable, as it requires recipients to confirm compliance with executive orders that relate to grants that recipients agreed to take on.

Like with the Anti-Discrimination Condition, plaintiffs argue that the EO Condition violates the "Separation of Powers" and the Spending Clause. Both arguments lack merit.

### a. The EO Condition Does Not Violate the "Separation of Powers."

Like the Anti-Discrimination Condition, plaintiffs' challenge to DHS's ability to impose the EO Condition is a statutory claim disguised as a constitutional one precluded by the Supreme Court's decision in *Dalton*, so the claim fails on that basis alone. *See supra* 13-14. And even if it constitutes a constitutional claim, it fails because the APA provides a statutory path for judicial review. *Id.*

In any event, DHS is required to incorporate into the terms of its grants "national policy requirements," including those flowing from "executive order[s]." 2 C.F.R. § 200.211(c)(1)(ii); *see* 2

C.F.R. § 200.300. DHS has also applied similar conditions for several years. The EO Condition, while worded slightly different, is also not new. In 2021, 2022, and 2023, DHS's Standard Terms and Conditions contained a provision that required recipients to follow "relevant Executive guidance." Specifically, those Standard Conditions said, "By accepting this agreement, recipients, and their executives, as defined in 2 C.F.R. § 170.315, certify that their . . . policies are in accordance with OMB's guidance located at 2 C.F.R. Part 200, all applicable federal laws, and relevant Executive guidance."[5] Like those prior Standard Conditions, the EO Condition here is lawful and within DHS's authority.

### b. The EO Condition Does Not Violate the Spending Clause.

The EO Condition also does not violate the Spending Clause because it is unambiguous and is related to the purpose of the grants.

To start, the EO Condition is unambiguous. Like the Standard Conditions issued in prior years, the EO Condition merely requires the plaintiffs to comply with Executive Orders in the same manner as they would have to follow any changes to federal statutes or regulations or intervening court decisions. The EO Condition here is as clear as those prior requirements and readily satisfies the Spending Clause standard. *See Newland*, 314 F.3d at 1067.

Plaintiffs also provide no specificity about why they believe the EO Condition is ambiguous. Plaintiffs point to no Executive Orders related to grants that they are unsure apply. Instead, plaintiffs chose to facially challenge the EO Condition without explaining what hypothetical ambiguities exist. Such "facial challenges are disfavored" because courts must examine "how a law works in all of its

---

[5] *See* U.S. Dep't of Homeland Sec, FY 2021 DHS Standard Terms and Conditions (Feb. 17, 2021), https://www.dhs.gov/sites/default/files/publications/fy_2021_dhs_standard_terms_and_conditions_version.pdf; U.S. Dep't of Homeland Sec, FY 2022 DHS Standard Terms and Conditions (Jan. 24, 2022), https://www.dhs.gov/sites/default/files/2022-01/fy_2022_dhs_terms_and_conditions_version_2_dated_jan_24_2022_508.pdf; U.S. Dep't of Homeland Sec, FY 2023 DHS Standard Terms and Conditions (Nov. 29, 2022), https://www.dhs.gov/sites/default/files/2023-01/FY%202023%20DHS%20Terms%20and%20Conditions%20Version%202%20Dated%20November%2029%202022.pdf.

applications." *Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024) (explaining facial challenges in the First Amendment context). Plaintiffs provide no examples of Executive Orders that they believe may cause them harm, instead choosing to merely argue that the EO Condition is ambiguous because plaintiffs "cannot ascertain what it means to comply with all executive orders 'related to grants' that this Administration has issued or might issue in the future." P. Mem at 6, 17. Such compliance is commonplace for recipients, who are regularly required to ensure their programs comply with all federal law, even as it shifts when Congress passes laws or the Supreme Court interprets laws differently.

The EO Condition surpasses the "low-threshold" of being reasonably related to the purpose of expenditure. *See Becerra*, 284 F. Supp. 3d at 1034. DHS is required to ensure that all grants comply with federal law, and the EO Condition is another way to ensure that requirement is met.

### B. All Challenged DHS Conditions Do Not Violate the APA.

#### 1. Awards for Seven Grants Are Not Reviewable Because They Are Discretionary Grants Committed to Agency Discretion.

Plaintiffs are unlikely to prevail on their APA claim for these seven challenged grants because they are discretionary: (1) HMGP, (2) SAFER: (3) AFGP; (4) FP&S; (5) TSGP; (6) PSGP; and (7) STC.[6] For these grants, plaintiffs fail to demonstrate that there are standards for the court to apply in reviewing the Anti-Discrimination and EO Conditions for those discretionary grants. Ordinarily, for discretionary grants, agencies are free to reject applications in what is a competitive process. And "before any review

---

[6] (1) **HMGP**, which has governing regulations giving FEMA final authority to approve funding for all projects, 44 C.F.R. § 206.436(c), (g); (2) **SAFER**, which allows FEMA to choose which grants to award on a competitive basis through a neutral peer review process, 15 U.S.C. § 2229a(a)(1)(G), (2); (3) Assistance to Firefighters Grant **("AFGP")**, which FEMA awards on a competitive basis to fire departments and other eligible entities, *id.* § 2229(c)(1); (4) **FP&S** grants, which FEMA awards on a competitive basis to fire departments and other eligible entities, *id.* § 2229(d)(1); (5) **TSGP**, which allows FEMA discretion to choose "recipients of grants based solely on risk," 6 U.S.C. § 1135(a)(1), (c)(2); (6) **PSGP**, which FEMA chooses based on the most current risk assessments through a competitive selection process, 46 U.S.C. § part 200(a); and (7) **STC**, which is a competitive selection process chosen by the Countering Weapons of Mass Destruction Office in DHS, not FEMA, *see* 6 U.S.C. §§ 596, 596b.

20

at all may be had, a party must first clear the hurdle of § 701(a)," *Heckler v. Chaney*, 470 U.S. 821, 828 (1985), which precludes review under the APA if the challenged agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Under § 701(a)(2), "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830. "In such a case," the relevant statutory provision "can be taken to have committed the decisionmaking to the agency's judgment absolutely." *Id*. (internal quotation marks omitted).

An agency's allocation of appropriated funds is typically and presumptively committed to agency discretion by law because "the very point . . . is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993); *see Milk Train, Inc. v. Veneman*, 310 F.3d 747, 748-51 (D.C. Cir. 2002); *Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1038 (9th Cir. 2013); *Serrato v. Clark*, 486 F.3d 560, 568-70 (9th Cir. 2007). This is why agencies grant-award decisions are presumptively unreviewable. *See Lincoln*, 508 U.S. at 191-92 (including "allocation of funds from a lump-sum appropriation" among the "administrative decision[s] traditionally regarded as committed to agency discretion" that have been held "to be presumptively unreviewable"); *see also Milk Train, Inc.*, 310 F.3d at 750–51 (applying *Lincoln* in the context of non-lump-sum appropriations).

Plaintiffs cannot overcome the presumption that the Anti-Discrimination and EO Conditions—which both merely reiterate that recipients must comply with federal anti-discrimination law and all executive orders—is unreviewable for the seven discretionary grants. For each of these grants, there is limited guidance for how the grants should be distributed. *See, e.g.*, 15 U.S.C. § 2229 (c)(1) (for AFG, "[t]he Administrator of FEMA may, in consultation with the chief executives of the States in which the recipients are located, award grants on a competitive basis"); 42 U.S.C. § 5170c(a) (for HMGP, "[t]he President may contribute up to 75 percent of the cost of hazard mitigation measures which the President

has determined are cost effective and which substantially reduce the risk of, or increase resilience to, future damage, hardship, loss, or suffering in any area affected by a major disaster"). None limits FEMA's discretion to issue funding, much less do they prevent requiring compliance with federal anti-discrimination law or Executive Branch policy directives, making those decisions presumptively unreviewable. *Cf. Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62, 75-76 (D.D.C. 2018) (holding that decision to stop funding and recompete the funds is a "presumptively unreviewable" type of agency action but holding that a denial to continue funding without explanation was arbitrary and capricious under the APA).

### 2.      Plaintiffs' APA Claim Also Fails on the Merits.

Even if the court were to reach the merits of plaintiffs' APA claims, they would fail. Plaintiffs' initial APA argument parrots their earlier claims that DHS violated by the Constitution by supposedly exceeding its authority to implement the Anti-Discrimination and EO Conditions. But that's wrong. As discussed above, FEMA is required to enforce all federal anti-discrimination laws and has the authority to require all recipients to follow executive orders, as it did in fiscal years 2022 and 2023.

FEMA's implementation of the challenged conditions was also not arbitrary or capricious. Judicial review under the APA's arbitrary-and-capricious standard "is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). That review is "narrow." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). All that is required is for the agency to "act[] within a zone of reasonableness." *Prometheus*, 592 U.S. at 423.

Plaintiffs argue otherwise based on the mistaken premise that the policies are new. *See* P. Mem. at 20-21. Plaintiffs argue that agencies are free to change existing policies but must provide an explanation of reasoning and must consider "reliance interests" based on prior policies. *See* Mem. at 21-22. But neither the Anti-Discrimination Condition nor the EO Condition is "new." Although both

22

conditions have been worded differently in the past, DHS has long required recipients to comply with all anti-discrimination laws.[7]

Even if the policy were new, plaintiffs never explain what reliance interests they had in the prior policy except to suggest they had a reliance interest in not having to follow these conditions. *See* P. Mem. at 22. They do not explain how they could have the right to accept federal funds while impermissibly participating in stereotyping individuals based on their race, color, sex, or national origin or discriminating against them without satisfying the requisite level of scrutiny required by the Constitution. *See Students for Fair Admissions*, 600 U.S. at 212 (outlining the Court's prior explanations of the dangers with race-based government action and why strict scrutiny must be applied); *see also United States v. Virginia*, 518 U.S. 515, 555 (1996) (gender-based classifications are subject to "heightened scrutiny"). Plaintiffs also do not explain what reliance interest they could have in being able to violate executive orders related to grants while participating in programs funded by the federal government.

## III.     Plaintiffs Have Failed to Demonstrate Irreparable Harm.

Plaintiffs seeking the extraordinary remedy of a preliminary injunction must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (citation omitted). The "possibility" of such harm is insufficient, *id.*, as is "speculative injury," *id.* at 21. Plaintiffs must show both immediacy and likelihood that they will be irreparably harmed absent emergency relief. *See Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir 1988).

---

[7] *See, e.g.*, U.S. Dep't of Homeland Sec, FY 2016 DHS General Terms and Conditions (Jan. 29, 2016), https://www.dhs.gov/sites/default/files/publications/Fiscal%20Year%202016%20DHS%20Standard%20Terms%20and%20Conditions%20Version%206-0%20Dated%2001-29-2016_0.pdf (last visited Oct. 23, 2025) (requiring compliance with federal anti-discrimination laws and requiring recipients to provide information if they were accused or found to have violated any anti-discrimination law), and has required recipients to follow all executive guidance since at least 2021, *see supra* 17-18. There is thus no "new" policy.

Plaintiffs have failed to make that showing here because, fundamentally, the harms they assert are economic. *See, e.g.*, P. Mem. at 23 (describing the harms that would result from loss of funding earmarked for vital public safety services); *see also id.* (arguing that loss of funds would "upend budgets, sacrifice critical staffing and public safety upgrades intended to protect communities"). They seek the payment—on the terms that they prefer—of federal funds pursuant to their contracts with the federal government and, as discussed elsewhere, plaintiffs can pursue such relief in the Court of Federal Claims. The associated injuries plaintiffs assert are thus definitionally not irreparable, *see, e.g.*, *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320-21 (9th Cir. 1994); *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991), particularly because the plaintiffs allege no "threat of being driven out of business." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) (citation omitted).

Plaintiffs also assert that they face harm from being put to the choice of accepting unconstitutional conditions or risking the loss of hundreds of millions of dollars in federal grant funding. P. Mem. at 23. But that argument fails. There is no constitutional violation, and it is always the case that "if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds." *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013). If a party makes the voluntary choice to forego those funds, any resulting economic harm cannot constitute an irreparable injury attributable to the federal government. Nor do plaintiffs demonstrate that the mere acceptance of terms they consider to be "unconstitutional"—but that generally require them to comply with otherwise applicable federal law—imposes any concrete, imminent harm necessitating extraordinary preliminary relief.

24

## IV.    The Balance of the Equities Favors Denying the Motion.

Plaintiffs must also demonstrate that "the balance of equities tips in [its] favor" and "an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citation omitted). These "factors merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

In arguing that the public interest weighs in their favor, plaintiffs mostly repackage their arguments on alleged irreparable harm and on the merits. Those arguments fail. On the other hand, granting plaintiffs' motion would significantly disrupt DHS's ongoing consideration of grant applications for the upcoming year. *See Trump v. Wilcox*, 145 S. Ct. 1415 (2025) (granting request for stay of injunction "to avoid [] disruptive effect[s]" on government operations). Further, a preliminary injunction risks irreparable harm to the government and to the public interest by requiring the payment of money that the government may never recover. *See NIH*, 145 S. Ct. 2658. This decision must "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). Therefore, the balance of the equities and public interest favor denying plaintiffs' request for injunctive relief.

## CONCLUSION

For these reasons, this court should deny plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Patrick Johnson
    THOMAS P. WALSH
    PATRICK JOHNSON
    Assistant United States Attorneys
    219 S. Dearborn Street, 5th Floor
    Chicago, Illinois 60604
    (312) 353-5327
    (312) 353-5312
    thomas.walsh2@usdoj.gov
    patrick.johnson2@usdoj.gov