IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, CITY OF BOSTON, CITY OF NEW YORK, MAYOR AND CITY COUNCIL OF BALTIMORE, CITY AND COUNTY OF DENVER, CITY OF MINNEAPOLIS, CITY OF NEW HAVEN, CITY OF SAINT PAUL, and RAMSEY COUNTY, <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, DEPARTMENT OF HOMELAND SECURITY, FEDERAL EMERGENCY MANAGEMENT AGENCY, and DAVID RICHARDSON, in his official capacity as Senior Official Performing the Duties of FEMA Administrator, <br><br> Defendants. | Civil Action No. 25-12765 <br><br> Hon. Manish S. Shah |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND STAY OF AGENCY ACTION**

## INTRODUCTION

Plaintiffs seek a preliminary injunction to stop Defendants' policy of conditioning Plaintiffs' public safety and emergency management grant awards on unlawful terms. Congress created these grants and appropriated this critical funding to protect Plaintiffs' communities. But Defendants now seek to use these programs as a weapon to further this Administration's anti-equity and anti-DEI campaign. Defendants cast the Challenged Conditions as simply asking grantees to do what they've always done—follow anti-discrimination law and executive guidance. But the Challenged Conditions single out DEI programs and require certification as to *all* grantee programs rather than just federally funded ones. Defendants further do so under threat of massive potential civil and criminal liability, based on this Administration's interpretation of antidiscrimination law. In short, Defendants demand that Plaintiffs accept new and ambiguous conditions divorced from the laws enacted by Congress, violating the Constitution and APA. Courts have repeatedly enjoined similar grant conditions. This Court should do the same.

## ARGUMENT

### I. The Tucker Act Does Not Apply.

Plaintiffs' opening brief explained that this Court has jurisdiction because "the Tucker Act does not cover challenges to grant funding conditions." [41][1] at 13–14 (citing cases). Since then, another court reached the same conclusion. *See California v. Dep't of Transp.*, 2025 WL 3072541, at **4–5 (D.R.I. Nov. 4, 2025). Ignoring this authority, Defendants argue that the Court lacks jurisdiction to order Defendants to make direct monetary payments to Plaintiffs. [62] at 11–12. But Plaintiffs seek a forward-looking equitable remedy—removal of the Challenged Conditions—not backward-looking money damages. *See* [40].

---

[1] Numbers in brackets refer to the document number on the CM/ECF electronic docket.

Defendants alternatively argue that *NIH* and *Department of Education* control "to the extent that plaintiffs are seeking to enforce an obligation to pay money pursuant to the grants they currently hold." [62] at 12–13 (citing *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) ("*NIH*"), *Dep't of Educ. v. California*, 604 U.S. 650 (2025) ("*DOE*")). But Plaintiffs largely do not hold executed FY2025 grant agreements. And a challenge to unlawful conditions placed on prospective grants does not "arise [] from any 'express or implied contract' because no such contract (i.e., executed grant agreement) yet exists." *Cal. v. DOT*, 2025 WL 3072541, at *5.

While Baltimore executed one grant incorporating the Challenged Conditions, "the gravamen" of Baltimore's claims do "not turn on terms of a contract" but rather on constitutional and statutory authorities. *R.I. Coal. Against Domestic Violence v. Kennedy*, 2025 WL 2988705, *4 (D.R.I. Oct. 23, 2025). Moreover, Plaintiffs' claims all seek equitable "relief that [the Court of Federal Claims] cannot grant and that therefore belong in district court." *City of Chi. v. DHS*, 2025 WL 3043528, at *12 (N.D. Ill. Oct. 31, 2025); *see generally id.* at **4–12.

## II. Plaintiffs Have Standing.

Defendants next argue that Plaintiffs lack standing to sue over the Challenged Conditions as to five DHS grant programs because Plaintiffs haven't yet received certain FY 2025 awards or will receive funds as subrecipients. [62] at 13–14. But Defendants are wrong on both accounts: Plaintiffs need not show standing on a grant-by-grant basis and have standing to challenge terms and conditions applied to them as subrecipients.

It is undisputed that: (1) Defendants adopted the Standard DHS Terms as a policy and categorically impose the Challenged Conditions on all DHS grants; and (2) Plaintiffs have and will receive funding through DHS grant programs.[2] Plaintiffs have thus been harmed by the Challenged

---

[2] On November 12, 2025, FEMA issued a Notice of Funding Opportunity (NOFO) for a FIFA World Cup Grant Program. *See* https://www.fema.gov/fact-sheet/notice-funding-opportunity-nofo-fifa-world-cup.The

2

Conditions, and an order enjoining DHS from imposing the Conditions would redress Plaintiffs' injury. Plaintiffs therefore have standing. . *See Schoenthal v. Raoul*, 150 F.4th 889, 901 (7th Cir. 2025) (plaintiffs had standing to challenge state law prohibiting concealed firearms on public transportation because plaintiffs demonstrated they would carry concealed firearms but for the statute, and a court order would provide redress).[3]

Subgrantees also have standing. *See, e.g.*, *City of Evanston v. Barr*, 412 F. Supp. 3d 873, 880 (N.D. Ill. 2019); *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 440, 457 (D.R.I. 2025). The FY 2025 Terms and Conditions "flow down to subrecipients," [42] at 6, and Plaintiffs' states have received EMPG and SHSP grants. *See*, *e.g.*, [48] ¶¶ 28, 33; [56] ¶¶ 15–16, 18–19, 22–24; [53] ¶ 10. Plaintiffs therefore face an imminent injury of having to decide whether to accept the Challenged Conditions or forego the sub-awards.

## III. Plaintiffs Are Likely to Succeed on the Merits.

### A. Defendants Violated the Separation of Powers and Acted Ultra Vires.

Plaintiffs' opening brief showed that Congress did not authorize Defendants to impose the Challenged Conditions under any of the grant programs at issue here, and that in some instances Congress directed Defendants to award grant funds for purposes that contradict the Conditions. [41] at 15–18. Defendants offer three responses, but none has merit.

---

NOFO includes the Challenged Conditions, and at least one Plaintiff, Boston, intends on applying.

[3] If it were needed, Plaintiffs have shown an imminent injury as to the three grant programs where awards have not been made because Plaintiffs have pending applications. *See Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010) ("Pre-enforcement challenges are proper … because a probability of future injury counts as 'injury' for the purposes of standing."). Denver and Saint Paul applied for SAFER grants that, if awarded, would be subject to the Challenged Conditions. *See* [49] ¶ 17; [57] ¶¶ 14, 43–46. Baltimore, Minneapolis, and Saint Paul applied for FP&S grants that likewise would be subject to the Conditions. *See* [44] ¶ 25; [51] ¶ 14; [57] ¶¶ 47–50. Plaintiffs have historically received SAFER and FP&S grants, making it likely that they will receive those grants in FY 2025. [57] ¶¶ 43, 47 and [51] ¶¶ 8, 13. New York City has applied for HMA funding, which its Department of Transportation was eligible to receive after a Presidentially declared disaster to implement projects in order to reduce the impact of future disasters. [54] ¶¶ 18–19.

3

### 1. No Law Authorizes the Challenged Conditions.

Defendants do not dispute and thus concede that the statutes authorizing Plaintiffs' grants do not permit the Challenged Conditions. *See* [41] at 15–18. Defendants instead cite Title VI and 2 C.F.R. § 200.300(a) as authority for the Discrimination Condition. *See* [62] at 15. Title VI prohibits "discrimination under any program or activity receiving Federal financial assistance," 42 U.S.C. § 2000d, while section 200.300(a) directs agencies "to ensure that *Federal funding* is expended and associated programs are implemented in full accordance with the U.S. Constitution, *applicable* Federal statutes and regulations." (emphases added). First, the Discrimination Condition is not authorized by Title VI and section 200.300(a) by requiring Plaintiffs to certify that they do not "operate *any* programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of *Federal anti-discrimination laws*." [42] at 11 (emphases added). The Discrimination Condition thus applies "irrespective of whether the program is federally funded," *Chi. Women in Trades v. Trump*, 778 F. Supp. 3d 959, 984 (N.D. Ill. 2025) ("*CWIT*"), and requires compliance with federal laws beyond Title VI, regardless of whether the laws are "applicable" to federally funded activities. *See City of Chi. v. Barr*, 961 F.3d 882, 899 (7th Cir. 2020) (statute requiring grantees to certify compliance with "applicable laws" referred only to laws "that apply specifically to grants or grantees"). Second, neither Title VI nor section 200.300(a) authorize Defendants to prohibit DEI programs for a certification requirement tied to potential treble damages for False Claims Act liability. *See City of Seattle v. Trump*, 2025 WL 3041905, at \*\*6-8 (W.D. Wa. Oct. 31, 2025) (Title VI does not authorize agencies to impose the Discrimination Condition in all grants). And in claiming that this new DEI condition simply implements Title VI, [62] at 20, Defendants ignore that the Discrimination Condition is utterly ambiguous and undefined, particularly in light of the Administration's actions, statements, and guidance that are

4

at odds with federal antidiscrimination law. *See* [41] at 12-13, 20-21; *Martin Luther King, Jr. Cnty. v. Turner* ("*King Cnty.*"), 2025 WL 2322763, at *12 (W.D. Wash. Aug. 12, 2025).

This is why Defendants' attempt to normalize the Discrimination Condition, *see* [62] at 16–18, misses the mark. True, Plaintiffs have regularly agreed to comply with applicable federal anti-discrimination laws when using federal funding. But Plaintiffs have never been asked to certify compliance with all federal anti-discrimination laws in implementing non-federally funded programs, much less to make a DEI-specific certification that could subject Plaintiffs to massive liability under Defendants' apparent interpretation of federal anti-discrimination law.

Beyond this, a "*regulation* cannot create *statutory* authority; only Congress can do that." *King Cnty.*, 2025 WL 2322763, at *12; *accord City of Fresno v. Turner*, 2025 WL 2721390, at *10 (N.D. Cal. Sept. 23, 2025); *see La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) (agencies have "no power to act ... unless and until Congress confers power upon" them). Therefore, neither 2 C.F.R. § 200.300(a) nor 2 C.F.R. § 200.211(c)(1)(ii) authorizes the Challenged Conditions.

Finally, Defendants compare the Executive Order Condition to prior years' conditions that required compliance with "relevant Executive Guidance." [62] at 25. To the extent that those conditions encompassed executive orders, the Supreme Court has rejected this sort of "curious appeal to entrenched executive error." *Rapanos v. United States*, 547 U.S. 715, 752 (2006).

### 2. *Dalton* Is Inapplicable.

Defendants argue Plaintiff's separation-of-powers claim is really a statutory claim, citing *Dalton v. Specter*, 511 U.S. 462 (1994). [62] at 18–19. In fact, Plaintiffs allege that Defendants are engaging in a fundamentally legislative action by imposing new conditions on spending and doing so without any Article II or statutory authority—a plain separation-of-powers violation. [1]

5

¶¶ 160–63. In any event, *Dalton* permits constitutional challenges to executive actions taken "in the absence of any authority." *CWIT*, 2025 WL 1331743, at *5 (N.D. Ill. May 7, 2025). Because no law allows the Challenged Conditions, "*Dalton* is inapposite." *Id.*

Moreover, "*Dalton* does not preclude fundamentally constitutional claims in situations where the facts could also be characterized as statutory violations." *Chicago v. DHS*, 2025 WL 3043528, at *14. In *City of Chicago v. Barr*, the Seventh Circuit held that the Attorney General "exceeded the authority delegated by Congress" and "violated the … separation of powers" when he imposed grant conditions in excess of his statutory authority. 961 F.3d at 931. Plaintiffs allege that Defendants imposed the Challenged Conditions to advance "Executive domestic policy goals" that are "unrelated" to and "undermine" Congress's directives. [1] ¶¶ 7, 9, 218–21. This case therefore does "not simply claim that the Executive Branch" violated statutes but rather "implicates … the balance of power between the executive and legislative branches," making *Dalton* inapplicable. *Chicago v. DHS*, 2025 WL 3043528, at *15.

### 3. The APA Does Not Displace Counts 1 & 2.

Defendants argue that equitable relief is unavailable under Counts 1 & 2 because "the APA provides a path of judicial review." [62] at 19, 20 n.3. Not so. "[E]quitable relief 'has long been recognized as the proper means for preventing entities from acting unconstitutionally.'" *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010); *accord Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) (courts may "enjoin unconstitutional actions by … federal officers"). Plaintiffs may seek this relief through a "'private right of action directly under the Constitution to challenge governmental action under … separation-of-powers principles.'" *Free Enter. Fund*, 561 U.S. at 491 n.2; *see Collins v. Yellen*, 594 U.S. 220, 245 (2021).

Courts "'will not construe a statute to displace courts' traditional equitable authority absent

6

the clearest command,'" *McQuiggin v. Perkins*, 569 U.S. 383, 397 (2013), and Congress "must be clear" if it "intends to preclude judicial review of constitutional claims." *Webster v. Doe*, 486 U.S. 592, 603 (1988). "Nothing in the APA evinces such an intent." *Juliana v. United States*, 947 F.3d 1159, 1167 (9th Cir. 2020). On the contrary, courts have repeatedly awarded equitable relief to remedy separation-of-powers violations by federal officials. *E.g.*, *City of Chi. v. Sessions*, 888 F.3d 272 (7th Cir. 2018); *CWIT*, 778 F. Supp. 3d at 993. A judge in this District therefore recently rejected Defendants' argument, holding that "plaintiffs' separation of powers claim is not displaced by the APA." *Chicago v. DHS*, 2025 WL 3043528, at *15. Similarly, "[n]othing" in the APA "repeal[s] the review of *ultra vires* actions." *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988); *accord Sierra Club v. Trump*, 963 F.3d 874, 891 (9th Cir. 2020), *vacated and remanded as moot sub nom. Biden v. Sierra Club*, 142 S. Ct. 46 (2021). Counts 1 & 2 thus "may proceed independently of the review procedures mandated by the APA." *Juliana*, 947 F.3d at 1168.

*Nuclear Regulatory Commission v. Texas*, 605 U.S. 665 (2025) ("*NRC*"), is not to the contrary. In that case, objectors to a nuclear-storage facility failed to intervene in agency proceedings about the facility and thus were barred from seeking judicial review under the Atomic Energy Act. The Supreme Court held that the objectors could not evade this statutory bar by asserting that the agency acted *ultra vires* of its authority under the Atomic Energy Act. *Id.* at 682. *NRC* did not involve a constitutional claim, so it "appl[ies] only to the ultra vires claim." *Chi. v. DHS*, 2025 WL 3043528, at *16. And unlike *NRC*, Plaintiffs are not using an *ultra vires* claim to circumvent their failure to comply with a regulatory scheme.

### B. Defendants Violated the Spending Clause.

Plaintiffs' opening brief showed that Defendants violated the Spending Clause because the Challenged Conditions are ambiguous, unrelated to the grant programs' purposes, unduly coercive,

7

and retroactive. [41] at 19–24. Defendants respond that the Spending Clause does not apply to the Executive Branch. [62] at 21. In fact, the Spending Clause "appl[ies] to agency-drawn conditions on grants to states and localities just as [it does] to conditions Congress directly places on grants." *City of L.A. v. Barr*, 929 F.3d 1163, 1175 n.6 (9th Cir. 2019); *accord Cal. v. DOT*, 2025 WL 3072541, at *10 n.2. Courts have repeatedly applied the Spending Clause to grant conditions imposed by the Executive. *E.g.*, *City & Cnty. of S.F. v. Trump*, 783 F. Supp. 3d 1148, 1193 (N.D. Cal. 2025); *New York v. Dep't of Health & Human Servs.*, 414 F. Supp. 3d 475, 567 (S.D.N.Y. 2019); *Illinois v. FEMA*, 2025 WL 2716277, at ** 13–14 (D.R.I. Sept. 24, 2025).

Beyond this threshold point, Defendants ignore Plaintiffs' arguments that the Challenged Conditions are unlawfully retroactive and coercive, therefore waiving any response. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Defendants' responses to Plaintiffs' other arguments lack merit for the reasons described below.

### 1. The Challenged Conditions are Ambiguous.

Defendants first argue that the Spending Clause demands only that Congress "make clear that acceptance of federal funds obligates States to comply with a condition." [62] at 22 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981)). That would make the unambiguity requirement meaningless; any enumerated condition, no matter how ambiguously worded, would suffice. But that is not what *Pennhurst* held. Rather, *Pennhurst* explained: "The crucial inquiry ... is not whether a State would knowingly undertake that obligation, but whether Congress spoke so clearly that we can fairly say that the State could make an informed choice." 451 U.S. at 25. It is not enough that Plaintiffs know the Challenged Conditions exist; the Conditions must be "unambiguous[]," so that Plaintiffs can "'exercise their choice knowingly, cognizant of the consequences of their participation.'" *Barr*, 961 F.3d at 907.

8

Defendants alternatively argue that the Discrimination Condition is unambiguous because it simply requires compliance with "Federal anti-discrimination laws." [62] at 21. That language is not clarifying; it is neither limited to laws applicable to federally funded programs nor identifies the specific laws with which Plaintiffs must comply. *See Barr*, 961 F.3d at 907–08 (interpreting the phrase "other applicable federal law" to encompass "all federal laws" would violate the Spending Clause). Moreover, the DHS Standard Terms separately require that Plaintiffs certify compliance with Title VI and other specific federal anti-discrimination laws applicable to federally funded programs. *See, e.g.*, [42] at 8–9. Defendants do not explain why the Discrimination Condition is necessary if it means only that Plaintiffs must comply with Title VI and other laws separately identified in the grants. *See Call v. Ameritech Mgmt. Pension Plan*, 475 F.3d 816, 821 (7th Cir. 2007) (rejecting an interpretation that makes a "section superfluous").

Defendants say that Plaintiffs "are not being asked to sign on to … the Administration's views about the proper interpretation of federal anti-discrimination laws" but rather need only "agree[] not to violate the laws currently in place." [62] at 17. But as another judge in this District stated, "what might make any given 'DEI' program violate Federal anti-discrimination laws … is left entirely to the grantee's imagination." *CWIT*, 778 F. Supp. 3d at 984. Indeed, when pressed by courts, federal government lawyers have been unable to explain which "DEI" activities are legal and which are not. *See id.*; *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 767 F. Supp. 3d 243, 282 (D. Md. 2025), *stayed*, No. 25-1189 (4th Cir.). Moreover, FEMA instructed grantees to comply with the Bondi Memo, which recasts conduct previously held lawful to be violations of federal anti-discrimination law. *See* [41] at 21. Defendants ignore the point.

The Discrimination Condition's ambiguity is particularly problematic because the Condition gives the DHS Secretary unilateral authority to determine whether a recipient has

9

violated the Condition, with no qualifications based on existing law. Plus, the Condition expressly invokes the False Claims Act; the current Administration has threatened False Claims Act and criminal penalties against grantees that certify compliance with anti-DEI conditions; and DOJ has already initiated investigations into some Plaintiffs for allegedly unlawful DEI practices. *See* [41] 12–13. The Discrimination Condition thus leaves Plaintiffs "at the mercy of Defendants' interpretation [of those laws], regardless of how those laws are interpreted by the courts," even though Defendants' interpretations are often "inconsistent with well-established legal precedent." *King. Cnty.*, 2025 WL 2322763, at *13.

Defendants' reliance on *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184 (N.D. Cal. 2025), and *Nat'l Ass'n of Diversity Officers in Higher Educ.*, No. 25-1189, ECF No. 29 (4th Cir. Mar. 14, 2025), is misplaced. Those cases involved pre-enforcement challenges to executive orders, where the courts "reserve[d] judgment on how the administration enforces these executive orders," *id.* at 4 n.1 (Diaz, C.J., concurring), based on the "understanding" that the orders did not implicate "activities outside the scope of the funded activities." *Id.* at 7 (Harris, J., concurring); *see S.F. A.I.D.S. Found.*, 786 F. Supp. 3d at 1218 n.10 (finding it "unclear" whether the executive orders applied to conduct "outside of the grant-funded activity"). By contrast, Plaintiffs challenge conditions that Defendants inserted in awarded grants; the Discrimination Condition applies to non-federally funded programs; and the Attorney General later issued (and FEMA has enforced) the Bondi Memo. *See Seattle*, 2025 WL 3041905, at **8–9.

The Discrimination Condition also requires grantees to certify that they will not engage in a "discriminatory prohibited boycott." [42] at 11. This requirement neither defines its terms nor is it tied to any particular laws. Defendants offer no response.

The Executive Order Condition violates the Spending Clause because the term "related to

10

grants" is impermissibly ambiguous, as courts have found in enjoining similar conditions. *See* [41] at 22. Ignoring those decisions, Defendants fault Plaintiffs for not identifying executive orders that "may cause them harm." [62] at 26. In fact, Plaintiffs have identified such executive orders, [1] ¶ 140 n.11, and of course cannot identify future harmful executive orders. In any case, Plaintiffs' claims do not rest on the potential harm of executive orders; Plaintiffs' claims derive from the unauthorized imposition of the Executive Order Condition as a blanket policy that applies to all grants.

### 2. The Conditions are not Reasonably Related to the Grants' Purposes.

Defendants offer little basis to find a reasonable relationship between the Challenged Conditions and authorizing statutes beyond calling the requirement a "low-threshold." [62] at 23. But courts have repeatedly invoked the reasonable-relationship requirement to enjoin grant conditions. *E.g.*, *S.F. Unified Sch. Dist. v. AmeriCorps*, 789 F. Supp. 3d 716, 750 (N.D. Cal. June 18, 2025); *Illinois*, 2025 WL 2716277, at *14; *Cal. v. DOT*, 2025 WL 3072541, at *11. In this case, the authorizing statutes often expressly *favor* DEIA practices—rendering the Challenged Conditions not only unrelated to, but inconsistent with, the authorizing statutes. [41] at 15–18. And as explained above, the Discrimination Condition applies to grantee programs that do not use federal funding—the antithesis of a reasonable relationship. Defendants ignore both points.

Defendants instead find "something disquieting" in local governments "seeking federal funds to enforce their own laws" while supposedly "violating those laws." [62] at 24 (quoting *New York v. Dep't of Justice*, 951 F.3d 84, 107 (2d Cir. 2020)). The Seventh Circuit expressly rejected that concern, explaining that "states do not forfeit all autonomy over their own police power merely by accepting federal grants." *Barr*, 961 F.3d at 887. Defendants "cannot pursue the policy objectives of the executive branch through the power of the purse." *Id.*

11

### C. Defendants Violated the APA.

#### 1. Defendants' Decisions Are Reviewable.

Defendants argue that Plaintiffs cannot pursue APA claims as to seven grants because they are awarded under discretionary programs and are thus decisions "committed to agency discretion by law." [62] at 26–28 (citing 5 U.S.C. § 701(a)(2)). To "honor the presumption of judicial review" under the APA, courts interpret section 701(a)(2) "'narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019). The "presence of some discretion in the system does not necessarily defeat the availability of judicial review over other elements." *Home Builders Ass'n of Greater Chicago v. U.S. Army Corp of Engineers*, 335 F.3d 607, 614 (7th Cir. 2003).

Courts have consistently reviewed APA claims challenging conditions to discretionary grants, finding "no merit" in the notion that "discretionary grants are somehow categorically unreviewable." *Illinois*, 2025 WL 2716277, at *10; *e.g.*, *Fresno*, 2025 WL 2721390, at **6–7; *Martin Luther King Jr., Cnty. v. Turner*, 785 F. Supp. 3d 863, 884 (W.D. Wash. Jun. 3, 2025); *S.F. Unified Sch. Dist. v. AmeriCorps*, 784 F. Supp. 3d 1280, 1288 (N.D. Cal. 2025). In this case, Plaintiffs challenge an agency policy to adopt the Challenged Conditions and insert those Conditions in Plaintiffs' grants, violating the Constitution and authorizing statutes. As in the decisions cited above, those authorizing statutes provide ample grounds to review Defendants' actions. *See Menominee Indian Tribe v. EPA*, 947 F.3d 1065, 1072 (7th Cir. 2020) (section 701(a)(2) is a "very narrow exception applicable only when there is no law to apply").

Defendants cite *Lincoln v. Vigil*, 508 U.S. 182 (1993), for the proposition that "grant-award decisions are presumptively unreviewable." [62] at 27. But Plaintiffs are not challenging a decision

12

to award grants. Beyond this, *Lincoln* involved a lump-sum appropriation, pursuant to statutes authorizing expenditures "for the benefit, care, and assistance of the Indians," that a federal agency used to establish a regional health program for Native American children. 508 U.S. at 185–86. The Supreme Court held that the APA precluded review of the agency's decision to discontinue the regional program in favor of a national program because Congress did not "circumscribe agency discretion … by putting restrictions in the operative statutes." *Id.* at 193. In contrast, the statutes at issue here authorize grant programs for restricted purposes and Congress has repeatedly appropriated funds for those purposes. *See* [41] at 15–18. Section 701(a)(2) therefore does not preclude review of Plaintiffs' APA claims. *See Chi. v. DHS*, 2025 WL 3043528, at **17, 22.

### 2. Defendants' Merits Arguments Fail.

Courts have repeatedly found that imposing grant conditions without statutory or constitutional authority—including conditions like those challenged here—violates the APA. *See City & Cnty. of S.F.*, 2025 WL 1738675, at *1; *Fresno*, 2025 WL 2721390, at **10–12; *King Cnty.*, 785 F. Supp. 3d at 884–88; *AmeriCorps*, 789 F. Supp. 3d at 742–51. Defendants do not address these decisions.

Defendants also fail to overcome Plaintiffs' showing that the Challenged Conditions are arbitrary and capricious. Defendants do not dispute that they failed to provide a reasoned explanation for inserting the Challenged Conditions. Instead, Defendants claim that the Challenged Conditions are not "new" because they largely repeat prior years' conditions, so Defendants need not provide any explanation at all. [62] at 28.

In fact, Defendants identify no prior conditions mentioning "DEI," "discriminatory equity ideology," or "prohibited boycotts." Defendants also fail to identify prior conditions that regulated activities using non-federal funds. And Defendants do not dispute that their "view of what is illegal

13

[DEI] has changed significantly with the new Administration," *CWIT*, 778 F. Supp. 3d at 984, or that they have threatened treble damages liability and criminal penalties against grantees who sign certifications that Defendants deem inaccurate. The Challenged Conditions thus "reflect changes in agency position which require not only an explanation of reasoning but also consideration of reliance interests among other important factors." *Fresno*, 2025 WL 2721390, at *8.

Defendants also suggest that Plaintiffs' only reliance interests are in violating existing law. [62] at 28–29. That is false. Plaintiffs' reliance interests are in continuing to receive critical funding, received for many years and relied upon in budgets, without being subjected to unlawful conditions. Because Defendants have failed to provide any reasoned explanation for their change in policy or disregard of Plaintiffs' reliance interests, the Challenged Conditions are arbitrary and capricious. *See Fresno*, 2025 WL 2721390, at *9; *King Cnty.*, 785 F. Supp. 3d at 888–89; *Illinois*, 2025 WL 2716277, at *12.

## IV. Irreparable Harm Exists and the Balance of Equities Tips in Plaintiffs' Favor.

Defendants' argument that Plaintiffs have not established irreparable injury rests on the mistaken premise that Plaintiffs' harms are "purely economic." [62] at 28–29. They're not. Plaintiffs have demonstrated constitutional violations infringing on protected interests, so "irreparable harm is presumed." *Ezell v. City of Chi.*, 651 F.3d 684, 699 (7th Cir. 2011). And by imposing unlawful conditions on disaster and emergency preparedness funding, Defendants have put Plaintiffs in the impossible position of choosing between unlawful grant terms or losing access to over one hundred million dollars in congressionally-appropriated funding necessary to protect their communities. This Hobson's choice is irreparable injury. *See City of Chi. v. Sessions*, 264 F. Supp. 3d 933, 950 (N.D. Ill. 2017).

Defendants respond that Plaintiffs can avoid harm by "mak[ing] the voluntary choice to

14

forego [the] funds." [62] at 30. Under that view, no grant applicant would ever have standing to challenge a grant condition because they could always choose to decline the award. Plaintiffs' dilemma illustrates why this is untenable: accepting the Challenged Conditions could expose Plaintiffs to the risk of treble damages liability and worse under the current Administration's apparent reinterpretation of federal law, while refusing to do so could lead to Plaintiffs suffering the very harms Congress sought to address by funding these programs in the first place. *See Illinois*, 2025 WL 2716277, at *1. With the safety of their residents, communities, and first responders on the line, it is incorrect to suggest that Plaintiffs can simply choose to "forgo" critical emergency preparedness funding.

For the same reasons, the balance of equities favors a preliminary injunction. The programs at issue here provide critical funds to protect Plaintiffs' cities and residents from emergencies and natural disasters. By contrast, Defendants say that enjoining the Challenged Conditions would "disrupt DHS's ongoing consideration of grant applications for the upcoming year," [62] at 31, but fail to explain how that could be true or why it outweighs the significant harm asserted by Plaintiffs. Defendants cite *Trump v. Wilcox*, but that case represented a fundamentally different level of disruption to the government: it was about which officer would lead federal agencies during the litigation. 145 S. Ct. 1415, 1415 (2025); *accord Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). Finally, nothing in this case prevents Defendants from vindicating their interest in enforcing the separate and longstanding conditions that prohibit grantees from violating federal anti-discrimination statutes, as those laws have been interpreted by the judiciary.

## **CONCLUSION**

Plaintiffs request that the Court grant Plaintiffs' motion for a preliminary injunction [40], and enter the order submitted to the Court's proposed order inbox on October 24, 2025.

Dated: November 14, 2025     Respectfully submitted,

                                                Mary B. Richardson-Lowry
                                                Corporation Counsel of the City of Chicago

                                                By: /s/ *Stephen Kane*
                                                Stephen Kane
                                                Rebecca Hirsch
                                                Chelsey Metcalf
                                                Rachel Zemke
                                                City of Chicago Department of Law
                                                121 North LaSalle Street, Room 600
                                                Chicago, Illinois 60602
                                                Tel: (313) 744-9484
                                                stephen.kane@cityofchicago.org
                                                rebecca.hirsch2@cityofchicago.org
                                                chelsey.metcalf@cityofchicago.org
                                                Rachel.zemke@cityofchicago.org


ADAM CEDERBAUM
Corporation Counsel, City of Boston

By: /s/ *Samuel B. Dinning*
SAMUEL B. DINNING, MA BBO 704304**
Chief of Staff & Policy
TERESA K. ANDERSON, MA BBO 669985*
Assistant Corporation Counsel
City of Boston Law Department
One City Hall Square, Room 615
Boston, MA 02201
Telephone: (617) 635-4034
E-Mail: samuel.dinning@boston.gov
teresa.anderson@pd.boston.gov
*Attorneys for Plaintiff City of Boston*


MICHIKO (MIKO) ANDO BROWN
City Attorney, City and County of Denver

By: /s/ *Katie McLoughlin*
Katie McLoughlin (CO Bar No. 51980)*
Matthew J. Mulbarger (CO Bar No. 51918)**
Denver City Attorney's Office
201 W Colfax Avenue
Denver, CO 80202
Tel: 720-913-8050

16

katie.mcloughlin@denvergov.org
matthew.mulbarger@denvergov.org
*Attorneys for Plaintiff City and County of Denver*


EBONY M. THOMPSON
Baltimore City Solicitor

By: /s/ *Sara Gross*
Sara Gross (MD 0412140305)*
Chief, Affirmative Litigation Division
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Telephone: (410) 396-3947
E-Mail: sara.gross@baltimorecity.gov
*Attorneys for Plaintiff*
*Mayor & City Council of Baltimore*


LYNDSEY OLSON
Saint Paul City Attorney

By:  /s/ *Kelsey McElveen*
KELSEY MCELVEEN **
Assistant City Attorney
SAINT PAUL CITY ATTORNEY'S OFFICE
400 City Hall and Courthouse
15 Kellogg Boulevard West
Saint Paul, Minnesota 55102
Telephone:	(651) 266-8710
Facsimile:	(651) 298-5619
E-Mail:	Kelsey.McElveen@ci.stpaul.mn.us
*Attorneys for Plaintiff City of Saint Paul*


MURIEL GOODE-TRUFANT
Corporation Counsel of the City of New York

By: /s/ *Doris Bernhardt*
Doris Bernhardt (NY Bar No. 4449385)**
Hope Lu (NY Bar No. 5606934)*
100 Church Street
New York, NY 10007
Tel: (212) 356-1000
*Attorneys for Plaintiff City of New York*

17

CITY OF NEW YORK

KRISTYN ANDERSON
Minneapolis City Attorney

By: /s/ *Kristyn Anderson*
Kristyn Anderson, MN Lic. 0267752**
City Attorney
Sara J. Lathrop, MN Lic. 0310232**
Munazza Humayun, MN Lic. 0390788*
Heather P. Robertson, MN Lic. 0390470**
Assistant City Attorneys
350 South Fifth Street
Minneapolis MN 55415
612-299-2716
612-431-1826
612-299-2742
612-431-2468
kristyn.anderson@minneapolismn.gov
sara.lathrop@minneapolismn.gov
munazza.humayun@minneapolismn.gov
heather.robertson@minneapolismn.gov
*Attorneys for Plaintiff City of Minneapolis*


By: /s/ *Bradley Cousins*
Bradley Cousins, MN Bar #0400463 **
Assistant Ramsey County Attorney
Stacey D'Andrea, MN Bar #0388320 **
Assistant Ramsey County Attorney
Jada Lewis, MN Bar #0391287 **
Assistant Ramsey County Attorney
Ramsey County Attorney's Office
360 Wabasha St. N., Suite 100
Saint Paul, MN 55102
Telephone: 651-266-3081 (Cousins)
651-266-3051 (D'Andrea)
651-266-3149 (Lewis)
E-mail: Bradley.cousins@co.ramsey.mn.us
Stacey.dandrea@co.ramsey.mn.us
Jada.lewis@co.ramsey.mn.us
*Attorneys for Plaintiff Ramsey County*


PATRICIA KING
Corporation Counsel for the City of New Haven

By: /s/ *Michael P. Bowler*
Michael P. Bowler, CT Bar #407379*
City of New Haven
Office of the Corporation Counsel
165 Church Street, 4th Floor
New Haven, CT 06510
475-331-3244
mbowler@newhavenct.gov
*Attorneys for Plaintiff City of New Haven*


By: */s/ Toby Merrill*
Toby Merrill (MA Bar #601071)**
Litigation Director, Public Rights Project
Sai Mohan (CA Bar #350675)**
Erin Monju (DC Bar #90036952)**
490 43rd St., Unit # 115
Oakland, CA 94609
707-297-3837
Toby@publicrightsproject.org
Sai@publicrightsproject.org
Erin@publicrightsproject.org
*Counsel for all Plaintiffs*


\* Application forthcoming for admission pro hac vice
\*\* Admitted pro hac vice

19