UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CITY OF CHICAGO, CITY OF BOSTON, CITY OF NEW YORK, MAYOR AND CITY COUNCIL OF BALTIMORE, CITY AND COUNTY OF DENVER, CITY OF MINNEAPOLIS, CITY OF NEW HAVEN, CITY OF SAINT PAUL, and RAMSEY COUNTY, | ) ) ) ) ) ) ) ) ) |  |
| Plaintiffs, | ) ) | No. 25 C 12765 |
| v. | ) ) | Judge Shah |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security, DEPARTMENT OF HOMELAND SECURITY, FEDERAL EMERGENCY MANAGEMENT AGENCY, and KAREN S. EVANS,[1] in her official capacity as Acting FEMA Administrator, | ) ) ) ) ) ) ) |  |
| Defendants. | ) |  |

## NOTICE OF APPEAL

NOTICE is hereby given that Kristi Noem, in her official capacity as Secretary of Homeland Security; Department of Homeland Security; Federal Emergency Management Agency; and Karen S. Evans, in her official capacity as Acting Administrator of FEMA, defendants in the above-named case, hereby appeal to the United States Court of Appeals for the Seventh Circuit from the Memorandum Opinion and Order Granting Preliminary Injunction (Dkt. 72, 74) entered in this action on November 21, 2025

---

[1] Acting FEMA Administrator Karen S Evans has replaced David Richardson, formerly the Senior Official Performing the Duties of FEMA Administrator, and she is automatically substituted as a defendant under Fed. R. Civ. P. 25(d).

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Patrick Johnson
    PATRICK JOHNSON
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-5327
    patrick.johnson2@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CITY OF CHICAGO, CITY OF BOSTON,
CITY OF NEW YORK, MAYOR AND CITY
COUNCIL OF BALTIMORE, CITY AND
COUNTY OF DENVER, CITY OF
MINNEAPOLIS, CITY OF HEW HAVEN,
CITY OF SAINT PAUL, and RAMSEY
COUNTY,

             Plaintiffs,

         v.

KRISTI NOEM, in her official capacity
as Secretary of Homeland Security,
DEPARTMENT OF HOMELAND SECURITY,
FEDERAL EMERGENCY MANAGEMENT
AGENCY, and DAVID RICHARDSON, in
his official capacity as Senior Official
Performing the Duties of FEMA
Administrator,

             Defendants.

No. 25 CV 12765

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

The Department of Homeland Security and its agencies administer grant programs pursuant to statutory authority and funded by congressional appropriations. The grants cover everything from transit safety to nuclear weapon detection. Grant recipients must abide by the DHS Standard Terms and Conditions. Following a series of Executive Orders, DHS added new provisions in the Standard Terms and Conditions requiring recipients to certify that they will not operate any programs that promote diversity, equity, and inclusion in violation of federal anti-discrimination law, and requiring recipients to comply with all Executive Orders

related to grants. Nine cities and counties who rely on DHS grants for substantial portions of their budgets filed this case to set aside the new provisions for being ultra vires unconstitutional conditions, and for violating the Administrative Procedure Act. Those plaintiffs now seek a preliminary injunction to prevent enforcement of the challenged conditions before accepting this year's grant awards. For the reasons below, the plaintiffs' motion for a preliminary injunction is granted in part.

## I.    Legal Standards

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Richwine v. Matuszak*, 148 F.4th 942, 952 (7th Cir. 2025). "[A]n applicant for preliminary relief bears a significant burden, even though the Court recognizes that, at such a preliminary stage, the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (2020)).

## II.    Background

Congress appropriates billions of dollars each year to grant programs to support public safety and disaster recovery. [1] ¶ 29.[1] Most of those grant programs are administered by the Department of Homeland Security and its agencies, most commonly the Federal Emergency Management Agency. [1] ¶ 29. Those funds go to state and local governments across the country. [1] ¶ 30. Plaintiffs here are local

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

governments from seven states that rely on funding from DHS grant programs to support their emergency-management functions. [1] ¶¶ 15–23, 30.

Immediately after taking office in January 2025, the President issued a series of Executive Orders pertaining to federal grants and diversity, equity, and inclusion initiatives. *See* Exec. Order No. 14,151, 90 Fed. Reg. 8339 (Jan 20, 2025); Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21 2025). Those Executive Orders direct the head of each agency to "terminate, to the maximum extent allowed by law," all DEI grants and all DEI performance requirements for grantees. Exec. Order No. 14,151, 90 Fed. Reg. 8339, § 2(b)(i) (Jan 20, 2025).

In April 2025, DHS issued new Standard Terms and Conditions for Fiscal Year 2025. The new Terms and Conditions, Version 3 for Fiscal Year 2025, include the following provisions:

XVII. <u>Anti-Discrimination</u>

Recipients must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4) [sic].[2]

(1) Definitions. As used in this clause –

    (a) DEI means "diversity, equity, and inclusion."

    (b) DEIA means "diversity, equity, inclusion, and accessibility."

    (c) Discriminatory equity ideology has the meaning set forth in Section 2(b) of Executive Order 14190 of January 29, 2025.

---

[2] The Department likely meant to cite 31 U.S.C. § 3729(b)(4), the definition of "material" under the False Claims Act.

(d) Federal anti-discrimination laws mean Federal civil rights law that protect individual Americans from discrimination on the basis of race, color, sex, religion, and national origin.

(e) Illegal immigrant means any alien, as defined in 8 U.S.C. § 1101(a)(3), who has no lawful immigration status in the United States.

(2) Grant award certification.

(a) By accepting the grant award, recipients are certifying that:

(i) They do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws; and

(ii) They do not engage in and will not during the term of this award engage in, a discriminatory prohibited boycott.

(iii) They do not, and will not during the term of this award, operate any program that benefits illegal immigrants or incentivizes illegal immigration.[3]

(3) DHS reserves the right to suspend payments in whole or in part and/or terminate financial assistance awards if the Secretary of Homeland Security or her designee determines that the recipient has violated any provision of subsection (2).

(4) Upon suspension or termination under subsection (3), all funds received by the recipient shall be deemed to be in excess of the amount that the recipient is determined to be entitled to under the Federal award for purposes of 2 C.F.R. § 200.346. As such, all amounts received will constitute a debt to the Federal Government that may be pursued to the maximum extent permitted by law.

XXXI. <u>Presidential Executive Orders</u>

Recipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference.

---

[3] Plaintiffs do not challenge the immigration conditions, which are the subject of ongoing litigation not before this court. *See State of Illinois v. Federal Emergency Management Agency*, 25-cv-00206-WES (D.R.I.).

4

[1-1] at 7–8, 10. These conditions are attached to all DHS grant awards. [1] ¶ 158.

Plaintiffs challenge these changes to the DHS Standard Terms and Conditions as incorporated into nine grant programs: the Emergency Management Performance Grant Program, the Homeland Security Grant Program, the Assistance to Firefights Grant Program, the Hazard Mitigation Assistance Program, the Port Security Grant Program, the Staffing for Adequate Fire and Emergency Response (SAFER) Grant Program, Fire Prevention and Safety Grants, the Transit Security Grant Program, and the Securing the Cities Grant Program. [1] ¶¶ 37–38. Except for the Securing the Cities Grant Program, all those initiatives are administered by FEMA. [1] ¶¶ 37–38. Plaintiffs contend that, through its new Standard Terms and Conditions, DHS is imposing unconstitutional conditions on hundreds of millions of dollars in federal funding that they depend on for critical public services. [1] ¶ 10.[4]

The government maintains that the conditions do nothing of the sort—rather, the conditions only require grantees to comply with the law, something they have always been required to do. [62] at 16. Plaintiffs, however, "have never been asked to certify compliance with all federal anti-discrimination laws in implementing non-federally funded programs." [64] at 6. Nor were prior conditions to comply with "relevant executive guidance" drafted as broadly as the Presidential Executive Orders Condition's requirement to comply with all "Presidential Executive Orders related to

---

[4] Plaintiffs also identify other ways in which the Department appears to be implementing the Executive Orders on diversity, equity, and inclusion. For example, the FEMA Preparedness Grants Manual requires grant recipients to state whether they have "any diversity, equity, and inclusion practices" when requesting reimbursement. [42] at 66.

grants." [64] at 6. Adding to plaintiffs' confusion: central terms like "discriminatory prohibited boycott" and "related to grants" are not defined. *See* [1-1]. And plaintiffs assert that the certification conditions could be read to require them to adopt or anticipate the government's view on what diversity, equity, and inclusion programming entails. [41] at 21.

At the time of filing the complaint, plaintiffs faced October 24 and October 25, 2025, deadlines for accepting grant awards. [20] ¶ 1. In exchange for plaintiffs forgoing a motion for a temporary restraining order, defendants agreed to extend the deadline to respond to the grant awards to November 24, 2025. [20] ¶ 3. On November 20, 2025, the government agreed to extend the deadline for plaintiffs to accept any grant award or funding related to this case to no earlier than December 31, 2025. [70] ¶ 4.

## III. Analysis

### A. Jurisdiction

"Federal courts are courts of limited jurisdiction: It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 731 (7th Cir. 2021) (quoting *Hart v. FedEx Ground Package System, Inc.*, 457 F.3d 675, 679 (7th Cir. 2006)) (cleaned up). Subject-matter jurisdiction is a threshold question that must be resolved before the merits may be addressed. *Gilbank v. Wood Cnty. Dept. of Human Services*, 111 F.4th 754 (7th Cir. 2024).

1.  *Standing*

Standing is an indispensable part of plaintiffs' case. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U. S. Bank N.A*, 590 U.S. 538, 540 (2020). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

For cases seeking prospective relief, the alleged injury must be "imminent"— meaning it must be "*certainly* impending" and not merely a "*possible* future injury." *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013) (emphasis in original). But it is "well-established that pre-enforcement challenges are within Article III." *File v. Martin*, 33 F.4th 385, 389 (7th Cir. 2022). The threatened enforcement is "sufficiently imminent" when the plaintiffs allege that they intend to "engage in a course of conduct arguably affected" by the challenged provision, and there is "a credible threat of prosecution thereunder." *Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021). Plaintiffs do not need to show or confess that their conduct will actually violate the challenged conditions if enforcement against them is likely. *Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023). The "enforcement" at issue here is the imposition of the challenged grant conditions on plaintiff's conduct. The challenged conditions require plaintiffs to take actions—certifications and acts of

compliance that they otherwise would not take—to receive federal funds that they have been awarded or reasonably expect to be awarded this fiscal year.

All plaintiffs have standing to challenge the imposition of the DHS Standard Terms and Conditions. Plaintiffs have submitted declarations attesting that they have all received in the past and applied for at least one of the listed grants, and at least one plaintiff has received in the past and applied for each listed grant. *See* [43]. The new DHS Standard Terms and Conditions are effective now and will be inserted into all DHS grants in the 2025 fiscal year. Accordingly, all plaintiffs are threatened with the imposition of the DHS Standard Terms and Conditions onto the receipt of awarded funds.

That some of the plaintiffs are subrecipients of some of the grants does not defeat their standing. By the express language of the DHS Standard Terms and Conditions, they apply and "flow down to subrecipients unless a term or condition specifically indicates otherwise." [1-1] at 2. No such carveout appears in any of the challenged conditions, and so subrecipients suffer the same injuries as any other recipient. *See City of Evanston v. Sessions*, No. 18-CV-4853, 2018 WL 10228461, *2 (N.D. Ill. Aug. 9, 2018) (subrecipient had standing because it must accept conditions just like other would-be grantees).

The alleged injuries are also fairly traceable to the defendants and would be redressed by the requested injunction. The conditions that plaintiffs allege will cause them harm are found in the Standard Terms and Conditions for grants issued by DHS and incorporated by reference into all its grant awards—unlawful enforcement

8

of those conditions would thus be fairly traceable to DHS. And although the flow of awarded funds to a subrecipient may depend on steps by the direct grantee, proximate cause is not the test for traceability. *See Bennett v. Spear*, 520 U.S. 154, 171 (1997). Plaintiffs have offered the "relatively modest" showing necessary to establish that this conditional receipt of funding, whether as direct grantees or subrecipients, is fairly traceable to DHS. *See id.*

An order stopping the conditions from being enforced against the plaintiffs would prevent the injury. That is all that is necessary for a case or controversy under Article III.

### 2.   *Tucker Act*

The Tucker Act confers jurisdiction exclusively to the U.S. Court of Federal Claims for contract actions against the United States exceeding $10,000. 28 U.S.C. §§ 1346(a)(2) & 1491(a)(1).

The Supreme Court addressed the application of the Tucker Act to federal grants in *Dep't of Educ. v. California*, 604 U.S. 650 (2025) (per curiam) and *Natl. Insts. of Health v. Am. Pub. Health Assn.*, 145 S.Ct. 2658 (2025) (per curium).[5] While the Supreme Court's "interim orders are not conclusive as to the merits, they inform how a [lower] court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S.Ct. 2653, 2654 (2025).

---

[5] *See also California v. U.S. Department of Education*, No. 25-CV-10548-AK, 2025 WL 3165713 (D. Mass. Nov. 13, 2025); *City of Chicago v. U.S. Dept. of Homeland Sec.*, No. 25-CV-5463, 2025 WL 3043528 (N.D. Ill. Oct. 31, 2025).

As discussed in *National Institutes of Health*, a district court has no jurisdiction to order relief designed to enforce any obligation to pay money pursuant to a federal grant.[6] *Natl. Insts. of Health*, 145 S.Ct. at 2659. When the relief sought is only to vacate guidance documents, however, and does not require payment of money, that is a standard APA challenge that district courts have original jurisdiction over. *Id.* at 2661 (Barrett, J., concurring).[7]

Plaintiffs here do not challenge the termination of any grant or seek any relief that would obligate the government to pay money. [1]. They only seek an order prohibiting DHS and its agencies from enforcing provisions of its Standard Terms and Conditions—the relief left undisturbed by *National Institutes of Health*. 145 S.Ct. at 2661 (Barrett, J., concurring). The Tucker Act does not apply to this case.

## B. Administrative Procedure Act

The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action" that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity;" or "(C) in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706.

---

[6] For sums over $10,000. 28 U.S.C. §§ 1346(a)(2).

[7] The Court in *National Institutes of Health* split 4-1-4, with four justices voting to deny the stay in full, four justices voting to grant the stay in full, and Justice Barrett providing the deciding fifth vote to grant the stay in part. 145 S.Ct. at 2659. Because her vote decided the application, I view her concurrence as instructive.

10

1.  *Reviewability*

The APA does not apply to "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). That is not a jurisdictional bar but instead gets to the merits of whether the plaintiff can show the agency action was unlawful. *Builders Bank v. Fed. Deposit Ins. Corp.*, 846 F.3d 272, 274 (7th Cir. 2017). It is also a narrow exception, only applicable in "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*, 586 U.S. 9, 23 (2018) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)).[8]

All the statutes relevant to the grants here provide meaningful standards by which a court could conduct judicial review. *See* 6 U.S.C. § 762 (ordering the FEMA Administrator to implement the Emergency Management Performance Grants program and make grants available according to statutory authorization and an apportionment formula); 6 U.S.C. §§ 603–09 (ordering the Secretary of Homeland Security to establish the Homeland Security Grant Program according to a detailed statutory scheme); 15 U.S.C. § 2229 (authorizing the FEMA Administrator to award Assistance to Firefighters Grants for enumerated purposes); 42 U.S.C. § 5170c (authorizing the President to issue Hazard Mitigation Assistance Grants according to criteria and percentage formulas); 46 U.S.C. § 70107 (ordering the Secretary of Homeland Security to allocate Port Security Grant funds on the basis of risk and

---

[8] The government's brief omits the phrase "lump-sum appropriation" from the quoted language in *Lincoln. Contrast* [62] at 21 *with Lincoln*, 508 U.S. at 192. What an agency chooses to do with its lump-sum appropriation—as was the case in *Lincoln*—is distinct from grants an agency is expressly directed by statute to issue—as is the case here.

requiring the same to submit a report to Congress describing the methodology); 15 U.S.C. § 2229a (setting criteria for the FEMA Administrator to make SAFER Grants available to fire departments); 6 U.S.C. § 1135 (ordering the Secretary of Homeland Security to establish the Public Transportation Security Assistance Grant Program according to a detailed statutory scheme); 6 U.S.C. § 596b (similar, for the Securing the Cities Program).

The government cites *Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002), as an example of a case where the decision to impose conditions on a specific grant was committed to agency discretion. [62] at 21. But the statute at issue in *Milk Train* does not resemble any of the statutes relevant here. *See* 310 F.3d at 751 ("Congress provided that the moneys for 1999 economic losses were to be used 'to provide assistance directly to … dairy producers, in a manner determined appropriate by the Secretary.'") The funds in *Milk Train* were a lump sum untethered to any statutory reference point, and the Secretary of Agriculture was expressly vested with discretion. *Id.* at 752. Not so here. The presumption of unreviewability for allocations of funds from lump-sum appropriations does not apply.

The imposition of the challenged conditions must also be a "final agency action" to be reviewable. 5 U.S.C. § 704. For an agency action to be final it "must represent the 'consummation' of an agency's decisionmaking process and must determine 'rights or obligations.'" *Driftless Area Land Conservancy v. Rural Utilities Serv.*, 74 F.4th 489, 493 (7th Cir. 2023) (citing *Army Corps of Engineers v. Hawkes Co.*,

12

578 U.S. 590, 597 (2016)). "In other words, § 704 asks whether a 'terminal event' has occurred." *Id.* (citing *Salinas v. Railroad Retirement Board*, 592 U.S. 188, 194 (2021)).

The Department of Homeland Security's insertion of the challenged provisions into its Standard Terms and Conditions is such a terminal event. *See City of Chicago v. Barr*, 961 F.3d 882 (2020) (treating grant conditions as final agency action). The decision to include the challenged conditions in the DHS Standard Terms and Conditions is a final agency action that has not been committed to agency discretion and is thus reviewable.

### 2. *Arbitrary and capricious*

"The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *Fed. Commun. Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). I must not substitute my own policy judgment for DHS's; my role when conducting arbitrary-and-capricious review of an agency action is limited to ensuring "that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.* If an agency is changing its position on a policy, and "its new policy rests upon factual findings that contradict those which underlay its prior policy" or "its prior policy has engendered serious reliance interests that must be taken into account," it must provide a more detailed justification than what would suffice for a new policy. *F.C.C. v. Fox TV Stations, Inc.*, 556 U.S. 502, 515 (2009).

Defendants do not attempt to argue that they acted reasonably when considering and implementing the challenged conditions. *See* [62]. They only argue that the conditions are not a change of position and that the plaintiffs do not have a

reliance interest in not having to abide by the conditions. [62] at 28–29. Both arguments miss the mark.

The challenged conditions are new. While previous iterations of the DHS Standard Terms and Conditions enumerated specific statutes that grantees certified compliance with, nothing in the record suggests that earlier versions of the Terms and Conditions ever included a broad certification that grantees comply with all federal anti-discrimination laws, including ones directed at conduct unrelated to the project funded by the grant. *See* DHS Standard Terms and Conditions, https://perma.cc/465R-ED6N (DHS Standard Terms and Conditions going back to 2016 do not include such provisions). True, past Terms and Conditions referenced "relevant" or "applicable" federal laws and executive guidance, but they did not extract a promise—under express threat of False Claims Act liability—that a grant recipient complied with all anti-discrimination laws on the books, whether related to funding or not. *Id.*[9]

Plaintiffs have also demonstrated a reliance interest in the former conditions. They have relied on receiving these grants for years subject to lawful terms and conditions, and while they have always had an obligation to follow the law, their grant funding has never been dependent on conforming to statutes unrelated to congressional appropriations. Budget planning relies on these grants, and inserting

---

[9] At the hearing on plaintiffs' motion for preliminary injunction, the government conceded that conditioning grant funds on refraining from discriminatory prohibited boycotts was new and that the term "discriminatory prohibited boycott" was undefined. There is no explanation in the record for this novel funding condition, and its adoption was arbitrary and capricious.

14

an obligation to certify as to all independently funded programs within a municipality unsettles expectations.

Even if defendants were correct that there has been no change of position and plaintiffs did not have a reliance interest, it would not matter—failure to provide *any* explanation for a final agency action is arbitrary and capricious under even the most lenient standard. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (when an "agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law"). While it is possible for the administrative record to "show so little controversy that the basis of an agency action is obvious from the record, with no need for an express explanation by the agency," *City Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 600 F.2d 681 (7th Cir. 1979), this is not such a case. These provisions—apparently implemented to conform with Executive Orders changing the direction of enforcement policy from one presidential administration to the next—are controversial, and an express explanation was required. Without one, implementing the challenged conditions was likely arbitrary and capricious and thus unlawful.

### 3. *Exceeding statutory authority*

While finding that the challenged conditions are likely arbitrary and capricious is enough to find a likelihood of success on the merits of plaintiffs' APA claim, it fails to capture the central problem on which plaintiffs are likely to succeed: these conditions have nothing to do with the grant programs, as established by Congress, that DHS is trying to attach them to. "[A]n agency literally has no power to act … unless and until Congress confers power upon it." *Louisiana Pub. Serv. Commn. v.*

*Fed. Commc'n Comm'n*, 476 U.S. 355, 357 (1986). Furthermore, for grants expressly appropriated by Congress, the Executive does not have the inherent authority "to condition the payment of such federal funds on adherence to its political priorities." *City of Chicago v. Sessions*, 888 F.3d 272, 283 (7th Cir. 2018). The APA requires I exercise my "independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024).

None of the enabling acts for the grants relevant to this case authorize conditioning funds on a recipient's DEI policies. There is also no freestanding statute that conditions the award of federal funds on refraining from DEI programming or on compliance with all federal anti-discrimination law. There is simply no statutory authority for DHS or FEMA to impose general anti-discrimination conditions on these grants.

The same is true for the Executive Order Condition, which requires compliance with all "Presidential Executive Orders related to grants." While the grant-authorizing statutes often contain language permitting the executive to issue guidance, *see, e.g.*, 15 U.S.C. § 2229a(2) (directing the FEMA Administrator to "establish and publish guidelines for determining what constitutes economic hardship"), it does not give DHS carte blanche to impose political priorities expressed in Presidential Executive Orders on grantees.

Title VI, the only statute the government relies on, does not give DHS a statutory hook to condition grants on compliance with all anti-discrimination law or

16

all grant-related Executive Orders—it only provides authority to enforce compliance with 42 U.S.C. § 2000d. 42 U.S.C. § 2000d-1 (authorizing and directing all federal departments and agencies "to effectuate the provisions of section 2000d of this title" through regulations on financial assistance). While § 2000d prohibits discrimination "on the ground of race, color, or national origin," it is limited to discrimination in those programs or activities receiving federal financial assistance. The challenged conditions reach beyond that, and use the grants to police recipients' conduct outside federally funded activities.[10] And while the Executive Order Condition is limited to those Executive Orders related to grants, it does not limit its obligations to those regarding race, color, or national origin. Title VI does not authorize a regulation of that breadth.

Including these provisions in the DHS Standard Terms and Conditions was likely in excess of statutory authority and unlawful.

### 4. *Contrary to constitutional power*

The APA also requires that agency action be set aside when it is "contrary to [a] constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). Plaintiffs raise such a challenge under the APA in addition to independent constitutional challenges to the action for exceeding the agency's statutory authority. [41] at 15–18. Having established the plaintiffs' likelihood of success on the merits on

---

[10] The Anti-Discrimination Condition defines "Federal anti-discrimination laws" as "Federal civil rights law that protect individual Americans from discrimination on the basis of race, color, sex, religion, and national origin." This seems to track Title VI and Title IX (by omitting disability or age) but would cover other statutes, like Title VII, which protects individuals from discrimination because of race and sex outside of federally funded programs.

statutory grounds, I abide by the "general obligation to refrain from unnecessary forays into constitutional law" and decline to resolve most of the constitutional issues, even on a preliminary basis. *See Sapp v. Foxx*, 106 F.4th 660, 665 (7th Cir. 2024) (citing *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 341 (1936)).[11]

But for the same reasons that the Standard Terms and Conditions are likely arbitrary and capricious and beyond statutory authority, they likely violate the separation of powers, and that overlap justifies discussion of the separation of powers problem. The Secretary cannot pursue the policy objectives of the executive branch through the power of the purse. *Barr*, 961 F.3d at 887. It is, of course, the President's obligation to take care that the laws be faithfully executed, and enforcement of anti-discrimination law through lawsuits, criminal prosecutions, and even creative False Claims Act cases are significant powers vested in the executive branch. But using the power of the purse to alter behavior is not the executive's prerogative.

Congress may delegate the specifics of some grants to agencies, including, for example, authorizing "such other terms and conditions as are determined necessary by the Secretary." *E.g.*, 6 U.S.C. § 1135(e). But all the applicable statutes and any discretion afforded by them, at least on the present record, are properly understood to require a connection to the grant project. *See Barr*, 961 F.3d at 899 ("If Congress meant to incorporate all law that applies to States or localities, that would be

---

[11] An independent cause of action for reviewing allegedly ultra vires agency action typically does not lie if there is another meaningful and adequate means of judicial review. *See Bd. of Governors of Fed. Reserve System v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991) (distinguishing case in which non-statutory judicial review was authorized and finding no such authorization in the instant case because a statute provided the plaintiff "with a meaningful and adequate opportunity for judicial review").

accomplished by requiring compliance with 'all federal law.'"). No catchall authority to enforce all federal anti-discrimination law as a condition to funding has been cited.

The Secretary's authority to suspend or terminate funding whenever she determines that a grantee has violated the Anti-Discrimination Condition exacerbates the separation of powers problem. While grant recipients have long operated with an understanding of Title VI and Title IX (for example), and worked with executive guidance that has varied over the years, they do not know what the Secretary of Homeland Security thinks are the limits of federal anti-discrimination law as applied to DEI programs. To allow the Secretary to control, without congressional direction, funds that Congress appropriated for a specific purpose arrogates to the executive a power it does not have under the Constitution.[12]

Although plaintiffs are bound by anti-discrimination laws, including the Equal Protection Clause, unless those laws include congressional authority to tie funding to compliance, they do not delegate the power of the purse to the executive. To use funding to leverage compliance with anti-discrimination laws is a congressional power, and the attempt to do that through executive action here likely violates the separation of powers.[13]

---

[12] As explained in *Dalton v. Spector*, 511 U.S. 462, 472–74 (1994), not every executive act in excess of statutory authority is a judicially reviewable constitutional violation. But here, within APA review for agency action contrary to the Constitution, *Dalton* is beside the point.

[13] Similarly, the statutes funding the grants and programs in this case do not allow Executive Orders to control the distribution of funds.

19

### C. Preliminary Injunction

#### 1. *Remaining factors*

Plaintiffs are likely to suffer irreparable harm if the challenged conditions are not enjoined. "Harm is irreparable if legal remedies are inadequate to cure it." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021). Legal remedies do not need to be wholly ineffectual to be inadequate—they only need to be "seriously deficient as compared to the harm suffered." *Id.* A constitutional violation is almost always an irreparable harm. *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011). The constitutional violation plaintiffs have likely established here, injury to the separation of powers, is the sort of "intangible and unquantifiable interest" that naturally results in irreparable harm when infringed on. *Id.*; *Barr*, 961 F.3d at 892.

The loss of money is ordinarily a tangible harm. But here, the ripple effects on budget plans, services to residents, and efforts to mitigate the harm from terrorism or natural disasters are not quantifiable. The point of funding for disaster preparedness, infrastructure security, and firefighting is that the money is an investment that generates intangible dividends in public safety and security. Losing this funding in the interim would lead to budget cuts that directly inhibit the missions of the law enforcement and fire departments that these grants were intended to support. *See, e.g.*, [47] ¶¶ 9–12 (Assistance for Firefights Grant Program funding already awarded to the Chicago Fire Department is needed to replace end-of-life and non-compliant self-contained breathing apparatus cylinders and provide training on hazardous material safety); [53] ¶ 10 (the City of New Haven Office of Emergency Management relies on Emergency Management Performance Grant funding for 100%

20

of its non-salary operating budget). While going without money is not an irreparable harm, going without firefighters is.

The final two factors—balance of the equities and public interest—merge into one because the injunction being sought is against the government. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The public interest is "served by an injunction in that it acts as a check on the executive's encroachment of congressional power that violates the separation of powers." *Barr*, 961 F.3d at 918. Once the movant establishes a likelihood that the government action was unconstitutional, "the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *Am. Civ. Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 589–90 (7th Cir. 2012).

Granting the requested relief here would also not cause the sort of "disruptive effect[s]" on government operations that could tip the balance of the equities back in the government's favor. *See Trump v. Wilcox*, 145 S.Ct. 1415, 1415 (2025). This is not a case where the executive is being deprived of his choice in officers to effectuate the laws, *see id.*, or where the relief would significantly constrain the choices of how to effectuate the laws available to the executive, *see Trump v. CASA, Inc.*, 606 U.S. 831, at 861 ("federal courts do not exercise general oversight of the Executive Branch"). The injunction requested here only prevents executive officers from enforcing select conditions that are likely unlawful and depart from the statutes enacted by the people's representatives.

21

All four factors thus weigh in favor of granting a preliminary injunction.

2.    *Scope of relief*

The injunction is limited to the parties to this case. Defendants are enjoined from imposing Part C.XVII(2)(a)(i)–(ii) & XXXI of the 2025 DHS Standard Terms and Conditions on any plaintiff as a requirement for accepting a grant award issued under any of the statutory programs referenced in the complaint.[14] Defendants cannot require plaintiffs to certify that they do not advance or promote DEI, DEIA, or "discriminatory equity ideology" in violation of Federal anti-discrimination laws, or that they do not engage discriminatory prohibited boycotts when they accept funds pursuant to DHS Standard Terms and Conditions. Defendants cannot demand compliance with unspecified and unknown (at the time of contracting) Executive Orders as a condition of funding. A separate injunction order accompanies this opinion. Fed. R. Civ. P. 65(d)(1)(C); *MillerCoors LLC v. Anheuser-Busch Companies, LLC*, 940 F.3d 922, 923 (7th Cir. 2019).

Plaintiffs propose an injunction that attempts to close off any gaps or loopholes through which the government can make disaster preparedness grants and potential False Claims Act liability a means of furthering an agenda unrelated to the grants.

---

[14] Baltimore has already received $846,215.31 in funding from the Fire Prevention and Safety Grants Program for fiscal year 2025, which is subject to the 2025 DHS Standard Terms and Conditions. [44] ¶ 25. (Plaintiffs filed a supplemental chart detailing the status of their applicable grant applications, [69]. That chart is inconsistent with the declaration submitted by Baltimore Chief Administrative Officer Faith Leach. *Contrast* [44] ¶ 25 *with* [69-1] at 12. I rely on the sworn declaration for the purposes of this motion.) Defendants are enjoined from enforcing the challenged provisions included in Baltimore's fiscal year 2025 Fire Prevention and Safety Grant award, and enjoined from enforcing the conditions in any grant that has been accepted by and funded to any plaintiff.

The agency action at issue here, and the one that plaintiffs have established some likelihood of success in having set aside, is the DHS Standard Terms and Conditions Part C.XVII.2(a)(i)–(ii) & XXXI. Enjoining those conditions, and no more, suffices to address the harm while preserving the status quo, recognizing that a preliminary injunction is an extraordinary form of relief, and avoiding overbreadth that could encroach on legitimate executive authority.

Plaintiffs make much of their fear that the government will unilaterally use its understanding of "illegal DEI" to withhold money, or worse, penalize plaintiffs with False Claims Act lawsuits threatening treble damages. The government responds that disputes over the legality of specific practices and the truthfulness of certifications are ordinary legal disputes, and nothing in the rhetoric surrounding its imposition of the challenged conditions (for example, in the Attorney General's July 29, 2025 memo or the President's Executive Orders) posits anything other than an intent to apply existing law. The fear that plaintiffs have of an overreaching executive is not a persuasive reason to enjoin any more than has been established to be a likely violation of law. This is a case or controversy over specific, likely unlawful terms, and at this stage of the litigation, an injunction against those terms is the appropriate remedy.

### D. Bond

I may issue a preliminary injunction "only if the movant gives security" sufficient "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). No bond is required, however, if "there's no danger that the opposing party will incur any damages from

23

the injunction." *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010).

For the same reasons the Tucker Act is inapplicable to this case, no bond is necessary. *See supra* III.A.2. The requested relief here does not require the defendants to spend any money; it only prevents them from imposing conditions they likely have no authority to impose. The preliminary injunction does not order the payment of money that the government might not be able to recoup; it only limits the conditions DHS can impose on a grant. If the injunction turns out to be wrongful, the defendants will not have incurred any damages, because any grants awarded will still have been consistent with the public-safety and emergency-preparedness programs authorized by Congress. I set a nominal bond at $100.

## IV. Conclusion

Plaintiffs' motion for a preliminary injunction, [40], is granted in part. Enter Preliminary Injunction Order.

ENTER:

Manish S. Shah
United States District Judge

Date: November 21, 2025

24

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, CITY OF BOSTON, CITY OF NEW YORK, MAYOR AND CITY COUNCIL OF BALTIMORE, CITY AND COUNTY OF DENVER, CITY OF MINNEAPOLIS, CITY OF HEW HAVEN, CITY OF SAINT PAUL, and RAMSEY COUNTY, | |
| Plaintiffs, | No. 25 CV 12765 |
| v. | Judge Manish S. Shah |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security, DEPARTMENT OF HOMELAND SECURITY, FEDERAL EMERGENCY MANAGEMENT AGENCY, and DAVID RICHARDSON, in his official capacity as Senior Official Performing the Duties of FEMA Administrator, | |
| Defendants. | |

ORDER GRANTING PRELIMINARY INJUNCTION

The court, having considered the parties' briefs, exhibits, and arguments, grants in part plaintiffs' motion for a preliminary injunction.

The court finds that plaintiffs have standing and they have established a likelihood of success in demonstrating that two provisions—The Anti-Discrimination Condition, Pt. C § XVII(2)(a)(i)–(ii), and the Presidential Executive Order Condition, Pt. C § XXXI, respectively—of the 2025 DHS Terms and Conditions Version 3 are arbitrary and capricious, in excess of statutory authorization, and contrary to the

Constitution, and that therefore, plaintiffs are likely to succeed on their claim to set aside those conditions under the Administrative Procedure Act.

Plaintiffs have shown that they would suffer irreparable harm from imposition of the Anti-Discrimination Condition and the Presidential Executive Orders Condition.

The balance of equities and public interest favor plaintiffs because the public interest is not harmed by preliminarily enjoining the Anti-Discrimination Condition and the Presidential Executive Orders Condition. Both conditions are likely unlawful, and enjoining the conditions does not interfere with the government's ability to enforce existing anti-discrimination laws and is consistent with the statutory authority to fund grant programs under the 2025 DHS Terms and Conditions.

Therefore, it is hereby ordered that:

1.     Defendants, their officers, agents, employees, attorneys, and all those in active concert or participation with defendants are preliminarily enjoined from attaching, incorporating, imposing, or enforcing, or requiring plaintiffs to certify compliance with, the Anti-Discrimination Condition, the Presidential Executive Orders Condition, or any materially similar terms or conditions, with respect to any applications submitted by plaintiffs, and any DHS funds awarded to or received by plaintiffs, whether directly or indirectly, including through new grant applications, applications for continuation funding, notices of funding availability or opportunity, certifications, grant agreements, post-award submissions, or reimbursement requests.

2.      Defendants, their officers, agents, employees, attorneys, and all those in active concert or participation with defendants, shall immediately treat any actions taken to implement or enforce the Anti-Discrimination Condition and the Presidential Executive Order Condition, or any materially similar terms or conditions, as to the plaintiffs, as null, void, and rescinded; and while this preliminary injunction is in effect, shall treat as null and void any such conditions included in any grant agreement executed by any of the plaintiffs; and may not retroactively apply such conditions to grant agreements during the effective period of this preliminary injunction.

3.      Defendants' counsel shall provide written notice of this Order to defendants, their officers, agents, employees, and any other persons in active concert or participation with them in the application, awarding, and processing of grants using the DHS Standard Terms and Conditions.

4.      Defendants' counsel shall file a status report within ten days of the entry of this Order confirming compliance with this Order.

5.      Plaintiffs shall post $100 as security in accordance with N.D. Ill. Loc. R. 65.1.

6.     This Order shall remain in effect during the pendency of this litigation or until further order of the court.

ENTER:

Date:  November 21, 2025

Manish S. Shah
United States District Judge

4

APPEAL,FUENTES

# United States District Court
## Northern District of Illinois - CM/ECF NextGen 1.8 (rev. 1.8.5) (Chicago)
## CIVIL DOCKET FOR CASE #: 1:25-cv-12765
## Internal Use Only

Chicago et al v. Noem et al
Assigned to: Honorable Manish S. Shah
Cause: 28:2201 Declaratory Judgement

Date Filed: 10/20/2025
Jury Demand: None
Nature of Suit: 899 Other Statutes:
Administrative Procedures Act/Review or
Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**City of Chicago**

represented by **Chelsey Blaire Metcalf**
City Of Chicago Law Department
121 N. Lasalle St.
Suite 600
Chicago, IL 60602
(312) 744-9484
Fax: Active
Email: chelsey.metcalf@cityofchicago.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin Monju**
Public Rights Project
490 43rd St., Unit # 115
Oakland, CA 94609
(707) 297-3837
Fax: Pro Hac Vice
Email: erin@publicrightsproject.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mohan Sharanya**
Public Rights Project
490 43rd St., Unit # 115
Oakland, CA 94609
(510) 738-6788
Fax: Pro Hac Vice
Email: sai@publicrightsproject.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rachel Elisheva Zemke**
City of Chicago
Department of Law
121 N. LaSalle
Ste 600
Chicago, IL 60602

312-744-0748
Email: rachel.zemke@cityofchicago.org
*ATTORNEY TO BE NOTICED*

**Rebecca Alfert Hirsch**
City of chicago
30 N. LaSalle St
Suite 1230
Chicago, IL 60602
(312) 742-0260
Fax: Not a member
Email: rebecca.hirsch2@cityofchicago.org
*ATTORNEY TO BE NOTICED*

**Stephen J Kane**
City of Chicago
121 N. LaSalle Street
Room 600
Chicago, IL 60602
(312) 744-6934
Fax: Not a member
Email: Stephen.Kane@cityofchicago.org
*ATTORNEY TO BE NOTICED*

**Toby Merrill**
Public Rights Project
490 43rd Street Unit
Ste 115
Oakland, CA 94609
707-297-3837
Fax: Not a member
Email: toby@publicrightsproject.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**City of Boston**                   represented by **Erin Monju**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mohan Sharanya**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel Bay Dinning**
City of Boston Law Department
1 City Hall Square, Room 615
Boston, MA 02130
(617) 635-4017
Fax: Pro Hac Vice
Email: samuel.dinning@boston.gov
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Teresa Kay Anderson**
City of Boston - Boston Police Department
One Schroeder Plaza
Boston, MA 02120
(617) 343-4328
Fax: Pro Hac Vice
Email: teresa.anderson@pd.boston.gov
*ATTORNEY TO BE NOTICED*

**Toby Merrill**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**City And County of Denver**          represented by **Erin Monju**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Joseph Mulbarger**
Denver City Attorney's Office
201 W. Colfax Ave
Denver, CO 80202
(720) 926-6697
Fax: Pro Hac Vice
Email: matthew.mulbarger@denvergov.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mohan Sharanya**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Toby Merrill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mayor and City Council of Baltimore**          represented by **Erin Monju**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mohan Sharanya**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Toby Merrill**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**City of Saint Paul**                          represented by    **Kelsey J McElveen**
*City of Saint Paul*                                             Office of the Saint Paul City Attorney
                                                                15 W. Kellogg Blvd., Ste 750
                                                                St. Paul, MN 55102
                                                                (651) 266-8765
                                                                Fax: Pro Hac Vice
                                                                Email: kelsey.mcelveen@ci.stpaul.mn.us
                                                                *LEAD ATTORNEY*
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Erin Monju**
                                                                (See above for address)
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Mohan Sharanya**
                                                                (See above for address)
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Toby Merrill**
                                                                (See above for address)
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**City of New Haven**                           represented by    **Erin Monju**
                                                                (See above for address)
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Michael P Bowler**
                                                                New Haven Office of the Corporation
                                                                Counsel
                                                                165 Church St
                                                                Ste 4th Floor
                                                                New Haven, CT 06510
                                                                475-331-3244
                                                                Fax: Not a member
                                                                Email: mmoskowitz@newhavenct.gov
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Mohan Sharanya**
                                                                (See above for address)
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Toby Merrill**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **City of New York** | represented by | **Doris F. Bernhardt** |

New York City Law Department, Office of
the Corporation Coun
100 Church Street
New York, NY 10007
(212) 356-2296
Fax: Pro Hac Vice
Email: dbernhar@law.nyc.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Erin Monju**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mohan Sharanya**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Toby Merrill**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **City of Minneapolis** | represented by | **Erin Monju** |

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Heather Passe Robertson**
Minneapolis City Attorney's Office
350 South 5th Street
Room 200
Minneapolis, MN 55415
(612) 299-2742
Fax: Pro Hac Vice
Email:
heather.robertson@minneapolismn.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristyn Marie Anderson**
Minneapolis City Attorney's Office
350 S
City of Minneapolis Min, MN 55155

(612) 299-2716
Fax: Pro Hac Vice
Email:
kristyn.anderson@minneapolismn.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mohan Sharanya**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Munazza Humayun**
Minneapolis City Attorney's Office
350 South Fifth Street
Rm 210
Minneapolis, MN 55415
(612) 431-2468
Fax: Pro Hac Vice
Email:
munazza.humayun@minneapolismn.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sara Jeanne Lathrop**
Minneapolis City Attorney's Office
350 S. Fifth St
Minneapolis, MN 55415
(612) -0431
Fax: Pro Hac Vice
Email: sara.lathrop@minneapolismn.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Toby Merrill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ramsey County**                    represented by  **Bradley Duane Cousins**
Ramsey County Attorney's Office
360 Wabasha Street No.
Suite 100
St. Paul, MN 55102
(651) 266-3081
Fax: Pro Hac Vice
Email: bradley.cousins@co.ramsey.mn.us
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Erin Monju**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jada Natasha Lewis**
Ramsey County Attorney's Office
360 Wabasha Street N.
Suite 100
St. Paul, MN 55102
(651) 266-3149
Fax: Pro Hac Vice
Email: jada.lewis@co.ramsey.mn.us
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mohan Sharanya**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stacey Lee D'Andrea**
Ramsey County Attorney's Office
360 Wabasha Street N.
Suite 100
St. Paul, MN 55102
(655) 266-3051
Fax: Pro Hac Vice
Email: stacey.dandrea@co.ramsey.mn.us
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Toby Merrill**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kristi Noem**
*in her official capacity as Secretary of*
*Homeland Security*

represented by **AUSA - Chicago**
United States Attorney's Office (NDIL - Chicago)
219 South Dearborn Street
Chicago, IL 60604
Fax: US Govt Attorney
Email: USAILN.ECFAUSA@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Patrick Walter Johnson**
United States Attorney's Office (NDIL - Chicago)
219 South Dearborn Street
Chicago, IL 60604
(312) 353-5300
Fax: Active

Email: patrick.johnson2@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Department of Homeland Security**            represented by **Patrick Walter Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Federal Emergency Management Agency**        represented by **AUSA - Chicago**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick Walter Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**David Richardson**                           represented by **AUSA - Chicago**
*in his official capacity as Senior Official*                 (See above for address)
*Performing the Duties of FEMA*                               *ATTORNEY TO BE NOTICED*
*Administrator*

**Patrick Walter Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Attorney's Office**

**Defendant**

**Attorney General of the United States**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/02/2025 | 15 | ORDER AMENDED GENERAL ORDER 25-0024: GENERAL ORDER HOLDING IN ABEYANCE: CIVIL MATTERS INVOLVING THE UNITED STATES AS A PARTY: This matter is before the Court due to the lapse of congressional appropriations funding the federal government, including the Department of Justice and the United States Attorney's Office. Absent an appropriation, the United States represents that certain Department of Justice attorneys and employees of the federal government are prohibited from working, even on a voluntary basis, except in very limited circumstances, including "emergencies involving the safety of human life or the protection of property." 31 U.S.C. § 1342. Therefore, the lapse in appropriations requires a reduction in the workforce of the United States Attorney's Office and other federal agencies, particularly with respect to prosecution and defense of civil cases. The Court, in response, and with the intent to avoid any default or prejudice to the United States or other civil litigants occasioned by the lapse in funding, sua sponte enters this General Order. As a result of the cited workforce reductions, it is hereby ORDERED, effective October 1, 2025, that all civil litigation involving as a party the United States of America, its agencies, its officers or employees (whether in their individual or official capacity and whether current or former employees), and/or any other party represented by the Department of Justice or the United States |

| | | |
|---|---|---|
| | | Attorney's Office is immediately suspended, postponed, and held in abeyance continuing until funding for federal government operations is fully restored. The Court may renew or modify this General Order depending on developments in the stay period. The Court intends "civil litigation" to include all pending non-criminal cases in which the United States, its agencies, its officers or employees (whether in their individual or official capacity and whether current or former employees) is in any way a named party and any non-criminal cases in which the United States Attorney's Office or the Department of Justice is counsel of record. This includes, without limitation, all pending Social Security cases and all cases seeking monetary or equitable relief in which the United States is involved as a civil litigant. The General Order does not affect habeas corpus cases pending or filed under Chapter 153 of Title 28. This General Order suspends and continues, during the stay, any and all events and deadlines in the affected civil litigation (whether established by order, rule, or agreement), including but not limited to any scheduled proceedings, hearings, and/or discovery and pleading dates. No party will be required to take any steps in civil litigation affected until expiration of the stay. The Court warns litigants that this General Order does not purport to affect rights to, or deadlines concerning, appeal from any decision of this Court, which will continue to operate and issue orders in the normal course. Any litigant affected by this General Order may seek relief from the order by motion. The Court may, in any particular case, vary the effect or operation of this General Order by a separate order. The Court shall distribute this General Order: (a) by electronic service to all registered CM/ECF users; (b) by first-class mail to unregistered civil litigants, including pro se litigants, and to attorneys pending pro hac vice admission; and (c) by posting the General Order on the Court's public website. This General Order does not operate as a stay of any injunction or restraining order entered by any judge of this court. The Court shall clarify the status of case schedules upon expiration of the stay and dependent on the timing of the funding resolution. Signed by the Honorable Virginia M. Kendall on 10/2/2025. Mailed notice.(nh, ) (Entered: 10/21/2025) |
| 10/20/2025 | 1 | COMPLAINT filed by City of New Haven, Denver, Cty of, City of New York, Ramsey County, City of Boston, City of Minneapolis, City of Chicago, Mayor and City Council of Baltimore, City of Saint Paul; Filing fee $ 405, receipt number AILNDC-24218225. (Attachments: # 1 Exhibit Exhibit A 2025 DHS Terms and Conditions)(Metcalf, Chelsey) (Entered: 10/20/2025) |
| 10/20/2025 | 2 | CIVIL Cover Sheet (Metcalf, Chelsey) (Entered: 10/20/2025) |
| 10/20/2025 | 3 | ATTORNEY Appearance for Plaintiff City of Chicago by Chelsey Blaire Metcalf (Metcalf, Chelsey) (Entered: 10/20/2025) |
| 10/20/2025 | 4 | ATTORNEY Appearance for Plaintiff City of Chicago by Stephen J Kane (Kane, Stephen) (Entered: 10/20/2025) |
| 10/20/2025 | | CASE ASSIGNED to the Honorable Manish S. Shah. Designated as Magistrate Judge the Honorable Gabriel A. Fuentes. Case assignment: Random assignment. (Civil Category 2). (cvk, ) (Entered: 10/20/2025) |
| 10/20/2025 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any |

| | | joint filing, including the Joint Initial Status Report or proposed Case Management Order. (cvk, ) (Entered: 10/20/2025) |
|---|---|---|
| 10/20/2025 | 5 | ATTORNEY Appearance for Plaintiff City of Chicago by Rebecca Alfert Hirsch (Hirsch, Rebecca) (Entered: 10/20/2025) |
| 10/20/2025 | 6 | MOTION for Leave to Appear Pro Hac Vice on behalf of Denver, Cty of by Matthew Joseph Mulbarger; Filing fee $ 150, receipt number AILNDC-24220043. (Mulbarger, Matthew) (Entered: 10/20/2025) |
| 10/20/2025 🔒 | 11 | SUMMONS Issued (Court Participant) as to Department of Homeland Security, Federal Emergency Management Agency, KRISTI NOEM (Attachments: # 1 Summons, # 2 Summons, # 3 Summons)(gmc, ) Modified on 10/21/2025 (gmc, ). (Entered: 10/20/2025) |
| 10/20/2025 | 12 | MOTION for Leave to Appear Pro Hac Vice on behalf of City of Chicago, City of Boston, City of Minneapolis, City of New Haven, City of New York, City of Saint Paul, Denver, Cty of, Mayor and City Council of Baltimore, Ramsey County by Toby Merrill; Filing fee $ 150, receipt number AILNDC-24222996. (Merrill, Toby) (Entered: 10/20/2025) |
| 10/20/2025 | 13 | DESIGNATION of Patrick Walter Johnson as U.S. Attorney for Defendants Department of Homeland Security, Federal Emergency Management Agency, Kristi Noem, David Richardson (Johnson, Patrick) (Entered: 10/20/2025) |
| 10/20/2025 | 14 | AMENDED motion to appear pro hac vice, 12 , *correcting address.* (Merrill, Toby) (Entered: 10/20/2025) |
| 10/21/2025 | 16 | MOTION for Leave to Appear Pro Hac Vice on behalf of City of Chicago, City of Boston, City of Minneapolis, City of New Haven, City of New York, City of Saint Paul, Denver, Cty of, Mayor and City Council of Baltimore, Ramsey County by Erin Monju; Filing fee $ 150, receipt number AILNDC-24226061. (Monju, Erin) (Entered: 10/21/2025) |
| 10/21/2025 | 17 | MOTION for Leave to Appear Pro Hac Vice on behalf of City of Saint Paul by Kelsey J McElveen; Filing fee $ 150, receipt number AILNDC-24227125. (McElveen, Kelsey) (Entered: 10/21/2025) |
| 10/21/2025 🔒 | 18 | SUMMONS Issued (Court Participant) as to David Richardson(gmc, ) (Entered: 10/21/2025) |
| 10/21/2025 | 19 | MINUTE entry before the Honorable Manish S. Shah: The motions for leave to appear pro hac vice 6 12 16 17 are granted. Notices Mailed. (psm, ) (Entered: 10/21/2025) |
| 10/21/2025 | 20 | MOTION by Plaintiffs City of Chicago, City And County of Denver, City of Boston, City of Minneapolis, City of New Haven, City of New York, City of Saint Paul, Mayor and City Council of Baltimore, Ramsey County for order *Entering Agreed Schedule, Relieving the Action from Amended General Order 25-0024, and Granting Leave to File Excess Pages* (Metcalf, Chelsey) (Entered: 10/21/2025) |
| 10/21/2025 | 21 | NOTICE of Motion by Chelsey Blaire Metcalf for presentment of motion for order, 20 before Honorable Manish S. Shah on 10/28/2025 at 09:45 AM. (Metcalf, |

| | | |
|---|---|---|
| | | Chelsey) (Entered: 10/21/2025) |
| 10/21/2025 | 22 | MOTION for Leave to Appear Pro Hac Vice on behalf of City of Chicago, City And County of Denver, City of Boston, City of Minneapolis, City of New Haven, City of New York, City of Saint Paul, Mayor and City Council of Baltimore, Ramsey County by Mohan Sharanya; Filing fee $ 150, receipt number AILNDC-24231261.<br><br>(Sharanya, Mohan) (Entered: 10/21/2025) |
| 10/21/2025 | 23 | MINUTE entry before the Honorable Manish S. Shah: Plaintiffs' unopposed motion 20 is granted, and no appearance on 10/28/25 is necessary. By agreement, the deadline for Plaintiffs to accept any grant award or grant funding related to this action is extended to the later of: (a) Monday, November 24, 2025, or (b) the deadline otherwise set by the grant award. This action is exempt from Amended General Order 25-0024. Plaintiffs shall file their motion for preliminary injunction by October 24, 2025. Plaintiffs have leave to file a brief that is 25 pages in length. Defendants shall file their opposition by November 7, 2025. Defendants have leave to file a brief that is 25 pages in length. Plaintiffs may reply by November 14, 2025. Hearing and argument on the motion for preliminary injunction is set for 11/17/25 at 11:00 a.m. in courtroom 1919. Notices Mailed. (psm, ) (Entered: 10/21/2025) |
| 10/21/2025 | 24 | MINUTE entry before the Honorable Manish S. Shah: The motion for leave to appear pro hac vice 22 is granted. Notices Mailed. (psm, ) (Entered: 10/21/2025) |
| 10/21/2025 | 25 | MOTION for Leave to Appear Pro Hac Vice on behalf of City of New York by Doris F. Bernhardt; Filing fee $ 150, receipt number AILNDC-24232731.<br><br>(Bernhardt, Doris) (Entered: 10/21/2025) |
| 10/22/2025 | 26 | MOTION for Leave to Appear Pro Hac Vice on behalf of Ramsey County by Bradley Duane Cousins; Filing fee $ 150, receipt number AILNDC-24234293.<br><br>(Attachments: # 1 Declaration of Bradley Cousins)(Cousins, Bradley) (Entered: 10/22/2025) |
| 10/22/2025 | 27 | MOTION for Leave to Appear Pro Hac Vice on behalf of Ramsey County by Stacey Lee D'Andrea; Filing fee $ 150, receipt number AILNDC-24234331.<br><br>(D'Andrea, Stacey) (Entered: 10/22/2025) |
| 10/22/2025 | 28 | MOTION for Leave to Appear Pro Hac Vice on behalf of Ramsey County by Jada Natasha Lewis; Filing fee $ 150, receipt number AILNDC-24234355.<br><br>(Lewis, Jada) (Entered: 10/22/2025) |
| 10/22/2025 | 29 | MOTION for Leave to Appear Pro Hac Vice on behalf of City of Minneapolis by Kristyn Marie Anderson; Filing fee $ 150, receipt number AILNDC-24234314.<br><br>(Anderson, Kristyn) (Entered: 10/22/2025) |
| 10/22/2025 | 30 | MINUTE entry before the Honorable Manish S. Shah: The motions for leave to appear pro hac vice 25 26 27 28 are granted. Notices Mailed. (psm, ) (Entered: 10/22/2025) |
| 10/22/2025 | 31 | MOTION for Leave to Appear Pro Hac Vice on behalf of City of Minneapolis by Heather Passe Robertson; Filing fee $ 150, receipt number AILNDC-24237806.<br><br>(Robertson, Heather) (Entered: 10/22/2025) |

| | | |
|---|---|---|
| 10/22/2025 | 32 | MOTION for Leave to Appear Pro Hac Vice on behalf of City of Minneapolis by Sara Jeanne Lathrop; Filing fee $ 150, receipt number AILNDC-24238498. <br><br> (Lathrop, Sara) (Entered: 10/22/2025) |
| 10/23/2025 | 33 | MOTION for Leave to Appear Pro Hac Vice on behalf of City of Boston by Samuel Bay Dinning; Filing fee $ 150, receipt number AILNDC-24240362. <br><br> (Dinning, Samuel) (Entered: 10/23/2025) |
| 10/23/2025 | 34 | MINUTE entry before the Honorable Manish S. Shah: The motions for leave to appear pro hac vice 29 31 32 33 are granted. Notices Mailed. (psm, ) (Entered: 10/23/2025) |
| 10/23/2025 | 35 | MOTION for Leave to Appear Pro Hac Vice on behalf of City of Minneapolis by Munazza Humayun; Filing fee $ 150, receipt number AILNDC-24241018. <br><br> (Humayun, Munazza) (Entered: 10/23/2025) |
| 10/23/2025 | 38 | MOTION for Leave to Appear Pro Hac Vice on behalf of City of Boston by Teresa Kay Anderson; Filing fee $ 150, receipt number AILNDC-24246358. <br><br> (Anderson, Teresa) (Entered: 10/23/2025) |
| 10/24/2025 | 40 | MOTION by Plaintiffs City of Chicago, City And County of Denver, City of Boston, City of Minneapolis, City of New Haven, City of New York, City of Saint Paul, Mayor and City Council of Baltimore, Ramsey County for preliminary injunction <br><br> (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/24/2025 | 41 | MEMORANDUM by City of Chicago, City And County of Denver, City of Boston, City of Minneapolis, City of New Haven, City of New York, City of Saint Paul, Mayor and City Council of Baltimore, Ramsey County in support of motion for preliminary injunction, 40 (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/24/2025 | 42 | DECLARATION of Chelsey Metcalf regarding memorandum in support of motion, 41 *with Exhibits* (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/24/2025 | 43 | APPENDIX memorandum in support of motion, 41 *Declaration and Exhibit Index* (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/24/2025 | 44 | DECLARATION of Faith Leach regarding appendix 43 (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/24/2025 | 45 | DECLARATION of Robert W. Ciccolo Jr. regarding appendix 43 (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/24/2025 | 46 | DECLARATION of Adrian Jordan regarding appendix 43 (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/24/2025 | 47 | DECLARATION of Bethany Hand regarding appendix 43 (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/24/2025 | 48 | DECLARATION of Tomas Maulawin regarding appendix 43 (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/24/2025 | 49 | DECLARATION of Caroline Buhse regarding appendix 43 (Metcalf, Chelsey) (Entered: 10/24/2025) |

| 10/24/2025 | 50 | DECLARATION of Rachel Sayre regarding appendix 43 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Metcalf, Chelsey) (Entered: 10/24/2025) |
|---|---|---|
| 10/24/2025 | 51 | DECLARATION of Lucas Scardigli regarding appendix 43 (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/24/2025 | 52 | DECLARATION of Vicki Troswick regarding appendix 43 (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/24/2025 | 53 | DECLARATION of Justin Elicker regarding appendix 43 (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/24/2025 | 54 | DECLARATION of Paul Ochoa regarding appendix 43 (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/24/2025 | 55 | DECLARATION of Kristine Ryan regarding appendix 43 (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/24/2025 | 56 | DECLARATION of Judson Freed regarding appendix 43 (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/24/2025 | 57 | DECLARATION of Lindsay Bacher regarding appendix 43 (Metcalf, Chelsey) (Entered: 10/24/2025) |
| 10/27/2025 | 🔒 60 | SUMMONS Issued (Court Participant) as to United States Attorney's Office, Attorney General of the United States, U.S. Attorney, and U.S. Attorney General (Attachments: # 1 Summons)(gmc, ) (Entered: 10/27/2025) |
| 11/07/2025 | 61 | ATTORNEY Appearance for Plaintiff City of Chicago by Rachel Elisheva Zemke (Zemke, Rachel) (Entered: 11/07/2025) |
| 11/07/2025 | 62 | RESPONSE by Kristi Noemin Opposition to MOTION by Plaintiffs City of Chicago, City And County of Denver, City of Boston, City of Minneapolis, City of New Haven, City of New York, City of Saint Paul, Mayor and City Council of Baltimore, Ramsey County for preliminary injunction 40 (Johnson, Patrick) (Entered: 11/07/2025) |
| 11/13/2025 | 63 | MINUTE entry before the Honorable Manish S. Shah: The court does not expect live witness testimony at the preliminary injunction hearing on 11/17/25. The court will conduct the hearing by directing questions to counsel or identifying specific topics for counsel to address. The court may pose questions to plaintiffs or defendants at any time (in no set order), so counsel may remain seated at counsel table. At the conclusion of the court's questioning, each side will have an opportunity to offer uninterrupted argument for likely no more than two to five minutes. Parties to the case, members of the public, and the media, may listen to these proceedings by dialing 1-650-479-3207 and using access code 2302 545 7949. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Notices Mailed. (psm, ) (Entered: 11/13/2025) |
| 11/14/2025 | 64 | REPLY by Plaintiffs City of Chicago, City And County of Denver, City of Boston, City of Minneapolis, City of New Haven, City of New York, City of Saint Paul, |

| | | Mayor and City Council of Baltimore, Ramsey County to motion for preliminary injunction, 40 (Metcalf, Chelsey) (Entered: 11/14/2025) |
|---|---|---|
| 11/14/2025 | 65 | ORDER GENERAL ORDER 25-0028: RESETTING OF DEADLINES IN CIVIL MATTERS INVOLVING THE UNITED STATES AS A PARTY IT APPEARING THAT as a result of the partial federal government shutdown, this Court amended General Order 25-0024 suspending as of October 1, 2025, all civil litigation in which the United States of America, its agencies, its officers, or employees were parties, with the stated intention of clarifying schedules in such cases upon the expiration of the lapse in appropriations; and IT FURTHER APPEARING THAT appropriations having been restored to fund the Department of Justice and other Executive Branch agencies, with employees beginning to report for work beginning on November 13, 2025; accordingly IT IS THEREFORE ORDERED that the stay entered by General Order 25-0024 is hereby lifted, and any and all deadlines in affected civil cases (whether established by order, rule, or agreement.), including but not limited to any scheduled discovery and pleading dates, are extended by 49 days. The Court warns litigants that this General Order does not purport to affect rights to or deadlines concerning appeal from any decision of this Court. Any litigant affected by this General Order may seek relief from the order by motion. Trial dates in the affected cases will stand, although they may need to be adjusted in individual cases to account for the extension of other dates. The Court may, in any particular case, vary the effect or operation of this General Order by a separate ruling. The Court shall distribute this General Order: (a) by electronic service to all registered CM/ECF users; (b) by first-class mail to unregistered civil litigants, including pro se litigants, and to attorneys pending pro hac vice admission; and (c) by posting the General Order on the Court's public website. Signed by the Honorable Virginia M. Kendall on 11/14/2025: Mailed notice. (tg, ) (Entered: 11/14/2025) |
| 11/15/2025 | 66 | MOTION by Plaintiff City of Chicago for leave to file *supplemental authority (unopposed)*<br><br>(Hirsch, Rebecca) (Entered: 11/15/2025) |
| 11/15/2025 | 67 | NOTICE of Motion by Rebecca Alfert Hirsch for presentment of motion for leave to file 66 before Honorable Manish S. Shah on 11/20/2025 at 09:45 AM. (Hirsch, Rebecca) (Entered: 11/15/2025) |
| 11/17/2025 | 68 | MINUTE entry before the Honorable Manish S. Shah: Preliminary injunction hearing held. Motion hearing held. The motion for leave to file supplemental authority 66 is granted and no appearance is necessary. Plaintiffs are directed to file a supplemental grant chart by 11:59 p.m. on 11/17/25. The court will enter a ruling on the motion for preliminary injunction 40 via cm/ecf. Notices Mailed. (psm, ) (Entered: 11/17/2025) |
| 11/17/2025 | 69 | NOTICE by All Plaintiffs re MOTION by Plaintiffs City of Chicago, City And County of Denver, City of Boston, City of Minneapolis, City of New Haven, City of New York, City of Saint Paul, Mayor and City Council of Baltimore, Ramsey County for preliminary injunction<br><br>40 (Attachments: # 1 Supplement)(Metcalf, Chelsey) (Entered: 11/17/2025) |
| 11/20/2025 | 70 | STATUS Report by City of Chicago<br><br>(Hirsch, Rebecca) (Entered: 11/20/2025) |
| 11/21/2025 | 71 | MINUTE entry before the Honorable Manish S. Shah: Plaintiffs' motion for a preliminary injunction 40 is granted in part. Enter Memorandum Opinion and Order. |

| | | Notices Mailed. (psm, ) (Entered: 11/21/2025) |
|---|---|---|
| 11/21/2025 | 72 | MEMORANDUM Opinion and Order. Signed by the Honorable Manish S. Shah on 11/21/2025. Notices Mailed. (psm, ) (Entered: 11/21/2025) |
| 11/21/2025 | 73 | MINUTE entry before the Honorable Manish S. Shah: Enter Order Granting Preliminary Injunction. Notices Mailed. (psm, ) (Entered: 11/21/2025) |
| 11/21/2025 | 74 | PRELIMINARY INJUNCTION. Signed by the Honorable Manish S. Shah on 11/21/2025. Notices Mailed. (psm, ) (Entered: 11/21/2025) |
| 11/24/2025 | 75 | MINUTE entry before the Honorable Manish S. Shah: A status hearing is set for 12/10/25 at 11:00 a.m. Notices Mailed. (psm, ) (Entered: 11/24/2025) |
| 12/01/2025 | 76 | STATUS Report *regarding preliminary injunction compliance* by Department of Homeland Security<br><br>(Attachments: # 1 Exhibit A)(Johnson, Patrick) (Entered: 12/01/2025) |
| 12/01/2025 | | BOND in the amount of $ 100.00 check, Receipt No.100026980, posted by City of Chicago. (rc, ) (Entered: 12/02/2025) |
| 12/05/2025 | 77 | MINUTE entry before the Honorable Manish S. Shah: Counsel intending to address the court at the hearing on 12/10/25 must be present in person. Anyone wishing to listen to the proceedings may do so by dialing 1-650-479-3207 and using access code 2302 545 7949. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Notices Mailed. (psm, ) (Entered: 12/05/2025) |
| 12/09/2025 | 78 | SUMMONS Returned Executed by City of Chicago as to All Defendants. (Zemke, Rachel) (Entered: 12/09/2025) |
| 12/10/2025 | 79 | MINUTE entry before the Honorable Manish S. Shah: Status hearing held. By 12/22/25, the parties shall file a status report with proposals, agreed or competing, on scheduling next steps in the case, to include an amended complaint, modification of the preliminary injunction, and dispositive motion practice. The court will enter a responsive order. Notices Mailed. (psm, ) (Entered: 12/10/2025) |
| 12/17/2025 | 🔒 80 | TRANSCRIPT OF PROCEEDINGS held on 11/17/2025 before the Honorable Manish S. Shah. Preliminary Injunction Hearing. Order Number: 53873. Court Reporter Contact Information: Colleen_Conway@ilnd.uscourts.gov or 312.435.5594.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 1/7/2026. Redacted Transcript Deadline set for 1/20/2026. Release of Transcript Restriction set for 3/17/2026. (Conway, Colleen) (Entered: 12/17/2025) |
| 12/22/2025 | 81 | STATUS Report *Joint Status Report* by City of Chicago |

| | | (Hirsch, Rebecca) (Entered: 12/22/2025) |
|---|---|---|
| 12/29/2025 | 82 | MINUTE entry before the Honorable Manish S. Shah: Defendants' deadline to answer the complaint is stayed, by agreement. See 81 at 3. Plaintiffs have leave to file an amended complaint by 1/21/26. Any administrative record shall be filed by 3/17/26. The parties shall file a status report with a proposed schedule for briefing summary judgment by 4/1/26. Any motion to modify the preliminary injunction must be noticed for presentment on the court's motion call, but counsel may email proposed_order_shah@ilnd.uscourts.gov with a proposed briefing schedule on any motion to modify preliminary injunction. Notices Mailed. (psm, ) (Entered: 12/29/2025) |
| 12/31/2025 | 83 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Honorable Virginia M. Kendall on 12/31/2025: Mailed notice. (tg, ) (Entered: 01/01/2026) |
| 01/15/2026 | 84 | MOTION for Leave to Appear Pro Hac Vice on behalf of City of New Haven by Michael P Bowler; Filing fee $ 150, receipt number AILNDC-24598122.<br><br>(Bowler, Michael) (Entered: 01/15/2026) |
| 01/20/2026 | 85 | MINUTE entry before the Honorable Manish S. Shah: The motions for leave to appear pro hac vice 35 84 are granted. Notices mailed. (psm, ) (Entered: 01/20/2026) |
| 01/20/2026 | 86 | NOTICE of appeal by Department of Homeland Security regarding orders 72 , 74 Filing fee $ 605. Receipt number: n (Johnson, Patrick) (Entered: 01/20/2026) |
| 01/21/2026 | 87 | MINUTE entry before the Honorable Manish S. Shah: The motion for leave to appear pro hac vice 38 is granted. Notices Mailed. (psm, ) (Entered: 01/21/2026) |
| 01/21/2026 | 88 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 86 (vjd, ) (Entered: 01/21/2026) |