# FY 2025 DHS STANDARD TERMS AND CONDITIONS

The Fiscal Year (FY) 2025 Department of Homeland Security (DHS) Standard Terms and Conditions apply to all new federal awards of federal financial assistance (federal awards) for which the federal award date occurs in FY 2025 and flow down to subrecipients unless a term or condition specifically indicates otherwise. For federal continuation awards made in subsequent FYs, the FY 2025 DHS Standard Terms and Conditions apply unless otherwise specified in the terms and conditions of the continuation awards. The United States has the right to seek judicial enforcement of these terms and conditions.

All legislation and digital resources are referenced with no digital links. These FY 2025 DHS Standard Terms and Conditions are maintained on the DHS website at https://www.dhs.gov/publication/dhs-standard-terms-and-conditions.

**A. Assurance, Administrative Requirements, Cost Principles, Representations, and Certifications**

I. Recipients must complete either the Office of Management and Budget (OMB) Standard Form 424B Assurances – Non- Construction Programs, or OMB Standard Form 424D Assurances – Construction Programs, as applicable. Certain assurances in these documents may not be applicable to your program and the DHS financial assistance office (DHS FAO) may require applicants to certify additional assurances. Applicants are required to fill out the assurances, as instructed.

**B. General Acknowledgements and Assurances Recipients are required to follow the applicable provisions of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards in effect as of the federal award date and located in Title 2, Code of Federal Regulations, Part 200 and adopted by DHS at 2 C.F.R. § 3002.10.**

All recipients and subrecipients must acknowledge and agree to provide DHS access to records, accounts, documents, information, facilities, and staff pursuant to 2 C.F.R. § 200.337.

I. Recipients must cooperate with any DHS compliance reviews or compliance investigations.

II. Recipients must give DHS access to examine and copy records, accounts, and other documents and sources of information related to the federal award and permit access to facilities and personnel.

III. Recipients must submit timely, complete, and accurate reports to the appropriate DHS officials and maintain appropriate backup documentation to support the reports.

IV. Recipients must comply with all other special reporting, data collection, and evaluation requirements required by law, federal regulation, Notice of Funding Opportunity, federal award specific terms and conditions, and/or DHS Component program guidance. Organization costs related to data and evaluation are allowable. The definition of data and evaluation costs is in 2 C.F.R. § 200.455(c), the full text of which is incorporated by reference.

V. Recipients must complete DHS Form 3095 within 60 days of receipt of the Notice of Award for the first award under which this term applies. For further instructions and to access the form, please visit: https://www.dhs.gov/civil-rightsresources-recipients-dhs-financial-assistance.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

## C. Standard Terms & Conditions

### I. Acknowledgement of Federal Funding from DHS

Recipients must acknowledge their use of federal award funding when issuing statements, press releases, requests for proposal, bid invitations, and other documents describing projects or programs funded in whole or in part with federal award funds.

### II. Activities Conducted Abroad

Recipients must coordinate with appropriate government authorities when performing project activities outside the United States obtain all appropriate licenses, permits, or approvals.

### *III. Age Discrimination Act of 1975*

Recipients must comply with the requirements of the *Age Discrimination Act of 1975*, Pub. L. No. 94-135 (codified as amended at Title 42, U.S. Code § 6101 *et seq.*), which prohibits discrimination on the basis of age in any program or activity receiving federal financial assistance.

### *IV. Americans with Disabilities Act of 1990*

Recipients must comply with the requirements of Titles I, II, and III of the *Americans with Disabilities Act*, Pub. L. No. 101-336 (1990) (codified as amended at 42 U.S.C. §§ 12101– 12213), which prohibits recipients from discriminating on the basis of disability in the operation of public entities, public and private transportation systems, places of public accommodation, and certain testing entities.

### V. Best Practices for Collection and Use of Personally Identifiable Information

(1) Recipients who collect personally identifiable information (PII) as part of carrying out the scope of work under a federal award are required to have a publicly available privacy policy that describes standards on the usage and maintenance of the PII they collect.

(2) Definition. DHS defines "PII" as any information that permits the identity of an individual to be directly or indirectly inferred, including any information that is linked or linkable to that individual. Recipients may also find the DHS Privacy Impact Assessments: Privacy Guidance and Privacy Template as useful resources respectively.

### VI. *CHIPS and Science Act of 2022*, Public Law 117-167 CHIPS

(1) Recipients of DHS research and development (R&D) awards must report to the DHS Component research program office any finding or determination of sex based and sexual harassment and/or an administrative or disciplinary action taken against principal investigators or co-investigators to be completed by an authorized organizational representative (AOR) at the recipient institution.

(2) Notification. An AOR must disclose the following information to agencies within 10 days of the date/the finding is made, or 10 days from when a recipient imposes an administrative action on the reported individual, whichever is sooner. Reports should include:

(a) Award number,

(b) Name of PI or Co-PI being reported,

(c) Awardee name,

(d) Awardee address,

(e) AOR name, title, phone, and email address,

(f) Indication of the report type:

(i) Finding or determination has been made that the reported individual violated awardee policies or codes of conduct, statutes, or regulations related to sexual harassment, sexual assault, or other forms of harassment, including the date that the finding was made.

(ii) Imposition of an administrative or disciplinary action by the recipient on the reporting individual related to a finding/determination or an investigation of an alleged violation of recipient policy or codes of conduct, statutes, or regulations, or other forms of harassment.

(iii) The date and nature of the administrative/disciplinary action, including a basic explanation or description of the event, which should not disclose personally identifiable information regarding any complaints or individuals involved. Any description provided must be consistent with the *Family Educational Rights in Privacy Act*.

(3) Definitions.

(a) An "authorized organizational representative (AOR)" is an administrative official who, on behalf of the proposing institution, is empowered to make certifications and representations and can commit the institution to the conduct of a project that an agency is being asked to support as well as adhere to various agency policies and award requirements.

(b) "Principal investigators and co-principal investigators" are award personnel supported by a grant, cooperative agreement, or contract under Federal law.

(c) A "reported individual" refers to recipient personnel who have been reported to a federal agency for potential sexual harassment violations.

(d) "Sex based harassment" means a form of sex discrimination and includes harassment based on sex, sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity.

(e) "Sexual harassment" means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when this conduct explicitly or implicitly affects an individual's employment, unreasonably interferes with an individual's work performance, or creates an intimidating, hostile, or offensive work environment, whether such activity is carried out by a supervisor or by a co-worker, volunteer, or contractor.

VII. *Civil Rights Act of 1964 – Title VI*

Recipients must comply with the requirements of Title VI of the *Civil Rights Act of 1964*, Pub. L. No. 88-352 (codified as amended at 42 U.S.C. § 2000d *et seq.*), which provides that no person in the United States will, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. DHS

implementing regulations for the Act are found at 6 C.F.R. Part 21. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 7.

*VIII.* *Civil Rights Act of 1968*

Recipients must comply with Title VIII of the *Civil Rights Act of 1968*, Pub. L. No. 90284 (codified as amended at 42 U.S.C. § 3601 *et seq.*) which prohibits recipients from discriminating in the sale, rental, financing, and advertising of dwellings, or in the provision of services in connection. therewith, on the basis of race, color, national origin, religion, disability, familial status, and sex, as implemented by the U.S. Department of Housing and Urban Development at 24 C.F.R. Part 100. The prohibition on disability discrimination includes the requirement that new multifamily housing with four or more dwelling units— i.e., the public and common use areas and individual apartment units (all units in buildings with elevators and ground-floor units in buildings without elevators)—be designed and constructed with certain accessible features. (See 24 C.F.R. Part 100, Subpart D.)

IX. Communication and Cooperation with the Department of Homeland Security and Immigration Officials

(1) All recipients and other recipients of funds under this award must agree that they will comply with the following requirements related to coordination and cooperation with the Department of Homeland Security and immigration officials:

(a) They must comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with DHS regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: 1) sending such information to, or requesting or receiving such information from, Federal immigration officials; 2) maintaining such information; or 3) exchanging such information with any other Federal, State, or local government entity;

(b) They must comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes;

(c) That they will honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance;

(d) That they will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien; and

(e) That they will not leak or otherwise publicize the existence of an immigration enforcement operation.

(2) The recipient must certify under penalty of perjury pursuant to 28 U.S.C. § 1746 and using a form that is acceptable to DHS, that it will comply with the requirements of this term. Additionally, the recipient agrees that it will require any subrecipients or contractors to certify in the same manner that they will comply with this term prior to providing them with any funding under this award.

(3) The recipient agrees that compliance with this term is material to the Government's decision to make or continue with this award and that the Department of homeland Security may terminate this grant, or take any other allowable enforcement action, if the recipient fails to comply with this term.

X. Copyright

Recipients must affix the applicable copyright notices of 17 U.S.C. §§ 401 or 402 to any work first produced under federal awards and also include an acknowledgement that the work was produced under a federal award (including the federal award number and federal awarding agency). As detailed in 2 C.F.R. § 200.315, a federal awarding agency reserves a royalty-free, nonexclusive, and irrevocable right to reproduce, publish, or otherwise use the work for federal purposes and to authorize others to do so.

XI. Debarment and Suspension

Recipients must comply with the non-procurement debarment and suspension regulations implementing Executive Orders 12549 and 12689 set forth at 2 C.F.R. Part 180 as implemented by DHS at 2 C.F.R. Part 3000. These regulations prohibit recipients from entering into covered transactions (such as subawards and contracts) with certain parties that are debarred, suspended, or otherwise excluded from or ineligible for participation in federal assistance programs or activities.

XII. Drug-Free Workplace Regulations

Recipients must comply with drug-free workplace requirements in Subpart B (or Subpart C, if the recipient is an individual) of 2 C.F.R. Part 3001, which adopts the Government- wide implementation (2 C.F.R. Part 182) of the *Drug-Free Workplace Act of 1988* (41 U.S.C. §§ 8101-8106).

XIII. Duplicative Costs

Recipients are prohibited from charging any cost to this federal award that will be included as a cost or used to meet cost sharing requirements of any other federal award in either the current or a prior budget period. See 2 C.F.R. § 200.403(f). However, recipients may shift costs that are allowable under two or more federal awards where otherwise permitted by federal statutes, regulations, or the federal award terms and conditions.

XIV. Education Amendments of 1972 (*Equal Opportunity in Education Act*) – Title IX

Recipients must comply with the requirements of Title IX of the Education Amendments of 1972, Pub. L. No. 92-318 (codified as amended at 20 U.S.C. § 1681 *et seq*.), which provide that no person in the United States will, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal financial assistance. DHS implementing regulations are codified at 6 C.F.R. Part 17. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 19.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

*XV.* *Energy Policy and Conservation Act*

Recipients must comply with the requirements of the *Energy Policy and Conservation Act*, Pub. L. No. 94-163 (1975) (codified as amended at 42 U.S.C. § 6201 *et seq*.), which contain policies relating to energy efficiency that are defined in the state energy conservation plan issued in compliance with this Act.

*XVI.* Equal Treatment of Faith-Based Organizations

It is DHS policy to ensure the equal treatment of faith-based organizations in social service programs administered or supported by DHS or its component agencies, enabling those organizations to participate in providing important social services to beneficiaries.

Recipients must comply with the equal treatment policies and requirements contained in 6 C.F.R. Part 19 and other applicable statutes, regulations, and guidance governing the participations of faith-based organizations in individual DHS programs.

*XVII.* Anti-Discrimination

Recipients must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4).

(1) Definitions. As used in this clause –

(a) DEI means "diversity, equity, and inclusion."

(b) DEIA means "diversity, equity, inclusion, and accessibility."

(c) Discriminatory equity ideology has the meaning set forth in Section 2(b) of Executive Order 14190 of January 29, 2025.

(d) Federal anti-discrimination laws mean Federal civil rights law that protect individual Americans from discrimination on the basis of race, color, sex, religion, and national origin.

(e) Illegal immigrant means any alien, as defined in 8 U.S.C. § 1101(a)(3), who has no lawful immigration status in the United States.

(2) Grant award certification.

(a) By accepting the grant award, recipients are certifying that:

(i) They do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws; and

(ii) They do not engage in and will not during the term of this award engage in, a discriminatory prohibited boycott.

(iii) They do not, and will not during the term of this award, operate any program that benefits illegal immigrants or incentivizes illegal immigration.

(3) DHS reserves the right to suspend payments in whole or in part and/or terminate financial assistance awards if the Secretary of Homeland Security or her designee determines that the recipient has violated any provision of subsection (2)..

(4) Upon suspension or termination under subsection (3), all funds received by the recipient shall be deemed to be in excess of the amount that the recipient is determined to be entitled to under the Federal award for purposes of 2 C.F.R. § 200.346. As such, all amounts received will constitute a debt to the Federal Government that may be pursued to the maximum extent permitted by law.

XVIII. *False Claims Act* and Program Fraud Civil Remedies

Recipients must comply with the requirements of the *False Claims Act*, 31 U.S.C. §§ 3729- 3733, which prohibit the submission of false or fraudulent claims for payment to the Federal Government. (See 31 U.S.C. §§ 3801-3812, which details the administrative remedies for false claims and statements made.)

XIX. Federal Debt Status

All recipients are required to be non-delinquent in their repayment of any federal debt. Examples of relevant debt include delinquent payroll and other taxes, audit disallowances, and benefit overpayments. See OMB Circular A-129.

XX. Federal Leadership on Reducing Text Messaging While Driving

Recipients are encouraged to adopt and enforce policies that ban text messaging while driving recipient-owned, recipient-rented, or privately owned vehicles when on official government business or when performing any work for or on behalf of the Federal Government. Recipients are also encouraged to conduct the initiatives of the type described in Section 3(a) of Executive Order 13513.

*XXI. Fly America Act of 1974*

Recipients must comply with Preference for U.S. Flag Air Carriers (a list of certified air carriers can be found at: Certificated Air Carriers List | US Department of Transportation, https://www.transportation.gov/policy/aviation-policy/certificated-aircarriers-list)for international air transportation of people and property to the extent that such service is available, in accordance with the *International Air Transportation Fair Competitive Practices Act of 1974*, 49 U.S.C. § 40118, and the interpretative guidelines issued by the Comptroller General of the United States in the March 31, 1981, amendment to Comptroller General Decision B-138942.

*XXII. Hotel and Motel Fire Safety Act of 1990*

Recipients must ensure that all conference, meeting, convention, or training space funded entirely or in part by federal award funds complies with the fire prevention and control guidelines of Section 6 of the *Hotel and Motel Fire Safety Act of 1990*, 15 U.S.C. § 2225a.

*XXIII. John S. McCain National Defense Authorization Act of Fiscal Year 2019*

Recipients, subrecipients, and their contractors and subcontractors are subject to the prohibitions described in section 889 of the *John S. McCain National Defense Authorization Act for Fiscal Year 2019*, Pub. L. No. 115-232 (2018) and 2 C.F.R. §§ 200.216, 200.327, 200.471, and Appendix II to 2 C.F.R. Part 200. The statute – as it applies to DHS recipients, subrecipients, and their contractors and subcontractors – prohibits obligating or expending federal award funds on certain telecommunications and video surveillance products and contracting with certain entities for national security reasons.

XXIV. Limited English Proficiency (*Civil Rights Act of 1964, Title VI*)

Recipients must comply with Title VI of the *Civil Rights Act of 1964* (42 U.S.C. § 2000d *et seq.*) prohibition against discrimination on the basis of national origin, which requires that recipients of federal financial assistance take reasonable steps

to provide meaningful access to persons with limited English proficiency (LEP) to their programs and services. For additional assistance and information regarding language access obligations, please refer to the DHS Recipient Guidance: https://www.dhs.gov/guidance-published-help- department-supported-organizationsprovide-meaningful-access-people-limited and additional resources on http://www.lep.gov.

XXV. Lobbying Prohibitions

Recipients must comply with 31 U.S.C. § 1352 and 6 C.F.R. Part 9, which provide that none of the funds provided under a federal award may be expended by the recipient to pay any person to influence, or attempt to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any federal action related to a federal award or contract, including any extension, continuation, renewal, amendment, or modification. Per 6 C.F.R. Part 9, recipients must file a lobbying certification form as described in Appendix A to 6 C.F.R. Part 9 or available on Grants.gov as the Grants.gov Lobbying Form and file a lobbying disclosure form as described in Appendix B to 6 C.F.R. Part 9 or available on Grants.gov as the Disclosure of Lobbying Activities (SF-LLL).

*XXVI. National Environmental Policy Act*

Recipients must comply with the requirements of the *National Environmental Policy Act of 1969*, Pub. L. No. 91-190 (1970) (codified as amended at 42 U.S.C. § 4321 *et seq*.) (NEPA) and the Council on Environmental Quality (CEQ) Regulations for Implementing the Procedural Provisions of NEPA, which require recipients to use all practicable means within their authority, and consistent with other essential considerations of national policy, to create and maintain conditions under which people and nature can exist in productive harmony and fulfill the social, economic, and other needs of present and future generations of Americans.

XXVII. National Security Presidential Memorandum-33 (NSPM-33) and provisions of the CHIPS and Science Act of 2022, Pub. L. 117-167, Section 10254

(1) Recipient research institutions ("covered institutions") must comply with the requirements in NSPM-33 and provisions of Pub. L.117-167, Section 10254 (codified at 42 U.S.C. § 18951) certifying that the institution has established and operates a research security program that includes elements relating to:

(a) cybersecurity;

(b) foreign travel security;

(c) research security training; and

(d) export control training, as appropriate.

(2) Definition. "Covered institutions" means recipient research institutions receiving federal Research and Development (R&D) science and engineering support "in excess of $50 million per year."

XXVIII. Non-Supplanting Requirement

Recipients of federal awards under programs that prohibit supplanting by law must ensure that federal funds supplement but do not supplant non-federal funds that, in the absence of such federal funds, would otherwise have been made available for the same purpose.

XXIX. Notice of Funding Opportunity Requirements

All the instructions, guidance, limitations, scope of work, and other conditions set forth in the Notice of Funding Opportunity (NOFO) for this federal award are incorporated

by reference. All recipients must comply with any such requirements set forth in the NOFO. If a condition of the NOFO is inconsistent with these terms and conditions and any such terms of the federal award, the condition in the NOFO shall be invalid to the extent of the inconsistency. The remainder of that condition and all other conditions set forth in the NOFO shall remain in effect.

XXX. Patents and Intellectual Property Rights

Recipients are subject to the *Bayh-Dole Act*, 35 U.S.C. § 200 *et seq*. and applicable regulations governing inventions and patents, including the regulations issued by the Department of Commerce at 37 C.F.R. Part 401 (Rights to Inventions Made by Nonprofit Organizations and Small Business Firms under Government Awards, Contracts, and Cooperative Agreements) and the standard patent rights clause set forth at 37 C.F.R. § 401.14.

XXXI. Presidential Executive Orders

Recipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference.

XXXII. Procurement of Recovered Materials

States, political subdivisions of states, and their contractors must comply with Section 6002 of the *Solid Waste Disposal Act*, Pub. L. No. 89-272 (1965) (codified as amended by the *Resource Conservation and Recovery Act* at 42 U.S.C. § 6962) and 2 C.F.R. § 200.323. The requirements of Section 6002 include procuring only items designated in guidelines of the Environmental Protection Agency (EPA) at 40 C.F.R. Part 247 that contain the highest percentage of recovered materials practicable, consistent with maintaining a satisfactory level of competition.

*XXXIII. Rehabilitation Act of 1973*

Recipients must comply with the requirements of Section 504 of the *Rehabilitation Act of 1973*, Pub. L. No. 93-112 (codified as amended at 29 U.S.C. § 794), which provides that no otherwise qualified handicapped individuals in the United States will, solely by reason of the handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

XXXIV. Reporting Recipient Integrity and Performance Matters

If the total value of any currently active grants, cooperative agreements, and procurement contracts from all federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of the federal award, then the recipient must comply with the requirements set forth in the government-wide federal award term and condition for Recipient Integrity and Performance Matters is in 2 C.F.R. Part 200, Appendix XII, the full text of which is incorporated by reference.

XXXV. Reporting Subawards and Executive Compensation

For federal awards that total or exceed $30,000, recipients are required to comply with the requirements set forth in the government-wide federal award term and condition on Reporting Subawards and Executive Compensation set forth at 2 C.F.R. Part 170, Appendix A, the full text of which is incorporated by reference.

XXXVI. Required Use of American Iron, Steel, Manufactured Products, and Construction Materials

(1) Recipients of a federal award from a financial assistance program that provides funding for infrastructure are hereby notified that none of the funds provided under this federal award may be used for a project for infrastructure unless:

(a) all iron and steel used in the project are produced in the United States—this means all manufacturing processes, from the initial melting stage through the application of coatings, occurred in the United States;

(b) all manufactured products used in the project are produced in the United States—this means the manufactured product was manufactured in the United States; and the cost of the components of the manufactured product that are mined, produced, or manufactured in the United States is greater than 55 percent of the total cost of all components of the manufactured product, unless another standard for determining the minimum amount of domestic content of the manufactured product has been established under applicable law or regulation; and

(c) all construction materials are manufactured in the United States—this means that all manufacturing processes for the construction material occurred in the United States.

(2) The Buy America preference only applies to articles, materials, and supplies that are consumed in, incorporated into, or affixed to an infrastructure project. As such, it does not apply to tools, equipment, and supplies, such as temporary scaffolding, brought to the construction site and removed at or before the completion of the infrastructure project. Nor does a Buy America preference apply to equipment and furnishings, such as movable chairs, desks, and portable computer equipment, that are used at or within the finished infrastructure project but are not an integral part of the structure or permanently affixed to the infrastructure project.

(3) *Waivers*

When necessary, recipients may apply for, and the agency may grant, a waiver from these requirements. The agency should notify the recipient for information on the process for requesting a waiver from these requirements.

(a) When the Federal agency has determined that one of the following exceptions applies, the federal awarding official may waive the application of the domestic content procurement preference in any case in which the agency determines that:

(i) applying the domestic content procurement preference would be inconsistent with the public interest;

(ii) the types of iron, steel, manufactured products, or construction materials are not produced in the United States in sufficient and reasonably available quantities or of a satisfactory quality; or

(iii) the inclusion of iron, steel, manufactured products, or construction materials produced in the United States will increase the cost of the overall project by more than 25 percent.

(b) A request to waive the application of the domestic content procurement preference must be in writing. The agency will provide instructions on the format, contents, and supporting materials required for any waiver request. Waiver requests are subject to public comment periods of no less than 15 days and must be reviewed by the Made in America Office.

(c) There may be instances where a federal award qualifies, in whole or in part, for an existing waiver described at "Buy America" Preference in FEMA Financial Assistance Programs for Infrastructure | FEMA.gov.

(4) *Definitions*. The definitions applicable to this term are set forth at 2 C.F.R. § 184.3, the full text of which is incorporated by reference.

XXXVII. SAFECOM

Recipients receiving federal awards made under programs that provide emergency communication equipment and its related activities must comply with the SAFECOM Guidance for Emergency Communication Grants, including provisions on technical standards that ensure and enhance interoperable communications. The SAFECOM Guidance is updated annually and can be found at Funding and Sustainment | CISA.

XXXVIII. Subrecipient Monitoring and Management

Pass-through entities must comply with the requirements for subrecipient monitoring and management as set forth in 2 C.F.R. §§ 200.331-333.

XXXIX. System for Award Management and Unique Entity Identifier Requirements

Recipients are required to comply with the requirements set forth in the governmentwide federal award term and condition regarding the System for Award Management and Unique Entity Identifier Requirements in 2 C.F.R. Part 25, Appendix A, the full text of which is incorporated reference.

XL. Termination of a Federal Award

(1) By DHS. DHS may terminate a federal award, in whole or in part, for the following reasons:

(a) If the recipient fails to comply with the terms and conditions of the federal award;

(b) With the consent of the recipient, in which case the parties must agree upon the termination conditions, including the effective date, and in the case of partial termination, the portion to be terminated; or

(c) Pursuant to the terms and conditions of the federal award, including, to the extent authorized by law, if the federal award no longer effectuates the program goals or agency priorities.

(3) By the Recipient. The recipient may terminate the federal award, in whole or in part, by sending written notification to DHS stating the reasons for such termination, the effective date, and in the case of partial termination, the portion to be terminated. However, if DHS determines that the remaining portion of the federal award will not accomplish the purposes for which the federal award was made, DHS may terminate the federal award in its entirety.

(4) Notice. Either party will provide written notice of intent to terminate for any reason to the other party no less than 30 calendar days prior to the effective date of the termination.

(5) Compliance with Closeout Requirements for Terminated Awards. The recipient must continue to comply with closeout requirements in 2 C.F.R. §§ 200.344200.345 after an award is terminated.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

XLI. Terrorist Financing

Recipients must comply with Executive Order 13224 and applicable statutory prohibitions on transactions with, and the provisions of resources and support to, individuals and organizations associated with terrorism. Recipients are legally responsible for ensuring compliance with the Executive Order and laws.

XLII. Trafficking Victims Protection Act of 2000(TVPA)

Recipients must comply with the requirements of the government-wide federal award term and condition which implements Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, § 106 (codified as amended at 22 U.S.C. § 7104). The federal award term and condition is in 2 C.F.R. § 175.105, the full text of which is incorporated by reference.

XLIII. *Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001*, Pub. L. 107-56

Recipients must comply with the requirements of Pub. L. 107-56, Section 817 of the USA PATRIOT Act, which amends 18 U.S.C. §§ 175–175c.

XLIV. Use of DHS Seal, Logo and Flags

Recipients must obtain written permission from DHS prior to using the DHS seals, logos, crests, or reproductions of flags, or likenesses of DHS agency officials. This includes use of DHS component (e.g., FEMA, CISA, etc.) seals, logos, crests, or reproductions of flags, or likenesses of component officials.

*XLV. Whistleblower Protection Act*

Recipients must comply with the statutory requirements for whistleblower protections in 10 U.S.C § 470141 U.S.C. § 4712.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

The Fiscal Year (FY) 2025 Department of Homeland Security (DHS) Standard Terms and Conditions apply to all new federal awards of federal financial assistance (federal awards) for which the federal award date occurs in FY 2025 and flow down to subrecipients unless a term or condition specifically indicates otherwise. For federal continuation awards made in subsequent FYs, the FY 2025 DHS Standard Terms and Conditions apply unless otherwise specified in the terms and conditions of the continuation awards. The United States has the right to seek judicial enforcement of these terms and conditions.

All legislation and digital resources are referenced with no digital links. These FY 2025 DHS Standard Terms and Conditions are maintained on the DHS website at https://www.dhs.gov/publication/dhs-standard-terms-and-conditions.

## A. Assurance, Administrative Requirements, Cost Principles, Representations, and Certifications

I. Recipients must complete either the Office of Management and Budget (OMB) Standard Form 424B Assurances – Non- Construction Programs, or OMB Standard Form 424D Assurances – Construction Programs, as applicable. Certain assurances in these documents may not be applicable to your program and the DHS financial assistance office (DHS FAO) may require applicants to certify additional assurances. Applicants are required to fill out the assurances, as instructed.

## B. General Acknowledgements and Assurances Recipients are required to follow the applicable provisions of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards in effect as of the federal award date and located in Title 2, Code of Federal Regulations, Part 200 and adopted by DHS at 2 C.F.R. § 3002.10.

All recipients and subrecipients must acknowledge and agree to provide DHS access to records, accounts, documents, information, facilities, and staff pursuant to 2 C.F.R. § 200.337.

I. Recipients must cooperate with any DHS compliance reviews or compliance investigations.

II. Recipients must give DHS access to examine and copy records, accounts, and other documents and sources of information related to the federal award and permit access to facilities and personnel.

III. Recipients must submit timely, complete, and accurate reports to the appropriate DHS officials and maintain appropriate backup documentation to support the reports.

IV. Recipients must comply with all other special reporting, data collection, and evaluation requirements required by law, federal regulation, Notice of Funding Opportunity, federal award specific terms and conditions, and/or DHS Component program guidance. Organization costs related to data and evaluation are allowable. The definition of data and evaluation costs is in 2 C.F.R. § 200.455(c), the full text of which is incorporated by reference.

V. Recipients must complete DHS Form 3095 within 60 days of receipt of the Notice of Award for the first award under which this term applies. For further instructions and to access the form, please visit: https://www.dhs.gov/civil-rights-resources-recipients-dhs-financial-assistance.

## C. Standard Terms & Conditions

### I. Acknowledgement of Federal Funding from DHS

Recipients must acknowledge their use of federal award funding when issuing statements, press releases, requests for proposal, bid invitations, and other documents describing projects or programs funded in whole or in part with federal

award funds.

II. Activities Conducted Abroad

Recipients must coordinate with appropriate government authorities when performing project activities outside the United States obtain all appropriate licenses, permits, or approvals.

*III. Age Discrimination Act of 1975*

Recipients must comply with the requirements of the *Age Discrimination Act of 1975*, Pub. L. No. 94-135 (codified as amended at Title 42, U.S. Code § 6101 *et seq*.), which prohibits discrimination on the basis of age in any program or activity receiving federal financial assistance.

*IV. Americans with Disabilities Act of 1990*

Recipients must comply with the requirements of Titles I, II, and III of the *Americans with Disabilities Act*, Pub. L. No. 101-336 (1990) (codified as amended at 42 U.S.C. §§ 12101– 12213), which prohibits recipients from discriminating on the basis of disability in the operation of public entities, public and private transportation systems, places of public accommodation, and certain testing entities.

V. Best Practices for Collection and Use of Personally Identifiable Information

(1) Recipients who collect personally identifiable information (PII) as part of carrying out the scope of work under a federal award are required to have a publicly available privacy policy that describes standards on the usage and maintenance of the PII they collect.

(2) Definition. DHS defines "PII" as any information that permits the identity of an individual to be directly or indirectly inferred, including any information that is linked or linkable to that individual. Recipients may also find the DHS Privacy Impact Assessments: Privacy Guidance and Privacy Template as useful resources respectively.

VI. *CHIPS and Science Act of 2022*, Public Law 117-167 CHIPS

(1) Recipients of DHS research and development (R&D) awards must report to the DHS Component research program office any finding or determination of sex-based and sexual harassment and/or an administrative or disciplinary action taken against principal investigators or co-investigators to be completed by an authorized organizational representative (AOR) at the recipient institution.

(2) Notification. An AOR must disclose the following information to agencies within 10 days of the date/the finding is made, or 10 days from when a recipient imposes an administrative action on the reported individual, whichever is sooner. Reports should include:

(a) Award number,

(b) Name of PI or Co-PI being reported,

(c) Awardee name,

(d) Awardee address,

(e) AOR name, title, phone, and email address,

(f) Indication of the report type:

(i) Finding or determination has been made that the reported individual violated awardee policies or codes of conduct, statutes, or regulations related to sexual harassment, sexual assault, or other forms of harassment, including the date that the finding was made.

(ii) Imposition of an administrative or disciplinary action by the recipient on the reporting individual related to a finding/determination or an investigation of an alleged violation of recipient policy or codes of conduct, statutes, or regulations, or other forms of harassment.

(iii) The date and nature of the administrative/disciplinary action, including a basic explanation or description of the event, which should not disclose personally identifiable information regarding any complaints or individuals involved. Any description provided must be consistent with the *Family Educational Rights in Privacy Act*.

(3) Definitions.

(a) An “authorized organizational representative (AOR)” is an administrative official who, on behalf of the proposing institution, is empowered to make certifications and representations and can commit the institution to the conduct of a project that an agency is being asked to support as well as adhere to various agency policies and award requirements.

(b) “Principal investigators and co-principal investigators” are award personnel supported by a grant, cooperative agreement, or contract under Federal law.

(c) A “reported individual” refers to recipient personnel who have been reported to a federal agency for potential sexual harassment violations.

(d) “Sex based harassment” means a form of sex discrimination and includes harassment based on sex, sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity.

(e) “Sexual harassment” means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when this conduct explicitly or implicitly affects an individual’s employment, unreasonably interferes with an individual’s work performance, or creates an intimidating, hostile, or offensive work environment, whether such activity is carried out by a supervisor or by a co-worker, volunteer, or contractor.

VII. *Civil Rights Act of 1964 – Title VI*

Recipients must comply with the requirements of Title VI of the *Civil Rights Act of 1964*, Pub. L. No. 88-352 (codified as amended at 42 U.S.C. § 2000d *et seq*.), which provides that no person in the United States will, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. DHS implementing regulations for the Act are found at 6 C.F.R. Part 21. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA’s implementing regulations at 44 C.F.R. Part 7.

*VIII.* *Civil Rights Act of 1968*

Recipients must comply with Title VIII of the *Civil Rights Act of 1968*, Pub. L. No. 90-284 (codified as amended at 42 U.S.C. § 3601 *et seq*.) which prohibits recipients from discriminating in the sale, rental, financing, and advertising of dwellings, or in the provision of services in connection. therewith, on the basis of race, color, national

origin, religion, disability, familial status, and sex, as implemented by the U.S. Department of Housing and Urban Development at 24 C.F.R. Part 100. The prohibition on disability discrimination includes the requirement that new multifamily housing with four or more dwelling units— i.e., the public and common use areas and individual apartment units (all units in buildings with elevators and ground-floor units in buildings without elevators)—be designed and constructed with certain accessible features. (See 24 C.F.R. Part 100, Subpart D.)

IX. Communication and Cooperation with the Department of Homeland Security and Immigration Officials

(1) All recipients and other recipients of funds under this award must agree that they will comply with the following requirements related to coordination and cooperation with the Department of Homeland Security and immigration officials:

(a) They must comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with DHS regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: 1) sending such information to, or requesting or receiving such information from, Federal immigration officials; 2) maintaining such information; or 3) exchanging such information with any other Federal, State, or local government entity;

(b) They must comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes;

(c) That they will honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance;

(d) That they will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien; and

(e) That they will not leak or otherwise publicize the existence of an immigration enforcement operation.

(2) The recipient must certify under penalty of perjury pursuant to 28 U.S.C. § 1746 and using a form that is acceptable to DHS, that it will comply with the requirements of this term. Additionally, the recipient agrees that it will require any subrecipients or contractors to certify in the same manner that they will comply with this term prior to providing them with any funding under this award.

(3) The recipient agrees that compliance with this term is material to the Government's decision to make or continue with this award and that the Department of homeland Security may terminate this grant, or take any other allowable enforcement action, if the recipient fails to comply with this term.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

X. Copyright

Recipients must affix the applicable copyright notices of 17 U.S.C. §§ 401 or 402 to any work first produced under federal awards and also include an acknowledgement that the work was produced under a federal award (including the federal award number and federal awarding agency). As detailed in 2 C.F.R. § 200.315, a federal awarding agency reserves a royalty-free, nonexclusive, and irrevocable right to reproduce, publish, or otherwise use the work for federal purposes and to authorize others to do so.

XI. Debarment and Suspension

Recipients must comply with the non-procurement debarment and suspension regulations implementing Executive Orders 12549 and 12689 set forth at 2 C.F.R. Part 180 as implemented by DHS at 2 C.F.R. Part 3000. These regulations prohibit recipients from entering into covered transactions (such as subawards and contracts) with certain parties that are debarred, suspended, or otherwise excluded from or ineligible for participation in federal assistance programs or activities.

XII. Drug-Free Workplace Regulations

Recipients must comply with drug-free workplace requirements in Subpart B (or Subpart C, if the recipient is an individual) of 2 C.F.R. Part 3001, which adopts the Government- wide implementation (2 C.F.R. Part 182) of the *Drug-Free Workplace Act of 1988* (41 U.S.C. §§ 8101-8106).

XIII. Duplicative Costs

Recipients are prohibited from charging any cost to this federal award that will be included as a cost or used to meet cost sharing requirements of any other federal award in either the current or a prior budget period. See 2 C.F.R. § 200.403(f). However, recipients may shift costs that are allowable under two or more federal awards where otherwise permitted by federal statutes, regulations, or the federal award terms and conditions.

XIV. Education Amendments of 1972 (*Equal Opportunity in Education Act*) – Title IX

Recipients must comply with the requirements of Title IX of the Education Amendments of 1972, Pub. L. No. 92-318 (codified as amended at 20 U.S.C. § 1681 *et seq*.), which provide that no person in the United States will, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal financial assistance. DHS implementing regulations are codified at 6 C.F.R. Part 17. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 19.

*XV. Energy Policy and Conservation Act*

Recipients must comply with the requirements of the *Energy Policy and Conservation Act*, Pub. L. No. 94-163 (1975) (codified as amended at 42 U.S.C. § 6201 *et seq*.), which contain policies relating to energy efficiency that are defined in the state energy conservation plan issued in compliance with this Act.

XVI. Equal Treatment of Faith-Based Organizations

It is DHS policy to ensure the equal treatment of faith-based organizations in social service programs administered or supported by DHS or its component agencies, enabling those organizations to participate in providing important social services to beneficiaries.

Recipients must comply with the equal treatment policies and requirements contained in 6 C.F.R. Part 19 and other applicable statutes, regulations, and guidance governing the participations of faith-based organizations in individual DHS programs.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

XVII. Anti-Discrimination

Recipients must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4).

(1) Definitions. As used in this clause –

(a) DEI means "diversity, equity, and inclusion."

(b) DEIA means "diversity, equity, inclusion, and accessibility."

(c) Discriminatory equity ideology has the meaning set forth in Section 2(b) of Executive Order 14190 of January 29, 2025.

(d) Federal anti-discrimination laws means Federal civil rights law that protect individual Americans from discrimination on the basis of race, color, sex, religion, and national origin.

(2) Grant award certification.

(a) By accepting the grant award, recipients are certifying that:

(i) They do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws; and

(ii) They do not engage in, and will not during the term of this award engage in, a discriminatory prohibited boycott.

(3) DHS reserves the right to terminate financial assistance awards and claw back all funds if the recipients, during the term of this award, operate any program in violation of Federal anti-discriminatory laws or engages in a discriminatory prohibited boycott.

XVIII. *False Claims Act* and Program Fraud Civil Remedies

Recipients must comply with the requirements of the *False Claims Act*, 31 U.S.C. §§ 3729- 3733, which prohibit the submission of false or fraudulent claims for payment to the Federal Government. (See 31 U.S.C. §§ 3801-3812, which details the administrative remedies for false claims and statements made.)

XIX. Federal Debt Status

All recipients are required to be non-delinquent in their repayment of any federal debt. Examples of relevant debt include delinquent payroll and other taxes, audit disallowances, and benefit overpayments. See OMB Circular A-129.

XX. Federal Leadership on Reducing Text Messaging While Driving

Recipients are encouraged to adopt and enforce policies that ban text messaging while driving recipient-owned, recipient-rented, or privately owned vehicles when on official government business or when performing any work for or on behalf of the Federal Government. Recipients are also encouraged to conduct the initiatives of the type described in Section 3(a) of Executive Order 13513.

XXI. *Fly America Act of 1974*

Recipients must comply with Preference for U.S. Flag Air Carriers (a list of certified air carriers can be found at: Certificated Air Carriers List | US Department of Transportation, https://www.transportation.gov/policy/aviation-policy/certificated-air-carriers-list)for international air transportation of people and property to the extent that such service is available, in accordance with the *International Air Transportation*

*Fair Competitive Practices Act of 1974*, 49 U.S.C. § 40118, and the interpretative guidelines issued by the Comptroller General of the United States in the March 31, 1981, amendment to Comptroller General Decision B-138942.

*XXII.* *Hotel and Motel Fire Safety Act of 1990*

Recipients must ensure that all conference, meeting, convention, or training space funded entirely or in part by federal award funds complies with the fire prevention and control guidelines of Section 6 of the *Hotel and Motel Fire Safety Act of 1990*, 15 U.S.C. § 2225a.

*XXIII.* *John S. McCain National Defense Authorization Act of Fiscal Year 2019*

Recipients, subrecipients, and their contractors and subcontractors are subject to the prohibitions described in section 889 of the *John S. McCain National Defense Authorization Act for Fiscal Year 2019*, Pub. L. No. 115-232 (2018) and 2 C.F.R. §§ 200.216, 200.327, 200.471, and Appendix II to 2 C.F.R. Part 200. The statute – as it applies to DHS recipients, subrecipients, and their contractors and subcontractors – prohibits obligating or expending federal award funds on certain telecommunications and video surveillance products and contracting with certain entities for national security reasons.

XXIV. Limited English Proficiency (*Civil Rights Act of 1964, Title VI*)

Recipients must comply with Title VI of the *Civil Rights Act of 1964* (42 U.S.C. § 2000d *et seq.*) prohibition against discrimination on the basis of national origin, which requires that recipients of federal financial assistance take reasonable steps to provide meaningful access to persons with limited English proficiency (LEP) to their programs and services. For additional assistance and information regarding language access obligations, please refer to the DHS Recipient Guidance: https://www.dhs.gov/guidance-published-help- department-supported-organizations-provide-meaningful-access-people-limited and additional resources on http://www.lep.gov.

XXV. Lobbying Prohibitions

Recipients must comply with 31 U.S.C. § 1352 and 6 C.F.R. Part 9, which provide that none of the funds provided under a federal award may be expended by the recipient to pay any person to influence, or attempt to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any federal action related to a federal award or contract, including any extension, continuation, renewal, amendment, or modification. Per 6 C.F.R. Part 9, recipients must file a lobbying certification form as described in Appendix A to 6 C.F.R. Part 9 or available on Grants.gov as the Grants.gov Lobbying Form and file a lobbying disclosure form as described in Appendix B to 6 C.F.R. Part 9 or available on Grants.gov as the Disclosure of Lobbying Activities (SF-LLL).

*XXVI.* *National Environmental Policy Act*

Recipients must comply with the requirements of the *National Environmental Policy Act of 1969*, Pub. L. No. 91-190 (1970) (codified as amended at 42 U.S.C. § 4321 *et seq.*) (NEPA) and the Council on Environmental Quality (CEQ) Regulations for Implementing the Procedural Provisions of NEPA, which require recipients to use all practicable means within their authority, and consistent with other essential considerations of national policy, to create and maintain conditions under which people and nature can exist in productive harmony and fulfill the social, economic, and other needs of present and future generations of Americans.

XXVII. National Security Presidential Memorandum-33 (NSPM-33) and provisions of the CHIPS and

Science Act of 2022, Pub. L. 117-167, Section 10254

(1) Recipient research institutions ("covered institutions") must comply with the requirements in NSPM-33 and provisions of Pub. L.117-167, Section 10254 (codified at 42 U.S.C. § 18951) certifying that the institution has established and operates a research security program that includes elements relating to:

(a) cybersecurity;

(b) foreign travel security;

(c) research security training; and

(d) export control training, as appropriate.

(2) Definition. "Covered institutions" means recipient research institutions receiving federal Research and Development (R&D) science and engineering support "in excess of $50 million per year."

XXVIII. Non-Supplanting Requirement

Recipients of federal awards under programs that prohibit supplanting by law must ensure that federal funds supplement but do not supplant non-federal funds that, in the absence of such federal funds, would otherwise have been made available for the same purpose.

XXIX. Notice of Funding Opportunity Requirements

All the instructions, guidance, limitations, scope of work, and other conditions set forth in the Notice of Funding Opportunity (NOFO) for this federal award are incorporated by reference. All recipients must comply with any such requirements set forth in the NOFO. If a condition of the NOFO is inconsistent with these terms and conditions and any such terms of the federal award, the condition in the NOFO shall be invalid to the extent of the inconsistency. The remainder of that condition and all other conditions set forth in the NOFO shall remain in effect.

XXX. Patents and Intellectual Property Rights

Recipients are subject to the *Bayh-Dole Act*, 35 U.S.C. § 200 *et seq*. and applicable regulations governing inventions and patents, including the regulations issued by the Department of Commerce at 37 C.F.R. Part 401 (Rights to Inventions Made by Nonprofit Organizations and Small Business Firms under Government Awards, Contracts, and Cooperative Agreements) and the standard patent rights clause set forth at 37 C.F.R. § 401.14.

XXXI. Presidential Executive Orders

Recipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference.

XXXII. Procurement of Recovered Materials

States, political subdivisions of states, and their contractors must comply with Section 6002 of the *Solid Waste Disposal Act*, Pub. L. No. 89-272 (1965) (codified as amended by the *Resource Conservation and Recovery Act* at 42 U.S.C. § 6962) and 2 C.F.R. § 200.323. The requirements of Section 6002 include procuring only items designated in guidelines of the Environmental Protection Agency (EPA) at 40 C.F.R. Part 247 that contain the highest percentage of recovered materials practicable, consistent with maintaining a satisfactory level of competition.

*XXXIII. Rehabilitation Act of 1973*

Recipients must comply with the requirements of Section 504 of the *Rehabilitation Act of 1973*, Pub. L. No. 93-112 (codified as amended at 29 U.S.C. § 794), which provides that no otherwise qualified handicapped individuals in the United States

will, solely by reason of the handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

XXXIV. Reporting Recipient Integrity and Performance Matters

If the total value of any currently active grants, cooperative agreements, and procurement contracts from all federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of the federal award, then the recipient must comply with the requirements set forth in the government-wide federal award term and condition for Recipient Integrity and Performance Matters is in 2 C.F.R. Part 200, Appendix XII, the full text of which is incorporated by reference.

XXXV. Reporting Subawards and Executive Compensation

For federal awards that total or exceed $30,000, recipients are required to comply with the requirements set forth in the government-wide federal award term and condition on Reporting Subawards and Executive Compensation set forth at 2 C.F.R. Part 170, Appendix A, the full text of which is incorporated by reference.

XXXVI. Required Use of American Iron, Steel, Manufactured Products, and Construction Materials

(1) Recipients of a federal award from a financial assistance program that provides funding for infrastructure are hereby notified that none of the funds provided under this federal award may be used for a project for infrastructure unless:

(a) all iron and steel used in the project are produced in the United States—this means all manufacturing processes, from the initial melting stage through the application of coatings, occurred in the United States;

(b) all manufactured products used in the project are produced in the United States—this means the manufactured product was manufactured in the United States; and the cost of the components of the manufactured product that are mined, produced, or manufactured in the United States is greater than 55 percent of the total cost of all components of the manufactured product, unless another standard for determining the minimum amount of domestic content of the manufactured product has been established under applicable law or regulation; and

(c) all construction materials are manufactured in the United States—this means that all manufacturing processes for the construction material occurred in the United States.

(2) The Buy America preference only applies to articles, materials, and supplies that are consumed in, incorporated into, or affixed to an infrastructure project. As such, it does not apply to tools, equipment, and supplies, such as temporary scaffolding, brought to the construction site and removed at or before the completion of the infrastructure project. Nor does a Buy America preference apply to equipment and furnishings, such as movable chairs, desks, and portable computer equipment, that are used at or within the finished infrastructure project but are not an integral part of the structure or permanently affixed to the infrastructure project.

(3) *Waivers*

When necessary, recipients may apply for, and the agency may grant, a waiver from these requirements. The agency should notify the recipient for information on the process for requesting a waiver from these requirements.

(a) When the Federal agency has determined that one of the following exceptions applies, the federal awarding official may waive the application of the domestic content procurement preference in any case in which the agency determines that:

(i) applying the domestic content procurement preference would be inconsistent with the public interest;

(ii) the types of iron, steel, manufactured products, or construction materials are not produced in the United States in sufficient and reasonably available quantities or of a satisfactory quality; or

(iii) the inclusion of iron, steel, manufactured products, or construction materials produced in the United States will increase the cost of the overall project by more than 25 percent.

(b) A request to waive the application of the domestic content procurement preference must be in writing. The agency will provide instructions on the format, contents, and supporting materials required for any waiver request. Waiver requests are subject to public comment periods of no less than 15 days and must be reviewed by the Made in America Office.

(c) There may be instances where a federal award qualifies, in whole or in part, for an existing waiver described at "Buy America" Preference in FEMA Financial Assistance Programs for Infrastructure | FEMA.gov.

(4) *Definitions*. The definitions applicable to this term are set forth at 2 C.F.R. § 184.3, the full text of which is incorporated by reference.

XXXVII. <u>SAFECOM</u>

Recipients receiving federal awards made under programs that provide emergency communication equipment and its related activities must comply with the SAFECOM Guidance for Emergency Communication Grants, including provisions on technical standards that ensure and enhance interoperable communications. The SAFECOM Guidance is updated annually and can be found at Funding and Sustainment | CISA.

XXXVIII. <u>Subrecipient Monitoring and Management</u>

Pass-through entities must comply with the requirements for subrecipient monitoring and management as set forth in 2 C.F.R. §§ 200.331-333.

XXXIX. <u>System for Award Management and Unique Entity Identifier Requirements</u>

Recipients are required to comply with the requirements set forth in the government-wide federal award term and condition regarding the System for Award Management and Unique Entity Identifier Requirements in 2 C.F.R. Part 25, Appendix A, the full text of which is incorporated reference.

XL. <u>Termination of a Federal Award</u>

(1) By DHS. DHS may terminate a federal award, in whole or in part, for the following reasons:

(a) If the recipient fails to comply with the terms and conditions of the federal award;

(b) With the consent of the recipient, in which case the parties must agree

upon the termination conditions, including the effective date, and in the case of partial termination, the portion to be terminated; or

(c) Pursuant to the terms and conditions of the federal award, including, to the extent authorized by law, if the federal award no longer effectuates the program goals or agency priorities.

(3) By the Recipient. The recipient may terminate the federal award, in whole or in part, by sending written notification to DHS stating the reasons for such termination, the effective date, and in the case of partial termination, the portion to be terminated. However, if DHS determines that the remaining portion of the federal award will not accomplish the purposes for which the federal award was made, DHS may terminate the federal award in its entirety.

(4) Notice. Either party will provide written notice of intent to terminate for any reason to the other party no less than 30 calendar days prior to the effective date of the termination.

(5) Compliance with Closeout Requirements for Terminated Awards. The recipient must continue to comply with closeout requirements in 2 C.F.R. §§ 200.344-200.345 after an award is terminated.

XLI. Terrorist Financing

Recipients must comply with Executive Order 13224 and applicable statutory prohibitions on transactions with, and the provisions of resources and support to, individuals and organizations associated with terrorism. Recipients are legally responsible for ensuring compliance with the Executive Order and laws.

XLII. Trafficking Victims Protection Act of 2000(TVPA)

Recipients must comply with the requirements of the government-wide federal award term and condition which implements Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, § 106 (codified as amended at 22 U.S.C. § 7104). The federal award term and condition is in 2 C.F.R. § 175.105, the full text of which is incorporated by reference.

XLIII. *Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001*, Pub. L. 107-56

Recipients must comply with the requirements of Pub. L. 107-56, Section 817 of the USA PATRIOT Act, which amends 18 U.S.C. §§ 175–175c.

XLIV. Use of DHS Seal, Logo and Flags

Recipients must obtain written permission from DHS prior to using the DHS seals, logos, crests, or reproductions of flags, or likenesses of DHS agency officials. This includes use of DHS component (e.g., FEMA, CISA, etc.) seals, logos, crests, or reproductions of flags, or likenesses of component officials.

*XLV. Whistleblower Protection Act*

Recipients must comply with the statutory requirements for whistleblower protections in 10 U.S.C § 470141 U.S.C. § 4712.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

The Fiscal Year (FY) 2025 Department of Homeland Security (DHS) Standard Terms and Conditions apply to all new federal awards of federal financial assistance (federal awards) for which the federal award date occurs in FY 2025 and flow down to subrecipients unless a term or condition specifically indicates otherwise. For federal continuation awards made in subsequent FYs, the FY 2025 DHS Standard Terms and Conditions apply unless otherwise specified in the terms and conditions of the continuation awards. The United States has the right to seek judicial enforcement of these terms and conditions.

All legislation and digital resources are referenced with no digital links. These FY 2025 DHS Standard Terms and Conditions are maintained on the DHS website at https://www.dhs.gov/publication/fy15-dhs- standard-terms-and-conditions.

**A. Assurance, Administrative Requirements, Cost Principles, Respresentations, and Certifications**

I. Recipients must complete either the Office of Management and Budget (OMB) Standard Form 424B Assurances – Non- Construction Programs, or OMB Standard Form 424D Assurances – Construction Programs, as applicable. Certain assurances in these documents may not be applicable to your program and the DHS financial assistance office (DHS FAO) may require applicants to certify additional assurances. Applicants are required to fill out the assurances as instructed by the federal awarding agency.

**B. General Acknowledgements and Assurances Recipients are required to follow the applicable provisions of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards in effect as of the federal award date and located at 2 C.F.R. Part 200 and adopted by DHS at 2 C.F.R. § 3002.10.**

All recipients and subrecipients must acknowledge and agree to provide DHS access to records, accounts, documents, information, facilities, and staff pursuant to 2 C.F.R. § 200.337.

I. Recipients must cooperate with any DHS compliance reviews or compliance investigations.

II. Recipients must give DHS access to examine and copy records, accounts, and other documents and sources of information related to the federal financial assistance award and permit access to facilities and personnel.

III. Recipients must submit timely, complete, and accurate reports to the appropriate DHS officials and maintain appropriate backup documentation to support the reports.

IV. Recipients must comply with all other special reporting, data collection, and evaluation requirements required by law, federal regulation, Notice of Funding Opportunity, federal award specific terms and conditions, and/or federal awarding agency program guidance. Organization costs related to data and evaluation are allowable. The definition of data and evaluation costs is located at 2 C.F.R. § 200.455(c), the full text of which is incorporated by reference.

V. Recipients must complete the DHS Civil Rights Evaluation Tool within thirty (30) days of receiving the Notice of Award for the first award under which this term applies. Recipients of multiple federal awards from DHS should only submit one completed tool for their organization, not per federal award. After the initial submission, recipients are required to complete the tool once every two (2) years if they have an active federal award, not every time a federal award is made. Recipients must submit the completed tool, including supporting materials, to CivilRightsEvaluation@hq.dhs.gov. This tool clarifies the civil rights obligations and related reporting requirements contained in these DHS Standard Terms and

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

Conditions. Subrecipients are not required to complete and submit this tool to DHS. The evaluation tool can be found at https://www.dhs.gov/publication/dhs-civil-rights-evaluation-tool. DHS Civil Rights Evaluation Tool | Homeland Security

The DHS Office for Civil Rights and Civil Liberties will consider, in its discretion, granting an extension to the 30-day deadline if the recipient identifies steps and a timeline for completing the tool. Recipients must request extensions by emailing the request to CivilRightsEvaluation@hq.dhs.gov prior to expiration of the 30-day deadline.

## C. Standard Terms & Conditions

### I. Acknowledgement of Federal Funding from DHS

Recipients must acknowledge their use of federal award funding when issuing statements, press releases, requests for proposal, bid invitations, and other documents describing projects or programs funded in whole or in part with federal award funds.

### II. Activities Conducted Abroad

Recipients must coordinate with appropriate government authorities when performing project activities outside the United States obtain all appropriate licenses, permits, or approvals.

### III. Age Discrimination Act of 1975

Recipients must comply with the requirements of the Age Discrimination Act of 1975, Pub. L. No. 94-135 (codified as amended at 42 U.S.C. § 6101 *et seq.*), which prohibits discrimination on the basis of age in any program or activity receiving federal financial assistance.

### IV. Americans with Disabilities Act of 1990

Recipients must comply with the requirements of Titles I, II, and III of the Americans with Disabilities Act, Pub. L. No. 101-336 (1990) (codified as amended at 42 U.S.C. §§ 12101– 12213), which prohibits recipients from discriminating on the basis of disability in the operation of public entities, public and private transportation systems, places of public accommodation, and certain testing entities.

### V. Best Practices for Collection and Use of Personally Identifiable Information

Recipients who collect personally identifiable information (PII) as part of carrying out the scope of work under a federal award are required to have a publicly available privacy policy that describes standards on the usage and maintenance of the PII they collect. DHS defines PII as any information that permits the identity of an individual to be directly or indirectly inferred, including any information that is linked or linkable to that individual. Recipients may also find the DHS Privacy Impact Assessments: Privacy Guidance and Privacy Template as useful resources respectively.

### VI. Civil Rights Act of 1964 – Title VI

Recipients must comply with the requirements of Title VI of the Civil Rights Act of 1964, Pub. L. No. 88-352 (codified as amended at 42 U.S.C. § 2000d *et seq.*), which provides that no person in the United States will, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. DHS implementing regulations for the Act are found at 6 C.F.R. Part 21. Recipients of an award from the Federal Emergency Management Agency (FEMA)

must also comply with FEMA's implementing regulations at 44 C.F.R. Part 7.

VII. Civil Rights Act of 1968

Recipients must comply with Title VIII of the Civil Rights Act of 1968, Pub. L. No. 90-284 (codified as amended at 42 U.S.C. § 3601 *et seq*.) which prohibits recipients from discriminating in the sale, rental, financing, and advertising of dwellings, or in the provision of services in connection. therewith, on the basis of race, color, national origin, religion, disability, familial status, and sex, as implemented by the U.S. Department of Housing and Urban Development at 24 C.F.R. Part 100. The prohibition on disability discrimination includes the requirement that new multifamily housing with four or more dwelling units— i.e., the public and common use areas and individual apartment units (all units in buildings with elevators and ground-floor units in buildings without elevators)—be designed and constructed with certain accessible features. (See 24 C.F.R. Part 100, Subpart D.)

VIII. Copyright

Recipients must affix the applicable copyright notices of 17 U.S.C. §§ 401 or 402 to any work first produced under federal awards and also include an acknowledgement that the work was produced under a federal award (including the federal award number and federal awarding agency). As detailed in 2 C.F.R. § 200.315, a federal awarding agency reserves a royalty-free, nonexclusive, and irrevocable right to reproduce, publish, or otherwise use the work for federal purposes and to authorize others to do so.

IX. Debarment and Suspension

Recipients must comply with the non-procurement debarment and suspension regulations implementing Executive Orders (E.O.) 12549 and 12689 set forth at 2 C.F.R. Part 180 as implemented by DHS at 2 C.F.R. Part 3000. These regulations prohibit recipients from entering into covered transactions (such as subawards and contracts) with certain parties that are debarred, suspended, or otherwise excluded from or ineligible for participation in federal assistance programs or activities.

X. Drug-Free Workplace Regulations

Recipients must comply with drug-free workplace requirements in Subpart B (or Subpart C, if the recipient is an individual) of 2 C.F.R. Part 3001, which adopts the Government- wide implementation (2 C.F.R. Part 182) of the Drug-Free Workplace Act of 1988 (41 U.S.C. §§ 8101-8106).

XI. Duplicative Costs

Recipients are prohibited from charging any cost to this federal award that will be included as a cost or used to meet cost sharing or matching requirements of any other federal award in either the current or a prior budget period. (See 2 C.F.R. § 200.403(f)). However, recipients may shift costs that are allowable under two or more federal awards where otherwise permitted by federal statutes, regulations, or the federal financial assistance award terms and conditions.

XII. Education Amendments of 1972 (Equal Opportunity in Education Act) – Title IX

Recipients must comply with the requirements of Title IX of the Education Amendments of 1972, Pub. L. No. 92-318 (codified as amended at 20 U.S.C. § 1681 *et seq.*), which provide that no person in the United States will, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal financial assistance. DHS implementing regulations are codified at 6 C.F.R. Part 17. Recipients of an award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 19.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

XIII. Executive Order 14074 – Advancing Effective, Accountable Policing and Criminal Justice Practices to Enhance Public Trust and Public Safety

Recipient State, Tribal, local, or territorial law enforcement agencies must comply with the requirements of section 12(c) of E.O. 14074. Recipient State, Tribal, local, or territorial law enforcement agencies are also encouraged to adopt and enforce policies consistent with E.O. 14074 to support safe and effective policing.

XIV. Energy Policy and Conservation Act

Recipients must comply with the requirements of the Energy Policy and Conservation Act, Pub. L. No. 94-163 (1975) (codified as amended at 42 U.S.C. § 6201 *et seq.*), which contain policies relating to energy efficiency that are defined in the state energy conservation plan issued in compliance with this Act.

XV. False Claims Act and Program Fraud Civil Remedies

Recipients must comply with the requirements of the False Claims Act, 31 U.S.C. §§ 3729- 3733, which prohibit the submission of false or fraudulent claims for payment to the Federal Government. (See 31 U.S.C. §§ 3801-3812, which details the administrative remedies for false claims and statements made.)

XVI. Federal Debt Status

All recipients are required to be non-delinquent in their repayment of any federal debt. Examples of relevant debt include delinquent payroll and other taxes, audit disallowances, and benefit overpayments. (See OMB Circular A-129.)

XVII. Federal Leadership on Reducing Text Messaging while Driving

Recipients are encouraged to adopt and enforce policies that ban text messaging while driving recipient-owned, recipient-rented, or privately owned vehicles when on official government business or when performing any work for or on behalf of the Federal Government. Recipients are also encouraged to conduct the initiatives of the type described in Section 3(a) of E.O. 13513.

XVIII. Fly America Act of 1974

Recipients must comply with Preference for U.S. Flag Air Carriers (a list of certified air carriers can be found at: Certificated Air Carriers List | US Department of Transportation, https://www.transportation.gov/policy/aviation-policy/certificated-air-carriers-list)for international air transportation of people and property to the extent that such service is available, in accordance with the International Air Transportation Fair Competitive Practices Act of 1974, 49 U.S.C. § 40118, and the interpretative guidelines issued by the Comptroller General of the United States in the March 31, 1981, amendment to Comptroller General Decision B-138942.

XIX. Hotel and Motel Fire Safety Act of 1990

Recipients must ensure that all conference, meeting, convention, or training space funded entirely or in part by federal award funds complies with the fire prevention and control guidelines of Section 6 of the Hotel and Motel Fire Safety Act of 1990, 15 U.S.C. § 2225a.

XX. John S. McCain National Defense Authorization Act of Fiscal Year 2019

Recipients, subrecipients, and their contractors and subcontractors are subject to the prohibitions described in section 889 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. No. 115-232 (2018) and 2 C.F.R. §§ 200.216, 200.327, 200.471, and Appendix II to 2 C.F.R. Part 200. The statute – as it applies to DHS recipients, subrecipients, and their contractors and subcontractors – prohibits obligating or expending federal award funds on certain telecommunications

and video surveillance products and contracting with certain entities for national security reasons.

XXI. Limited English Proficiency (Civil Rights Act of 1964, Title VI)

Recipients must comply with Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq*.) prohibition against discrimination on the basis of national origin, which requires that recipients of federal financial assistance take reasonable steps to provide meaningful access to persons with limited English proficiency (LEP) to their programs and services. For additional assistance and information regarding language access obligations, please refer to the DHS Recipient Guidance: https://www.dhs.gov/guidance-published-help- department-supported-organizations-provide-meaningful-access-people-limited and additional resources on http://www.lep.gov.

XXII. Lobbying Prohibitions

Recipients must comply with 31 U.S.C. § 1352 and 6 C.F.R. Part 9, which provide that none of the funds provided under a federal award may be expended by the recipient to pay any person to influence, or attempt to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any federal action related to a federal award or contract, including any extension, continuation, renewal, amendment, or modification. Per 6 C.F.R. Part 9, recipients must file a lobbying certification form as described in Appendix A to 6 C.F.R. Part 9 or available on Grants.gov as the Grants.gov Lobbying Form and file a lobbying disclosure form as described in Appendix B to 6 C.F.R. Part 9 or available on Grants.gov as the Disclosure of Lobbying Activities (SF-LLL).

XXIII. National Environmental Policy Act

Recipients must comply with the requirements of the National Environmental Policy Act of 1969, Pub. L. No. 91-190 (1970) (codified as amended at 42 U.S.C. § 4321 *et seq.*) (NEPA) and the Council on Environmental Quality (CEQ) Regulations for Implementing the Procedural Provisions of NEPA, which require recipients to use all practicable means within their authority, and consistent with other essential considerations of national policy, to create and maintain conditions under which people and nature can exist in productive harmony and fulfill the social, economic, and other needs of present and future generations of Americans.

XXIV. National Security Presidential Memorandum-33 (NSPM-33) and provisions of the CHIPS and Science Act

Recipient research institutions ("covered institutions") must comply with the requirements in NSPM-33 and provisions of Public Law 117-167, Section 10254 (codified at 42 U.S.C. § 18951) certifying that the institution has established and operates a research security program that includes elements relating to (1) cybersecurity; (2) foreign travel security; (3) research security training; and (4) export control training, as appropriate. Covered institutions means recipient research institutions receiving federal Research and Development (R&D) science and engineering support "in excess of $50 million per year."

XXV. Nondiscrimination in Matters Pertaining to Faith-Based Organizations

It is DHS policy to ensure the equal treatment of faith-based organizations in social service programs administered or supported by DHS or its component agencies, enabling those organizations to participate in providing important social services to beneficiaries.

Recipients must comply with the equal treatment policies and requirements contained in 6 C.F.R. Part 19 and other applicable statutes, regulations, and guidance governing the participations of faith- based organizations in individual DHS programs.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

XXVI. Non-Supplanting Requirement

Recipients of federal awards under programs that prohibit supplanting by law must ensure that federal funds supplement but do not supplant non-federal funds that, in the absence of such federal funds, would otherwise have been made available for the same purpose.

XXVII. Notice of Funding Opportunity Requirements

All the instructions, guidance, limitations, scope of work, and other conditions set forth in the Notice of Funding Opportunity (NOFO) for this federal award are incorporated by reference. All recipients must comply with any such requirements set forth in the NOFO. If a condition of the NOFO is inconsistent with these terms and conditions and any such terms of the Award, the condition in the NOFO shall be invalid to the extent of the inconsistency. The remainder of that condition and all other conditions set forth in the NOFO shall remain in effect.

XXVIII. Patents and Intellectual Property Rights

Recipients are subject to the Bayh-Dole Act, 35 U.S.C. § 200 *et seq*. and applicable regulations governing inventions and patents, including the regulations issued by the Department of Commerce at 37 C.F.R. Part 401 (Rights to Inventions Made by Nonprofit Organizations and Small Business Firms under Government Awards, Contracts, and Cooperative Agreements) and the standard patent rights clause set forth at 37 C.F.R. § 401.14.

XXIX. Procurement of Recovered Materials

States, political subdivisions of states, and their contractors must comply with Section 6002 of the Solid Waste Disposal Act, Pub. L. No. 89-272 (1965) (codified as amended by the Resource Conservation and Recovery Act at 42 U.S.C. § 6962) and 2 C.F.R. § 200.323. The requirements of Section 6002 include procuring only items designated in guidelines of the Environmental Protection Agency (EPA) at 40 C.F.R. Part 247 that contain the highest percentage of recovered materials practicable, consistent with maintaining a satisfactory level of competition.

XXX. Rehabilitation Act of 1973

Recipients must comply with the requirements of Section 504 of the Rehabilitation Act of 1973, Pub. L. No. 93-112 (codified as amended at 29 U.S.C. § 794), which provides that no otherwise qualified handicapped individuals in the United States will, solely by reason of the handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

XXXI. Reporting of Matters Related to Recipient Integrity and Performance

If the total value of any currently active grants, cooperative agreements, and procurement contracts from all federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of the federal award, then the recipient must comply with the requirements set forth in the government-wide Award Term and Condition for Recipient Integrity and Performance Matters located at 2 C.F.R. Part 200, Appendix XII, the full text of which is incorporated by reference.

XXXII. Reporting Subawards and Executive Compensation

For federal awards that equal or exceed $30,000, recipients are required to comply with the requirements set forth in the government-wide award term on Reporting Subawards and Executive Compensation set forth at 2 C.F.R. Part 170, Appendix A, the full text of which is incorporated by reference.

XXXIII. Required Use of American Iron, Steel, Manufactured Products, and Construction Materials

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

Recipients of an award of Federal financial assistance from a program for infrastructure are hereby notified that none of the funds provided under this award may be used for a project for infrastructure unless:

(1) all iron and steel used in the project are produced in the United States—this means all manufacturing processes, from the initial melting stage through the application of coatings, occurred in the United States;

(2) all manufactured products used in the project are produced in the United States—this means the manufactured product was manufactured in the United States; and the cost of the components of the manufactured product that are mined, produced, or manufactured in the United States is greater than 55 percent of the total cost of all components of the manufactured product, unless another standard for determining the minimum amount of domestic content of the manufactured product has been established under applicable law or regulation; and

(3) all construction materials are manufactured in the United States—this means that all manufacturing processes for the construction material occurred in the United States.

The Buy America preference only applies to articles, materials, and supplies that are consumed in, incorporated into, or affixed to an infrastructure project. As such, it does not apply to tools, equipment, and supplies, such as temporary scaffolding, brought to the construction site and removed at or before the completion of the infrastructure project. Nor does a Buy America preference apply to equipment and furnishings, such as movable chairs, desks, and portable computer equipment, that are used at or within the finished infrastructure project but are not an integral part of the structure or permanently affixed to the infrastructure project.

*Waivers*

When necessary, recipients may apply for, and the agency may grant, a waiver from these requirements. The agency should notify the recipient for information on the process for requesting a waiver from these requirements.

(a) When the Federal agency has determined that one of the following exceptions applies, the awarding official may waive the application of the domestic content procurement preference in any case in which the agency determines that:

(1) applying the domestic content procurement preference would be inconsistent with the public interest;

(2) the types of iron, steel, manufactured products, or construction materials are not produced in the United States in sufficient and reasonably available quantities or of a satisfactory quality; or

(3) the inclusion of iron, steel, manufactured products, or construction materials produced in the United States will increase the cost of the overall project by more than 25 percent.

A request to waive the application of the domestic content procurement preference must be in writing. The agency will provide instructions on the format, contents, and supporting materials required for any waiver request. Waiver requests are subject to public comment periods of no less than 15 days and must be reviewed by the Made in America Office.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

There may be instances where an award qualifies, in whole or in part, for an existing waiver described at "Buy America" Preference in FEMA Financial Assistance Programs for Infrastructure | FEMA.gov.

*Definitions*

The definitions applicable to this term are set forth at 2 C.F.R. § 184.3, the full text of which is incorporated by reference.

XXXIV. SAFECOM

Recipients receiving federal financial assistance awards made under programs that provide emergency communication equipment and its related activities must comply with the SAFECOM Guidance for Emergency Communication Grants, including provisions on technical standards that ensure and enhance interoperable communications. The SAFECOM Guidance is updated annually and can be found at Funding and Sustainment | CISA.

XXXV. System for Award Management and Universal Identifier Requirements

Recipients are required to comply with the requirements set forth in the government-wide financial assistance award term regarding the System for Award Management and Universal Identifier Requirements located at 2 C.F.R. Part 25, Appendix A, the full text of which is incorporated reference.

XXXVI. Terrorist Financing

Recipients must comply with E.O. 13224 and applicable statutory prohibitions on transactions with, and the provisions of resources and support to, individuals and organizations associated with terrorism. Recipients are legally responsible for ensuring compliance with the E.O. and laws.

XXXVII. Trafficking Victims Protection Act of 2000(TVPA)

Recipients must comply with the requirements of the government-wide financial assistance award term which implements Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, § 106 (codified as amended at 22 U.S.C. § 7104). The award term is located at 2 C.F.R. § 175.105, the full text of which is incorporated by reference.

XXXVIII. USA PATRIOT Act of 2001

Recipients must comply with the requirements of Section 817 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (USA PATRIOT Act), which amends 18 U.S.C. §§ 175–175c.

XXXIX. Use of DHS Seal, Logo and Flags

Recipients must obtain written permission from DHS prior to using the DHS seals, logos, crests, or reproductions of flags, or likenesses of DHS agency officials. This includes use of DHS component (e.g., FEMA, CISA, etc.) seals, logos, crests, or reproductions of flags, or likenesses of component officials.

XL. Whistleblower Protection Act

Recipients must comply with the statutory requirements for whistleblower protections at 10 U.S.C § 470141 U.S.C. § 4712.

# 2020 DHS Standard Terms and Conditions

**The 2020 DHS Standard Terms and Conditions apply to all new federal financial assistance awards funded in FY 2020. These terms and conditions flow down to subrecipients, unless an award term or condition specifically indicates otherwise. The United States has the right to seek judicial enforcement of these obligations.**

## Assurances, Administrative Requirements, Cost Principles, Representations and Certifications

DHS financial assistance recipients must complete either the Office of Management and Budget (OMB) Standard Form 424B Assurances – Non-Construction Programs, or OMB Standard Form 424D Assurances – Construction Programs, as applicable. Certain assurances in these documents may not be applicable to your program, and the DHS financial assistance office (DHS FAO) may require applicants to certify additional assurances. Applicants are required to fill out the assurances applicable to their program as instructed by the awarding agency. Please contact the DHS FAO if you have any questions.

DHS financial assistance recipients are required to follow the applicable provisions of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards located at Title 2, Code of Federal Regulations (C.F.R.) Part 200, and adopted by DHS at 2 C.F.R. Part 3002.

## DHS Specific Acknowledgements and Assurances

All recipients, subrecipients, successors, transferees, and assignees must acknowledge and agree to comply with applicable provisions governing DHS access to records, accounts, documents, information, facilities, and staff.

1. Recipients must cooperate with any compliance reviews or compliance investigations conducted by DHS.

2. Recipients must give DHS access to, and the right to examine and copy, records, accounts, and other documents and sources of information related to the federal financial assistance award and permit access to facilities, personnel, and other individuals and information as may be necessary, as required by DHS regulations and other applicable laws or program guidance.

3. Recipients must submit timely, complete, and accurate reports to the appropriate DHS officials and maintain appropriate backup documentation to support the reports.

4. Recipients must comply with all other special reporting, data collection, and evaluation requirements, as prescribed by law or detailed in program guidance.

5. Recipients of federal financial assistance from DHS must complete the *DHS Civil Rights Evaluation Tool* within thirty (30) days of receipt of the Notice of Award or, for State Administering Agencies, thirty (30) days from receipt of the DHS Civil Rights Evaluation Tool from DHS or its awarding component agency. After the initial submission for the first award under which this term applies, recipients are required to provide this information once every two (2) years if they have an active award, not every time an award is made. Recipients should submit the completed tool, including supporting materials, to CivilRightsEvaluation@hq.dhs.gov. This tool clarifies the civil rights obligations and related reporting requirements contained in the DHS Standard Terms and Conditions. Subrecipients are not required to complete and submit this tool to DHS. The evaluation tool can be found at https://www.dhs.gov/publication/dhs-civil-rights-evaluation-tool.

# 2020 DHS Standard Terms and Conditions

6. The DHS Office for Civil Rights and Civil Liberties will consider, in its discretion, granting an extension if the recipient identifies steps and a timeline for completing the tool. Recipients should request extensions by emailing the request to CivilRightsEvaluation@hq.dhs.gov prior to expiration of the 30-day deadline.

**Standard Terms & Conditions**

**I. Acknowledgement of Federal Funding from DHS**

Recipients must acknowledge their use of federal funding when issuing statements, press releases, requests for proposal, bid invitations, and other documents describing projects or programs funded in whole or in part with federal funds.

**II. Activities Conducted Abroad**

Recipients must ensure that project activities carried on outside the United States are coordinated as necessary with appropriate government authorities and that appropriate licenses, permits, or approvals are obtained.

***III. Age Discrimination Act of 1975***

Recipients must comply with the requirements of the *Age Discrimination Act of 1975*, Public Law Number 94-135 (1975) (codified as amended at Title 42, U.S. Code, § 6101 *et seq.*), which prohibits discrimination on the basis of age in any program or activity receiving federal financial assistance.

***IV. Americans with Disabilities Act of 1990***

Recipients must comply with the requirements of Titles I, II, and III of the *Americans with Disabilities Act*, Pub. L. No. 101-336 (1990) (codified as amended at 42 U.S.C. §§ 12101– 12213), which prohibits recipients from discriminating on the basis of disability in the operation of public entities, public and private transportation systems, places of public accommodation, and certain testing entities.

**V. Best Practices for Collection and Use of Personally Identifiable Information (PII)**

Recipients who collect personally identifiable information (PII) are required to have a publicly available privacy policy that describes standards on the usage and maintenance of the PII they collect. DHS defines PII as any information that permits the identity of an individual to be directly or indirectly inferred, including any information that is linked or linkable to that individual. Recipients may also find the DHS Privacy Impact Assessments: Privacy Guidance and Privacy Template as useful resources respectively.

**VI. *Civil Rights Act of 1964* – Title VI**

Recipients must comply with the requirements of Title VI of the *Civil Rights Act of 1964* (codified as amended at 42 U.S.C. § 2000d *et seq.*), which provides that no person in the United States will, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. DHS implementing regulations for the Act are found at 6 C.F.R. Part 21 and 44 C.F.R. Part 7.

***VII. Civil Rights Act of 1968***

Recipients must comply with Title VIII of the *Civil Rights Act of 1968*, Pub. L. 90-284, as amended through Pub. L. 113-4, which prohibits recipients from discriminating in the sale, rental, financing, and advertising of dwellings, or in the provision of services in connection therewith, on the basis of race, color, national origin, religion, disability, familial status, and sex (see

# 2020 DHS Standard Terms and Conditions

42 U.S.C. § 3601 et seq.), as implemented by the U.S. Department of Housing and Urban Development at 24 C.F.R. Part 100. The prohibition on disability discrimination includes the requirement that new multifamily housing with four or more dwelling units—i.e., the public and common use areas and individual apartment units (all units in buildings with elevators and ground-floor units in buildings without elevators)—be designed and constructed with certain accessible features. (See 24 C.F.R. Part 100, Subpart D.)

**VIII. Copyright**

Recipients must affix the applicable copyright notices of 17 U.S.C. §§ 401 or 402 and an acknowledgement of U.S. Government sponsorship (including the award number) to any work first produced under federal financial assistance awards.

**IX. Debarment and Suspension**

Recipients are subject to the non-procurement debarment and suspension regulations implementing Executive Orders (E.O.) 12549 and 12689, which are at 2 C.F.R. Part 180 as adopted by DHS at 2 C.F.R. Part 3002. These regulations restrict federal financial assistance awards, subawards, and contracts with certain parties that are debarred, suspended, or otherwise excluded from or ineligible for participation in federal assistance programs or activities.

**X. Drug-Free Workplace Regulations**

Recipients must comply with drug-free workplace requirements in Subpart B (or Subpart C, if the recipient is an individual) of 2 C.F.R. Part 3001, which adopts the Government-wide implementation (2 C.F.R. Part 182) of Sec. 5152-5158 of the *Drug-Free Workplace Act of 1988* (41 U.S.C. §§ 8101-8106).

**XI. Duplication of Benefits**

Any cost allocable to a particular federal financial assistance award provided for in 2 C.F.R. Part 200, Subpart E may not be charged to other federal financial assistance awards to overcome fund deficiencies; to avoid restrictions imposed by federal statutes, regulations, or federal financial assistance award terms and conditions; or for other reasons. However, these prohibitions would not preclude recipients from shifting costs that are allowable under two or more awards in accordance with existing federal statutes, regulations, or the federal financial assistance award terms and conditions.

**XII. Education Amendments of 1972 (*Equal Opportunity in Education Act*) – Title IX**

Recipients must comply with the requirements of Title IX of the *Education Amendments of 1972*, Pub. L. 92-318 (1972) (codified as amended at 20 U.S.C. § 1681 *et seq.*), which provide that no person in the United States will, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal financial assistance. DHS implementing regulations are codified at 6 C.F.R. Part 17 and 44 C.F.R. Part 19

***XIII. Energy Policy and Conservation Act***

Recipients must comply with the requirements of the *Energy Policy and Conservation Act*, Pub. L. 94- 163 (1975) (codified as amended at 42 U.S.C. § 6201 *et seq.*), which contain policies relating to energy efficiency that are defined in the state energy conservation plan issued in compliance with this Act.

# 2020 DHS Standard Terms and Conditions

***XIV. False Claims Act and Program Fraud Civil Remedies***

Recipients must comply with the requirements of the *False Claims Act*, 31 U.S.C. §§ 3729- 3733, which prohibit the submission of false or fraudulent claims for payment to the federal government. (See 31 U.S.C. §§ 3801-3812, which details the administrative remedies for false claims and statements made.)

**XV. Federal Debt Status**

All recipients are required to be non-delinquent in their repayment of any federal debt. Examples of relevant debt include delinquent payroll and other taxes, audit disallowances, and benefit overpayments. (See OMB Circular A-129.)

**XVI. Federal Leadership on Reducing Text Messaging while Driving**

Recipients are encouraged to adopt and enforce policies that ban text messaging while driving as described in E.O. 13513, including conducting initiatives described in Section 3(a) of the Order when on official government business or when performing any work for or on behalf of the federal government.

***XVII. Fly America Act of 1974***

Recipients must comply with Preference for U.S. Flag Air Carriers (air carriers holding certificates under 49 U.S.C. § 41102) for international air transportation of people and property to the extent that such service is available, in accordance with the *International Air Transportation Fair Competitive Practices Act of 1974*, 49 U.S.C. § 40118, and the interpretative guidelines issued by the Comptroller General of the United States in the March 31, 1981, amendment to Comptroller General Decision B-138942.

***XVIII. Hotel and Motel Fire Safety Act of 1990***

In accordance with Section 6 of the *Hotel and Motel Fire Safety Act of 1990*, 15 U.S.C. § 2225a, recipients must ensure that all conference, meeting, convention, or training space funded in whole or in part with federal funds complies with the fire prevention and control guidelines of the *Federal Fire Prevention and Control Act of 1974*, (codified as amended at 15 U.S.C. § 2225.)

***XIX.*** **Limited English Proficiency *(Civil Rights Act of 1964, Title VI)***

Recipients must comply with Title VI of the *Civil Rights Act of 1964,* (42 U.S.C. § 2000d et seq.) prohibition against discrimination on the basis of national origin, which requires that recipients of federal financial assistance take reasonable steps to provide meaningful access to persons with limited English proficiency (LEP) to their programs and services. For additional assistance and information regarding language access obligations, please refer to the DHS Recipient Guidance: https://www.dhs.gov/guidance- published-help-department-supported-organizations-provide-meaningful-access-people-limited and additional resources on http://www.lep.gov.

**XX. Lobbying Prohibitions**

Recipients must comply with 31 U.S.C. § 1352, which provides that none of the funds provided under a federal financial assistance award may be expended by the recipient to pay any person to influence, or attempt to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any federal action related to a federal award or contract, including any extension, continuation, renewal, amendment, or modification.

# 2020 DHS Standard Terms and Conditions

***XXI.*** ***National Environmental Policy Act***

Recipients must comply with the requirements of the *National Environmental Policy Act of 1969, Pub. L. 91-190 (1970)* (codified as amended at 42 U.S.C. § 4321 et seq.(NEPA) and the Council on Environmental Quality (CEQ) Regulations for Implementing the Procedural Provisions of NEPA, which require recipients to use all practicable means within their authority, and consistent with other essential considerations of national policy, to create and maintain conditions under which people and nature can exist in productive harmony and fulfill the social, economic, and other needs of present and future generations of Americans.

**XXII.** **Nondiscrimination in Matters Pertaining to Faith-Based Organizations**

It is DHS policy to ensure the equal treatment of faith-based organizations in social service programs administered or supported by DHS or its component agencies, enabling those organizations to participate in providing important social services to beneficiaries. Recipients must comply with the equal treatment policies and requirements contained in 6 C.F.R. Part 19 and other applicable statues, regulations, and guidance governing the participations of faith-based organizations in individual DHS programs.

**XXIII.** **Non-Supplanting Requirement**

Recipients receiving federal financial assistance awards made under programs that prohibit supplanting by law must ensure that federal funds do not replace (supplant) funds that have been budgeted for the same purpose through non-federal sources.

**XXIV.** **Notice of Funding Opportunity Requirements**

All instructions, guidance, limitations, and other conditions set forth in the Notice of Funding Opportunity (NOFO) for this program are incorporated here by reference in the award terms and conditions. All recipients must comply with any such requirements set forth in the program NOFO.

**XXV.** **Patents and Intellectual Property Rights**

Recipients are subject to the *Bayh-Dole Act,* 35 U.S.C. § 200 *et seq*, unless otherwise provided by law. Recipients are subject to the specific requirements governing the development, reporting, and disposition of rights to inventions and patents resulting from federal financial assistance awards located at 37 C.F.R. Part 401 and the standard patent rights clause located at 37 C.F.R. § 401.14.

**XXVI.** **Procurement of Recovered Materials**

States, political subdivisions of states, and their contractors must comply with Section 6002 of the Solid Waste Disposal Act, Pub. L. 89-272 (1965), (codified as amended by the *Resource Conservation and Recovery Act*, 42 U.S.C. § 6962.) The requirements of Section 6002 include procuring only items designated in guidelines of the Environmental Protection Agency (EPA) at 40 C.F.R. Part 247 that contain the highest percentage of recovered materials practicable, consistent with maintaining a satisfactory level of competition.

***XXVII.*** ***Rehabilitation Act of 1973***

Recipients must comply with the requirements of Section 504 of the *Rehabilitation Act of 1973*, Pub. L. 93-112 (1973), (codified as amended at 29 U.S.C. § 794,) which provides that no otherwise qualified handicapped individuals in the United States will, solely by reason of the handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

# 2020 DHS Standard Terms and Conditions

## XXVIII. Reporting of Matters Related to Recipient Integrity and Performance

**1. General Reporting Requirements**
If the total value of any currently active grants, cooperative agreements, and procurement contracts from all federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of this federal award, then the recipients during that period of time must maintain the currency of information reported to the System for Award Management (SAM) that is made available in the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)) about civil, criminal, or administrative proceedings described in paragraph 2 of this award term and condition. This is a statutory requirement under Pub. L. 110-417, § 872, as amended 41 U.S.C. § 2313. As required by Pub. L. 111-212, § 3010, all information posted in the designated integrity and performance system on or after April 15, 2011, except past performance reviews required for federal procurement contracts, will be publicly available.

**2. Proceedings about Which Recipients Must Report**
Recipients must submit the required information about each proceeding that:

a. Is in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the federal government;

b. Reached its final disposition during the most recent five-year period; and

c. One or more of the following:

1) A criminal proceeding that resulted in a conviction, as defined in paragraph 5 of this award term and condition;

2) A civil proceeding that resulted in a finding of fault and liability and payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more;

3) An administrative proceeding, as defined in paragraph 5, that resulted in a finding of fault and liability and the recipient's payment of either a monetary fine or penalty of $5,000 or more or reimbursement, restitution, or damages in excess of $100,000; or

4) Any other criminal, civil, or administrative proceeding if:

a) It could have led to an outcome described in this award term and condition;

b) It had a different disposition arrived at by consent or compromise with an acknowledgment of fault on the recipient's part; and

c) The requirement in this award term and condition to disclose information about the proceeding does not conflict with applicable laws and regulations.

**3. Reporting Procedures**
Recipients must enter the information that SAM requires about each proceeding described in paragraph 2 of this award term and condition in the SAM Entity Management area. Recipients do not need to submit the information a second time under financial assistance awards that the recipient received if the recipient already provided the information through SAM because it was required to do so under federal procurement contracts that the recipient was awarded.

# 2020 DHS Standard Terms and Conditions

**4. Reporting Frequency**
During any period when recipients are subject to the main requirement in paragraph 1 of this award term and condition, recipients must report proceedings information through SAM for the most recent five-year period, either to report new information about any proceeding(s) that recipients have not reported previously or affirm that there is no new information to report. Recipients that have federal contract, grant, and cooperative agreement awards with a cumulative total value greater than $10,000,000 must disclose semiannually any information about the criminal, civil, and administrative proceedings.

**5. Definitions**
For the purpose of this award term and condition:

a. *Administrative proceeding*: means a non-judicial process that is adjudicatory in nature to decide of fault or liability (e.g., Securities and Exchange Commission Administrative proceedings, Civilian Board of Contract Appeals proceedings, and Armed Services Board of Contract Appeals proceedings). This includes proceedings at the federal and state level but only in connection with performance of a federal contract or grant. It does not include audits, site visits, corrective plans, or inspection of deliverables.

b. *Conviction:* means a judgment or conviction of a criminal offense by any court of competent jurisdiction, whether entered upon a verdict or a plea, and includes a conviction entered upon a plea of nolo contendere.

c. *Total value of currently active grants, cooperative agreements, and procurement contracts* includes—

1) Only the federal share of the funding under any federal award with a recipient cost share or match; and

2) The value of all expected funding increments under a federal award and options, even if not yet exercised.

**XXIX. Reporting Subawards and Executive Compensation**

**1. Reporting of first-tier subawards.**

a. *Applicability.* Unless the recipient is exempt as provided in paragraph 4 of this award term, the recipient must report each action that obligates $25,000 or more in federal funds that does not include Recovery funds (as defined in Section 1512(a)(2) of the *American Recovery and Reinvestment Act of 2009*, Pub. L. 111-5) for a subaward to an entity (See definitions in paragraph 5 of this award term).

b. *Where and when to report*.

1) Recipients must report each obligating action described in paragraph 1 of this award term to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS.)

2) For subaward information, recipients report no later than the end of the month following the month in which the obligation was made. For example, if the obligation was made on November 7, 2016, the obligation must be reported by no later than December 31, 2016.

c. *What to report*. The recipient must report the information about each obligating action that the submission instructions posted at http://www.fsrs.gov.

**2. Reporting Total Compensation of Recipient Executives.**

a. *Applicability and what to report.* Recipients must report total compensation for each of the five most highly compensated executives for the preceding completed fiscal year, if—

1) The total federal funding authorized to date under this award is $25,000 or more;

2) In the preceding fiscal year, recipients received—

a) 80 percent or more of recipients' annual gross revenues from federal procurement contracts (and subcontracts) and federal financial assistance subject to the *Federal Funding Accountability and Transparency Act* (Transparency Act), as defined at 2 C.F.R. 170.320 (and subawards); and

b) $25,000,000 or more in annual gross revenues from federal procurement contracts (and subcontracts) and federal financial assistance subject to the Transparency Act, as defined at 2 C.F.R. 170.320 (and subawards); and

c) The public does not have access to information about the compensation of the executives through periodic reports filed under Section 13(a) or 15(d) of the *Securities Exchange Act of 1934* (15 U.S.C. 78m(a), 78o(d)) or Section 6104 of the Internal Revenue Code of 1986. (See the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm. to determine if the public has access to the compensation information.)

b. *Where and when to report.* Recipients must report executive total compensation described in paragraph 2.a. of this award term:

1) As part of the recipient's registration profile at https://www.sam.gov.

2) By the end of the month following the month in which this award is made, and annually thereafter.

**3. Reporting of Total Compensation of Subrecipient Executives.**

a. *Applicability and what to report.* Unless recipients are exempt as provided in paragraph 4. of this award term, for each first-tier subrecipient under this award, recipients shall report the names and total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if—

1) In the subrecipient's preceding fiscal year, the subrecipient received—

a) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 C.F.R. 170.320 (and subawards); and

b) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and federal financial assistance subject to the Transparency Act (and subawards); and

c) The public does not have access to information about the compensation of the executives through periodic reports filed under Section 13(a) or 15(d) of the *Securities Exchange Act of 1934* (15 U.S.C. 78m(a), 78o(d)) or Section 6104 of the Internal Revenue Code of 1986. (See the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm. to determine if the public has access to the compensation information.)

b. *Where and when to report.* Subrecipients must report subrecipient executive total compensation described in paragraph 3.a. of this award term:

1) To the recipient.

2) By the end of the month following the month during which recipients make the subaward. For example, if a subaward is obligated on any date during the month of October of a given year (*i.e.,* between October 1 and 31), subrecipients must report any required compensation information of the subrecipient by November 30 of that year.

**4. Exemptions**
If, in the previous tax year, recipients had gross income, from all sources, under $300,000, then recipients are exempt from the requirements to report:

a. Subawards, and

b. The total compensation of the five most highly compensated executives of any subrecipient.

**5. Definitions** For purposes of this award term:

a. *Entity:* means all of the following, as defined in 2 C.F.R. Part 25:

1) A governmental organization, which is a state, local government, or Indian tribe.

2) A foreign public entity.

3) A domestic or foreign nonprofit organization.

4) A domestic or foreign for-profit organization.

5) A federal agency, but only as a subrecipient under an award or subaward to a non-federal entity.

b. *Executive:* means officers, managing partners, or any other employees in management positions.

c. *Subaward*: means a legal instrument to provide support for the performance of any portion of the substantive project or program for which the recipient received this award and that the recipient awards to an eligible subrecipient.

1) The term does not include recipients' procurement of property and services needed to carry out the project or program.

2) A subaward may be provided through any legal agreement, including an agreement that a recipient or a subrecipient considers a contract.

d. *Subrecipient:* means an entity that:

1) Receives a subaward from the recipient under this award; and

2) Is accountable to the recipient for the use of the federal funds provided by the subaward.

e. *Total compensation:* means the cash and noncash dollar value earned by the executive during the recipient's or subrecipient's preceding fiscal year and includes the following (See 17 C.F.R. § 229.402(c)(2)):

1) *Salary and bonus.*

2) *Awards of stock, stock options, and stock appreciation rights.* Use the dollar amount recognized for financial statement reporting purposes with respect to the fiscal year in accordance with the Statement of Financial Accounting Standards No. 123 (Revised 2004) (FAS 123R), Shared Based Payments.

3) *Earnings for services under non-equity incentive plans.* This does not include group life, health, hospitalization or medical reimbursement plans that do not discriminate in favor of executives and are available generally to all salaried employees.

4) *Change in pension value.* This is the change in present value of defined benefit and actuarial pension plans.

5) *Above-market earnings on deferred compensation which is not tax-qualified.*

6) *Other compensation*, if the aggregate value of all such other compensation (e.g. severance, termination payments, value of life insurance paid on behalf of the employee, perquisites or property) for the executive exceeds $10,000.

**XXX. SAFECOM**

Recipients receiving federal financial assistance awards made under programs that provide emergency communication equipment and its related activities must comply with the SAFECOM Guidance for Emergency Communication Grants, including provisions on technical standards that ensure and enhance interoperable communications.

**XXXI. Terrorist Financing**

Recipients must comply with E.O. 13224 and U.S. laws that prohibit transactions with, and the provisions of resources and support to, individuals and organizations associated with terrorism. Recipients are legally responsible to ensure compliance with the Order and laws.

# 2020 DHS Standard Terms and Conditions

**XXXII.** ***Trafficking Victims Protection Act of 2000*** **(TVPA)**

Trafficking in Persons.

1. **Provisions applicable to a recipient that is a private entity.**

    a. Recipients, the employees, subrecipients under this award, and subrecipients' employees may not—

    1) Engage in severe forms of trafficking in persons during the period the award is in effect.

    2) Procure a commercial sex act during the period that the award is in effect.

    3) Use forced labor in the performance of the award or subawards under the award.

    b. DHS may unilaterally terminate this award, without penalty, if a recipient or a subrecipient that is a private entity —

    1) Is determined to have violated a prohibition in paragraph 1.a of this award term; or

    2) Has an employee who is determined by the agency official authorized to terminate the award to have violated a prohibition in paragraph 1.a of this award term through conduct that is either—

    a) Associated with performance under this award; or

    b) Imputed to recipients or subrecipients using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 C.F.R. Part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 C.F.R. Part 3000.

2. **Provision applicable to recipients other than a private entity.**
DHS may unilaterally terminate this award, without penalty, if a subrecipient that is a private entity—

    a. Is determined to have violated an applicable prohibition in paragraph 1.a of this award term; or

    b. Has an employee who is determined by the agency official authorized to terminate the award to have violated an applicable prohibition in paragraph 1.a of this award term through conduct that is either—

    1) Associated with performance under this award; or

    2) Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 C.F.R. Part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 C.F.R. Part 3000.

**3. Provisions applicable to any recipient.**

a. Recipients must inform DHS immediately of any information received from any source alleging a violation of a prohibition in paragraph 1.a of this award term.

b. It is DHS's right to terminate unilaterally that is described in paragraph 1.b or 2 of this section:

1) Implements TVPA, Section 106(g) as amended by 22 U.S.C. 7104(g)), and

2) Is in addition to all other remedies for noncompliance that are available to us under this award.

c. Recipients must include the requirements of paragraph 1.a of this award term in any subaward made to a private entity.

**4. Definitions.** For the purposes of this award term:

a. *Employee*: means either:

1) An individual employed by a recipient or a subrecipient who is engaged in the performance of the project or program under this award; or

2) Another person engaged in the performance of the project or program under this award and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing or matching requirements

b. *Forced labor:* means labor obtained by any of the following methods: the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

c. *Private entity*: means any entity other than a state, local government, Indian tribe, or foreign public entity, as those terms are defined in 2 C.F.R. § 175.25. It includes:

1) A nonprofit organization, including any nonprofit institution of higher education, hospital, or tribal organization other than one included in the definition of Indian tribe at 2 C.F.R. § 175.25(b).

2) A for-profit organization.

d. *Severe forms of trafficking in persons*, *commercial sex act*, and *coercion* are defined in TVPA, Section 103, as amended in 22 U.S.C. § 7102.

## XXXIII. Universal Identifier and System of Award Management

**1. Requirement for System for Award Management**

Unless the recipient is exempted from this requirement under 2 C.F.R. § 25.110, the recipient must maintain the currency of their information in the SAM until the recipient submits the final financial report required under this award or receive the final payment, whichever is later. This requires that the recipient review and update the information at least annually after the initial registration, and more frequently if required by changes in the recipient's information or

another award term.

**2. Requirement for unique entity identifier**

If recipients are authorized to make subawards under this award, they:

a. Must notify potential subrecipients that no entity (see definition in paragraph 3 of this award term) may receive a subaward from the recipient unless the entity has provided its unique entity identifier to the recipient.

b. May not make a subaward to an entity unless the entity has provided its unique entity identifier to the recipient.

**3. Definitions**

For purposes of this award term:

a. *System for Award Management (SAM):* means the federal repository into which an entity must provide information required for the conduct of business as a recipient. Additional information about registration procedures may be found on SAM.gov.

b. *Unique Entity Identifier (UEI):* means the identifier required for SAM registration to uniquely identify business entities.

c. *Entity:* means all of the following, as defined at 2 C.F.R. Part 25, Subpart C:

1) A governmental organization, which is a state, local government, or Indian Tribe;

2) A foreign public entity;

3) A domestic or foreign nonprofit organization;

4) A domestic or foreign for-profit organization; and

5) A federal agency, but only as a subrecipient under an award or subaward to a non-federal entity.

d. *Subaward:* means a legal instrument to provide support for the performance of any portion of the substantive project or program for which a recipient received this award and that the recipient awards to an eligible subrecipient.

1) The term does not include the recipient's procurement of property and services needed to carry out the project or program. (See 2 C.F.R. § 200.330.)

2) A subaward may be provided through any legal agreement, including an agreement that a recipient considers a contract.

e. *Subrecipient* means an entity that:

1) Receives a subaward from the recipient under this award; and

2) Is accountable to the recipient for the use of the federal funds provided by the subaward.

# 2020 DHS Standard Terms and Conditions

***XXXIV. USA PATRIOT Act of 2001***

Recipients must comply with requirements of Section 817 of the *Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001* (USA PATRIOT Act), which amends 18 U.S.C. §§ 175–175c.

**XXXV. Use of DHS Seal, Logo and Flags**

Recipients must obtain permission from their DHS FAO prior to using the DHS seal(s), logos, crests or reproductions of flags or likenesses of DHS agency officials, including use of the United States Coast Guard seal, logo, crests or reproductions of flags or likenesses of Coast Guard officials.

***XXXVI. Whistleblower Protection Act***

Recipients must comply with the statutory requirements for whistleblower protections (if applicable) at 10 U.S.C § 2409, 41 U.S.C. § 4712, and 10 U.S.C. § 2324, 41 U.S.C. §§ 4304 and 4310.

*Administration of Donald J. Trump, 2025*

**Executive Order 14151—Ending Radical and Wasteful Government DEI Programs and Preferencing**
*January 20, 2025*

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

*Section 1*. *Purpose and Policy*. The Biden Administration forced illegal and immoral discrimination programs, going by the name "diversity, equity, and inclusion" (DEI), into virtually all aspects of the Federal Government, in areas ranging from airline safety to the military. This was a concerted effort stemming from President Biden's first day in office, when he issued Executive Order 13985, "Advancing Racial Equity and Support for Underserved Communities Through the Federal Government."

Pursuant to Executive Order 13985 and follow-on orders, nearly every Federal agency and entity submitted "Equity Action Plans" to detail the ways that they have furthered DEIs infiltration of the Federal Government. The public release of these plans demonstrated immense public waste and shameful discrimination. That ends today. Americans deserve a government committed to serving every person with equal dignity and respect, and to expending precious taxpayer resources only on making America great.

*Sec. 2*. *Implementation*. (a) The Director of the Office of Management and Budget (OMB), assisted by the Attorney General and the Director of the Office of Personnel Management (OPM), shall coordinate the termination of all discriminatory programs, including illegal DEI and "diversity, equity, inclusion, and accessibility" (DEIA) mandates, policies, programs, preferences, and activities in the Federal Government, under whatever name they appear. To carry out this directive, the Director of OPM, with the assistance of the Attorney General as requested, shall review and revise, as appropriate, all existing Federal employment practices, union contracts, and training policies or programs to comply with this order. Federal employment practices, including Federal employee performance reviews, shall reward individual initiative, skills, performance, and hard work and shall not under any circumstances consider DEI or DEIA factors, goals, policies, mandates, or requirements.

(b) Each agency, department, or commission head, in consultation with the Attorney General, the Director of OMB, and the Director of OPM, as appropriate, shall take the following actions within sixty days of this order:

(i) terminate, to the maximum extent allowed by law, all DEI, DEIA, and "environmental justice" offices and positions (including but not limited to "Chief Diversity Officer" positions); all "equity action plans," "equity" actions, initiatives, or programs, "equity-related" grants or contracts; and all DEI or DEIA performance requirements for employees, contractors, or grantees.

(ii) provide the Director of the OMB with a list of all:

(A) agency or department DEI, DEIA, or "environmental justice" positions, committees, programs, services, activities, budgets, and expenditures in existence on November 4, 2024, and an assessment of whether these positions, committees, programs, services, activities, budgets, and expenditures have been misleadingly relabeled in an attempt to preserve their pre–November 4, 2024 function;

(B) Federal contractors who have provided DEI training or DEI training materials to agency or department employees; and

(C) Federal grantees who received Federal funding to provide or advance DEI, DEIA, or "environmental justice" programs, services, or activities since January 20, 2021.

(iii) direct the deputy agency or department head to:

(A) assess the operational impact (e.g., the number of new DEI hires) and cost of the prior administration's DEI, DEIA, and "environmental justice" programs and policies; and

(B) recommend actions, such as Congressional notifications under 28 U.S.C. 530D, to align agency or department programs, activities, policies, regulations, guidance, employment practices, enforcement activities, contracts (including set-asides), grants, consent orders, and litigating positions with the policy of equal dignity and respect identified in section 1 of this order. The agency or department head and the Director of OMB shall jointly ensure that the deputy agency or department head has the authority and resources needed to carry out this directive.

(c) To inform and advise the President, so that he may formulate appropriate and effective civil-rights policies for the Executive Branch, the Assistant to the President for Domestic Policy shall convene a monthly meeting attended by the Director of OMB, the Director of OPM, and each deputy agency or department head to:

(i) hear reports on the prevalence and the economic and social costs of DEI, DEIA, and "environmental justice" in agency or department programs, activities, policies, regulations, guidance, employment practices, enforcement activities, contracts (including set-asides), grants, consent orders, and litigating positions;

(ii) discuss any barriers to measures to comply with this order; and

(iii) monitor and track agency and department progress and identify potential areas for additional Presidential or legislative action to advance the policy of equal dignity and respect.

*Sec. 3. Severability*. If any provision of this order, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this order and the application of its provisions to any other persons or circumstances shall not be affected.

*Sec. 4. General Provisions*. (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

DONALD J. TRUMP

The White House,
January 20, 2025.

[Filed with the Office of the Federal Register, 8:45 a.m., January 28, 2025]

NOTE: This Executive order was published in the *Federal Register* on January 29.

*Categories:* Executive Orders : Government diversity, equity, and inclusion (DEI) programs and preferencing, efforts to restrict.

*Names:* Biden, Joseph R., Jr.

*Subjects:* Attorney General; Diversity, equity, and inclusion programs, restriction efforts; Domestic Policy Council; Office of Management and Budget; Office of Personnel Management.

*DCPD Number:* DCPD202500118.

**Federal Register** / Vol. 90, No. 19 / Thursday, January 30, 2025 / Presidential Documents **8615**

# Presidential Documents

**Executive Order 14168 of January 20, 2025**

## Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government

By the authority vested in me as President by the Constitution and the laws of the United States of America, including section 7301 of title 5, United States Code, it is hereby ordered:

**Section 1**. *Purpose.* Across the country, ideologues who deny the biological reality of sex have increasingly used legal and other socially coercive means to permit men to self-identify as women and gain access to intimate single-sex spaces and activities designed for women, from women's domestic abuse shelters to women's workplace showers. This is wrong. Efforts to eradicate the biological reality of sex fundamentally attack women by depriving them of their dignity, safety, and well-being. The erasure of sex in language and policy has a corrosive impact not just on women but on the validity of the entire American system. Basing Federal policy on truth is critical to scientific inquiry, public safety, morale, and trust in government itself.

This unhealthy road is paved by an ongoing and purposeful attack against the ordinary and longstanding use and understanding of biological and scientific terms, replacing the immutable biological reality of sex with an internal, fluid, and subjective sense of self unmoored from biological facts. Invalidating the true and biological category of ''woman'' improperly transforms laws and policies designed to protect sex-based opportunities into laws and policies that undermine them, replacing longstanding, cherished legal rights and values with an identity-based, inchoate social concept.

Accordingly, my Administration will defend women's rights and protect freedom of conscience by using clear and accurate language and policies that recognize women are biologically female, and men are biologically male.

**Sec. 2**. *Policy and Definitions.* It is the policy of the United States to recognize two sexes, male and female. These sexes are not changeable and are grounded in fundamental and incontrovertible reality. Under my direction, the Executive Branch will enforce all sex-protective laws to promote this reality, and the following definitions shall govern all Executive interpretation of and application of Federal law and administration policy:

(a) ''Sex'' shall refer to an individual's immutable biological classification as either male or female. ''Sex'' is not a synonym for and does not include the concept of ''gender identity.''

(b) ''Women'' or ''woman'' and ''girls'' or ''girl'' shall mean adult and juvenile human females, respectively.

(c) ''Men'' or ''man'' and ''boys'' or ''boy'' shall mean adult and juvenile human males, respectively.

(d) ''Female'' means a person belonging, at conception, to the sex that produces the large reproductive cell.

(e) ''Male'' means a person belonging, at conception, to the sex that produces the small reproductive cell.

(f) ''Gender ideology'' replaces the biological category of sex with an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as and thus become women and vice versa, and requiring all institutions of society to regard this false claim as true.

Gender ideology includes the idea that there is a vast spectrum of genders that are disconnected from one's sex. Gender ideology is internally inconsistent, in that it diminishes sex as an identifiable or useful category but nevertheless maintains that it is possible for a person to be born in the wrong sexed body.

(g) ''Gender identity'' reflects a fully internal and subjective sense of self, disconnected from biological reality and sex and existing on an infinite continuum, that does not provide a meaningful basis for identification and cannot be recognized as a replacement for sex.

**Sec. 3**. *Recognizing Women Are Biologically Distinct From Men.* (a) Within 30 days of the date of this order, the Secretary of Health and Human Services shall provide to the U.S. Government, external partners, and the public clear guidance expanding on the sex-based definitions set forth in this order.

(b) Each agency and all Federal employees shall enforce laws governing sex-based rights, protections, opportunities, and accommodations to protect men and women as biologically distinct sexes. Each agency should therefore give the terms ''sex'', ''male'', ''female'', ''men'', ''women'', ''boys'' and ''girls'' the meanings set forth in section 2 of this order when interpreting or applying statutes, regulations, or guidance and in all other official agency business, documents, and communications.

(c) When administering or enforcing sex-based distinctions, every agency and all Federal employees acting in an official capacity on behalf of their agency shall use the term ''sex'' and not ''gender'' in all applicable Federal policies and documents.

(d) The Secretaries of State and Homeland Security, and the Director of the Office of Personnel Management, shall implement changes to require that government-issued identification documents, including passports, visas, and Global Entry cards, accurately reflect the holder's sex, as defined under section 2 of this order; and the Director of the Office of Personnel Management shall ensure that applicable personnel records accurately report Federal employees' sex, as defined by section 2 of this order.

(e) Agencies shall remove all statements, policies, regulations, forms, communications, or other internal and external messages that promote or otherwise inculcate gender ideology, and shall cease issuing such statements, policies, regulations, forms, communications or other messages. Agency forms that require an individual's sex shall list male or female, and shall not request gender identity. Agencies shall take all necessary steps, as permitted by law, to end the Federal funding of gender ideology.

(f) The prior Administration argued that the Supreme Court's decision in *Bostock* v. *Clayton County* (2020), which addressed Title VII of the Civil Rights Act of 1964, requires gender identity-based access to single-sex spaces under, for example, Title IX of the Educational Amendments Act. This position is legally untenable and has harmed women. The Attorney General shall therefore immediately issue guidance to agencies to correct the misapplication of the Supreme Court's decision in *Bostock* v. *Clayton County* (2020) to sex-based distinctions in agency activities. In addition, the Attorney General shall issue guidance and assist agencies in protecting sex-based distinctions, which are explicitly permitted under Constitutional and statutory precedent.

(g) Federal funds shall not be used to promote gender ideology. Each agency shall assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology.

**Sec. 4**. *Privacy in Intimate Spaces.* (a) The Attorney General and Secretary of Homeland Security shall ensure that males are not detained in women's prisons or housed in women's detention centers, including through amendment, as necessary, of Part 115.41 of title 28, Code of Federal Regulations and interpretation guidance regarding the Americans with Disabilities Act.

(b) The Secretary of Housing and Urban Development shall prepare and submit for notice and comment rulemaking a policy to rescind the final rule entitled ''Equal Access in Accordance with an Individual's Gender Identity in Community Planning and Development Programs'' of September 21, 2016, 81 FR 64763, and shall submit for public comment a policy protecting women seeking single-sex rape shelters.

(c) The Attorney General shall ensure that the Bureau of Prisons revises its policies concerning medical care to be consistent with this order, and shall ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex.

(d) Agencies shall effectuate this policy by taking appropriate action to ensure that intimate spaces designated for women, girls, or females (or for men, boys, or males) are designated by sex and not identity.

**Sec. 5**. *Protecting Rights.* The Attorney General shall issue guidance to ensure the freedom to express the binary nature of sex and the right to single-sex spaces in workplaces and federally funded entities covered by the Civil Rights Act of 1964. In accordance with that guidance, the Attorney General, the Secretary of Labor, the General Counsel and Chair of the Equal Employment Opportunity Commission, and each other agency head with enforcement responsibilities under the Civil Rights Act shall prioritize investigations and litigation to enforce the rights and freedoms identified.

**Sec. 6**. *Bill Text.* Within 30 days of the date of this order, the Assistant to the President for Legislative Affairs shall present to the President proposed bill text to codify the definitions in this order.

**Sec. 7**. *Agency Implementation and Reporting.* (a) Within 120 days of the date of this order, each agency head shall submit an update on implementation of this order to the President, through the Director of the Office of Management and Budget. That update shall address:

(i) changes to agency documents, including regulations, guidance, forms, and communications, made to comply with this order; and

(ii) agency-imposed requirements on federally funded entities, including contractors, to achieve the policy of this order.

(b) The requirements of this order supersede conflicting provisions in any previous Executive Orders or Presidential Memoranda, including but not limited to Executive Orders 13988 of January 20, 2021, 14004 of January 25, 2021, 14020 and 14021 of March 8, 2021, and 14075 of June 15, 2022. These Executive Orders are hereby rescinded, and the White House Gender Policy Council established by Executive Order 14020 is dissolved.

(c) Each agency head shall promptly rescind all guidance documents inconsistent with the requirements of this order or the Attorney General's guidance issued pursuant to this order, or rescind such parts of such documents that are inconsistent in such manner. Such documents include, but are not limited to:

(i) ''The White House Toolkit on Transgender Equality'';

(ii) the Department of Education's guidance documents including:

(A) ''2024 Title IX Regulations: Pointers for Implementation'' (July 2024);

(B) ''U.S. Department of Education Toolkit: Creating Inclusive and Nondiscriminatory School Environments for LGBTQI+ Students'';

(C) ''U.S. Department of Education Supporting LGBTQI+ Youth and Families in School'' (June 21, 2023);

(D) ''Departamento de Educación de EE.UU. Apoyar a los jóvenes y familias LGBTQI+ en la escuela'' (June 21, 2023);

(E) ''Supporting Intersex Students: A Resource for Students, Families, and Educators'' (October 2021);

(F) ''Supporting Transgender Youth in School'' (June 2021);

(G) ''Letter to Educators on Title IX's 49th Anniversary'' (June 23, 2021);

(H) ''Confronting Anti-LGBTQI+ Harassment in Schools: A Resource for Students and Families'' (June 2021);

(I) ''Enforcement of Title IX of the Education Amendments of 1972 With Respect to Discrimination Based on Sexual Orientation and Gender Identity in Light of Bostock v. Clayton County'' (June 22, 2021);

(J) ''Education in a Pandemic: The Disparate Impacts of COVID–19 on America's Students'' (June 9, 2021); and

(K) ''Back-to-School Message for Transgender Students from the U.S. Depts of Justice, Education, and HHS'' (Aug. 17, 2021);

(iii) the Attorney General's Memorandum of March 26, 2021 entitled ''Application of *Bostock* v. *Clayton County* to Title IX of the Education Amendments of 1972''; and

(iv) the Equal Employment Opportunity Commission's ''Enforcement Guidance on Harassment in the Workplace'' (April 29, 2024).

**Sec. 8**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

(d) If any provision of this order, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this order and the application of its provisions to any other persons or circumstances shall not be affected thereby.



THE WHITE HOUSE,
*January 20, 2025.*

[FR Doc. 2025–02090
Filed 1–29–25; 11:15 am]
Billing code 3395–F4–P

Case: 1:25-cv-12765 Document #: 130-3 Filed: 07/21/26 Page 53 of 98 PageID #:2754



# Presidential Documents

**Executive Order 14173 of January 21, 2025**

## Ending Illegal Discrimination and Restoring Merit-Based Opportunity

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

**Section 1**. *Purpose.* Longstanding Federal civil-rights laws protect individual Americans from discrimination based on race, color, religion, sex, or national origin. These civil-rights protections serve as a bedrock supporting equality of opportunity for all Americans. As President, I have a solemn duty to ensure that these laws are enforced for the benefit of all Americans.

Yet today, roughly 60 years after the passage of the Civil Rights Act of 1964, critical and influential institutions of American society, including the Federal Government, major corporations, financial institutions, the medical industry, large commercial airlines, law enforcement agencies, and institutions of higher education have adopted and actively use dangerous, demeaning, and immoral race- and sex-based preferences under the guise of so-called ''diversity, equity, and inclusion'' (DEI) or ''diversity, equity, inclusion, and accessibility'' (DEIA) that can violate the civil-rights laws of this Nation.

Illegal DEI and DEIA policies not only violate the text and spirit of our longstanding Federal civil-rights laws, they also undermine our national unity, as they deny, discredit, and undermine the traditional American values of hard work, excellence, and individual achievement in favor of an unlawful, corrosive, and pernicious identity-based spoils system. Hard-working Americans who deserve a shot at the American Dream should not be stigmatized, demeaned, or shut out of opportunities because of their race or sex.

These illegal DEI and DEIA policies also threaten the safety of American men, women, and children across the Nation by diminishing the importance of individual merit, aptitude, hard work, and determination when selecting people for jobs and services in key sectors of American society, including all levels of government, and the medical, aviation, and law-enforcement communities. Yet in case after tragic case, the American people have witnessed first-hand the disastrous consequences of illegal, pernicious discrimination that has prioritized how people were born instead of what they were capable of doing.

The Federal Government is charged with enforcing our civil-rights laws. The purpose of this order is to ensure that it does so by ending illegal preferences and discrimination.

**Sec. 2**. *Policy.* It is the policy of the United States to protect the civil rights of all Americans and to promote individual initiative, excellence, and hard work. I therefore order all executive departments and agencies (agencies) to terminate all discriminatory and illegal preferences, mandates, policies, programs, activities, guidance, regulations, enforcement actions, consent orders, and requirements. I further order all agencies to enforce our longstanding civil-rights laws and to combat illegal private-sector DEI preferences, mandates, policies, programs, and activities.

**Sec. 3**. *Terminating Illegal Discrimination in the Federal Government.* (a) The following executive actions are hereby revoked:

(i) Executive Order 12898 of February 11, 1994 (Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations);

(ii) Executive Order 13583 of August 18, 2011 (Establishing a Coordinated Government-wide Initiative to Promote Diversity and Inclusion in the Federal Workforce);

(iii) Executive Order 13672 of July 21, 2014 (Further Amendments to Executive Order 11478, Equal Employment Opportunity in the Federal Government, and Executive Order 11246, Equal Employment Opportunity); and

(iv) The Presidential Memorandum of October 5, 2016 (Promoting Diversity and Inclusion in the National Security Workforce).

(b) The Federal contracting process shall be streamlined to enhance speed and efficiency, reduce costs, and require Federal contractors and subcontractors to comply with our civil-rights laws. Accordingly:

(i) Executive Order 11246 of September 24, 1965 (Equal Employment Opportunity), is hereby revoked. For 90 days from the date of this order, Federal contractors may continue to comply with the regulatory scheme in effect on January 20, 2025.

(ii) The Office of Federal Contract Compliance Programs within the Department of Labor shall immediately cease:

(A) Promoting ''diversity'';

(B) Holding Federal contractors and subcontractors responsible for taking ''affirmative action''; and

(C) Allowing or encouraging Federal contractors and subcontractors to engage in workforce balancing based on race, color, sex, sexual preference, religion, or national origin.

(iii) In accordance with Executive Order 13279 of December 12, 2002 (Equal Protection of the Laws for Faith-Based and Community Organizations), the employment, procurement, and contracting practices of Federal contractors and subcontractors shall not consider race, color, sex, sexual preference, religion, or national origin in ways that violate the Nation's civil rights laws.

(iv) The head of each agency shall include in every contract or grant award:

(A) A term requiring the contractual counterparty or grant recipient to agree that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code; and

(B) A term requiring such counterparty or recipient to certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws.

(c) The Director of the Office of Management and Budget (OMB), with the assistance of the Attorney General as requested, shall:

(i) Review and revise, as appropriate, all Government-wide processes, directives, and guidance;

(ii) Excise references to DEI and DEIA principles, under whatever name they may appear, from Federal acquisition, contracting, grants, and financial assistance procedures to streamline those procedures, improve speed and efficiency, lower costs, and comply with civil-rights laws; and

(iii) Terminate all ''diversity,'' ''equity,'' ''equitable decision-making,'' ''equitable deployment of financial and technical assistance,'' ''advancing equity,'' and like mandates, requirements, programs, or activities, as appropriate.

**Sec. 4**. *Encouraging the Private Sector to End Illegal DEI Discrimination and Preferences.* (a) The heads of all agencies, with the assistance of the

Attorney General, shall take all appropriate action with respect to the operations of their agencies to advance in the private sector the policy of individual initiative, excellence, and hard work identified in section 2 of this order.

(b) To further inform and advise me so that my Administration may formulate appropriate and effective civil-rights policy, the Attorney General, within 120 days of this order, in consultation with the heads of relevant agencies and in coordination with the Director of OMB, shall submit a report to the Assistant to the President for Domestic Policy containing recommendations for enforcing Federal civil-rights laws and taking other appropriate measures to encourage the private sector to end illegal discrimination and preferences, including DEI. The report shall contain a proposed strategic enforcement plan identifying:

(i) Key sectors of concern within each agency's jurisdiction;

(ii) The most egregious and discriminatory DEI practitioners in each sector of concern;

(iii) A plan of specific steps or measures to deter DEI programs or principles (whether specifically denominated ''DEI'' or otherwise) that constitute illegal discrimination or preferences. As a part of this plan, each agency shall identify up to nine potential civil compliance investigations of publicly traded corporations, large non-profit corporations or associations, foundations with assets of 500 million dollars or more, State and local bar and medical associations, and institutions of higher education with endowments over 1 billion dollars;

(iv) Other strategies to encourage the private sector to end illegal DEI discrimination and preferences and comply with all Federal civil-rights laws;

(v) Litigation that would be potentially appropriate for Federal lawsuits, intervention, or statements of interest; and

(vi) Potential regulatory action and sub-regulatory guidance.

**Sec. 5**. *Other Actions.* Within 120 days of this order, the Attorney General and the Secretary of Education shall jointly issue guidance to all State and local educational agencies that receive Federal funds, as well as all institutions of higher education that receive Federal grants or participate in the Federal student loan assistance program under Title IV of the Higher Education Act, 20 U.S.C. 1070 *et seq.,* regarding the measures and practices required to comply with *Students for Fair Admissions, Inc.* v. *President and Fellows of Harvard College,* 600 U.S. 181 (2023).

**Sec. 6**. *Severability.* If any provision of this order, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this order and the application of its provisions to any other persons or circumstances shall not be affected thereby.

**Sec. 7**. *Scope.* (a) This order does not apply to lawful Federal or private-sector employment and contracting preferences for veterans of the U.S. armed forces or persons protected by the Randolph-Sheppard Act, 20 U.S.C. 107 *et seq.*

(b) This order does not prevent State or local governments, Federal contractors, or Federally-funded State and local educational agencies or institutions of higher education from engaging in First Amendment-protected speech.

(c) This order does not prohibit persons teaching at a Federally funded institution of higher education as part of a larger course of academic instruction from advocating for, endorsing, or promoting the unlawful employment or contracting practices prohibited by this order.

**Sec. 8**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department, agency, or the head thereof; or

Case: 1:25-cv-12765 Document #: 130-3 Filed: 07/21/26 Page 56 of 98 PageID #:2757



(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to and does not create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.



THE WHITE HOUSE,
*January 21, 2025.*

[FR Doc. 2025–02097
Filed 1–30–25; 8:45 am]
Billing code 3395–F4–P

# Presidential Documents

**Executive Order 14190 of January 29, 2025**

## Ending Radical Indoctrination in K–12 Schooling

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

**Section 1**. *Purpose and Policy.* Parents trust America's schools to provide their children with a rigorous education and to instill a patriotic admiration for our incredible Nation and the values for which we stand.

In recent years, however, parents have witnessed schools indoctrinate their children in radical, anti-American ideologies while deliberately blocking parental oversight. Such an environment operates as an echo chamber, in which students are forced to accept these ideologies without question or critical examination. In many cases, innocent children are compelled to adopt identities as either victims or oppressors solely based on their skin color and other immutable characteristics. In other instances, young men and women are made to question whether they were born in the wrong body and whether to view their parents and their reality as enemies to be blamed. These practices not only erode critical thinking but also sow division, confusion, and distrust, which undermine the very foundations of personal identity and family unity.

Imprinting anti-American, subversive, harmful, and false ideologies on our Nation's children not only violates longstanding anti-discrimination civil rights law in many cases, but usurps basic parental authority. For example, steering students toward surgical and chemical mutilation without parental consent or involvement or allowing males access to private spaces designated for females may contravene Federal laws that protect parental rights, including the Family Educational Rights and Privacy Act (FERPA) and the Protection of Pupil Rights Amendment (PPRA), and sex-based equality and opportunity, including Title IX of the Education Amendments of 1972 (Title IX). Similarly, demanding acquiescence to ''White Privilege'' or ''unconscious bias,'' actually promotes racial discrimination and undermines national unity.

My Administration will enforce the law to ensure that recipients of Federal funds providing K–12 education comply with all applicable laws prohibiting discrimination in various contexts and protecting parental rights, including Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. 2000d *et seq.;* Title IX, 20 U.S.C. 1681 *et seq.;* FERPA, 20 U.S.C. 1232g; and the PPRA, 20 U.S.C. 1232h.

**Sec. 2**. *Definitions.* As used herein:

(a) The definitions in the Executive Order ''Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government'' (January 20, 2025) shall apply to this order.

(b) ''Discriminatory equity ideology'' means an ideology that treats individuals as members of preferred or disfavored groups, rather than as individuals, and minimizes agency, merit, and capability in favor of immoral generalizations, including that:

(i) Members of one race, color, sex, or national origin are morally or inherently superior to members of another race, color, sex, or national origin;

(ii) An individual, by virtue of the individual's race, color, sex, or national origin, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

(iii) An individual's moral character or status as privileged, oppressing, or oppressed is primarily determined by the individual's race, color, sex, or national origin;

(iv) Members of one race, color, sex, or national origin cannot and should not attempt to treat others without respect to their race, color, sex, or national origin;

(v) An individual, by virtue of the individual's race, color, sex, or national origin, bears responsibility for, should feel guilt, anguish, or other forms of psychological distress because of, should be discriminated against, blamed, or stereotyped for, or should receive adverse treatment because of actions committed in the past by other members of the same race, color, sex, or national origin, in which the individual played no part;

(vi) An individual, by virtue of the individual's race, color, sex, or national origin, should be discriminated against or receive adverse treatment to achieve diversity, equity, or inclusion;

(vii) Virtues such as merit, excellence, hard work, fairness, neutrality, objectivity, and racial colorblindness are racist or sexist or were created by members of a particular race, color, sex, or national origin to oppress members of another race, color, sex, or national origin; or

(viii) the United States is fundamentally racist, sexist, or otherwise discriminatory.

(c) ''Educational service agency'' (ESA) has the meaning given in 20 U.S.C. 1401(5), and the terms ''elementary school,'' ''local educational agency'' (LEA), ''secondary school,'' and ''state educational agency'' (SEA) have the meanings given in 34 CFR 77.1(c).

(d) ''Patriotic education'' means a presentation of the history of America grounded in:

(i) an accurate, honest, unifying, inspiring, and ennobling characterization of America's founding and foundational principles;

(ii) a clear examination of how the United States has admirably grown closer to its noble principles throughout its history;

(iii) the concept that commitment to America's aspirations is beneficial and justified; and

(iv) the concept that celebration of America's greatness and history is proper.

(e) ''Social transition'' means the process of adopting a ''gender identity'' or ''gender marker'' that differs from a person's sex. This process can include psychological or psychiatric counseling or treatment by a school counselor or other provider; modifying a person's name (e.g., ''Jane'' to ''James'') or pronouns (e.g., ''him'' to ''her''); calling a child ''nonbinary''; use of intimate facilities and accommodations such as bathrooms or locker rooms specifically designated for persons of the opposite sex; and participating in school athletic competitions or other extracurricular activities specifically designated for persons of the opposite sex. ''Social transition'' does not include chemical or surgical mutilation.

**Sec. 3**. *Ending Indoctrination Strategy.* (a) Within 90 days of the date of this order, to advise the President in formulating future policy, the Secretary of Education, the Secretary of Defense, and the Secretary of Health and Human Services, in consultation with the Attorney General, shall provide an Ending Indoctrination Strategy to the President, through the Assistant to the President for Domestic Policy, containing recommendations and a plan for:

(i) eliminating Federal funding or support for illegal and discriminatory treatment and indoctrination in K–12 schools, including based on gender ideology and discriminatory equity ideology; and

(ii) protecting parental rights, pursuant to FERPA, 20 U.S.C. 1232g, and the PPRA, 20 U.S.C. 1232h, with respect to any K–12 policies or conduct implicated by the purpose and policy of this order.

(b) The Ending Indoctrination Strategy submitted under subsection (a) of this section shall contain a summary and analysis of the following:

(i) All Federal funding sources and streams, including grants or contracts, that directly or indirectly support or subsidize the instruction, advancement, or promotion of gender ideology or discriminatory equity ideology:

(A) in K–12 curriculum, instruction, programs, or activities; or

(B) in K–12 teacher education, certification, licensing, employment, or training;

(ii) Each agency's process to prevent or rescind Federal funds, to the maximum extent consistent with applicable law, from being used by an ESA, SEA, LEA, elementary school, or secondary school to directly or indirectly support or subsidize the instruction, advancement, or promotion of gender ideology or discriminatory equity ideology in:

(A) K–12 curriculum, instruction, programs, or activities; or

(B) K–12 teacher certification, licensing, employment, or training;

(iii) Each agency's process to prevent or rescind Federal funds, to the maximum extent consistent with applicable law, from being used by an ESA, SEA, LEA, elementary school, or secondary school to directly or indirectly support or subsidize the social transition of a minor student, including through school staff or teachers or through deliberately concealing the minor's social transition from the minor's parents.

(iv) Each agency's process to prevent or rescind Federal funds, to the maximum extent consistent with applicable law, from being used by an ESA, SEA, LEA, elementary school, or secondary school to directly or indirectly support or subsidize:

(A) interference with a parent's Federal statutory right to information regarding school curriculum, records, physical examinations, surveys, and other matters under the PPRA or FERPA; or

(B) a violation of Title VI or Title IX; and

(v) A summary and analysis of all relevant agency enforcement tools to advance the policies of this order.

(c) The Attorney General shall coordinate with State attorneys general and local district attorneys in their efforts to enforce the law and file appropriate actions against K–12 teachers and school officials who violate the law by:

(i) sexually exploiting minors;

(ii) unlawfully practicing medicine by offering diagnoses and treatment without the requisite license; or

(iii) otherwise unlawfully facilitating the social transition of a minor student.

(d) The Assistant to the President for Domestic Policy shall regularly convene the heads of the agencies tasked with submitting the Ending Indoctrination Strategy under subsection (a) of this section to confer regarding their findings, areas for additional investigation, the modification or implementation of their respective recommendations, and such other policy initiatives or matters as the President may direct.

**Sec. 4**. *Reestablishing the President's Advisory 1776 Commission and Promoting Patriotic Education.* (a) The President's Advisory 1776 Commission (''1776 Commission''), which was created by Executive Order 13958 of November 2, 2020, to promote patriotic education, but was terminated by President Biden in Executive Order 13985 of January 20, 2021, is hereby reestablished. The purpose of the 1776 Commission is to promote patriotic education and advance the purposes stated in section 1 of Executive Order 13958, as well as to advise and promote the work of the White House Task Force on Celebrating America's 250th Birthday (''Task Force 250'') and the United States Semiquincentennial Commission in their efforts to

provide a grand celebration worthy of the momentous occasion of the 250th anniversary of American Independence on July 4, 2026.

(b) Within 120 days of the date of this order, the Secretary of Education shall establish the 1776 Commission in the Department of Education.

(c) The 1776 Commission shall be composed of not more than 20 members, who shall be appointed by the President for a term of 2 years. The 1776 Commission shall be made up of individuals from outside the Federal Government with relevant experience or subject-matter expertise.

(d) The 1776 Commission shall have a Chair or Co-Chairs, at the President's discretion, and a Vice Chair, who shall be designated by the President from among the Commission's members. An Executive Director, designated by the Secretary of Education in consultation with the Assistant to the President for Domestic Policy, shall coordinate the work of the 1776 Commission. The Chair (or Co-Chairs) and Vice Chair shall work with the Executive Director to convene regular meetings of the 1776 Commission, determine its agenda, and direct its work, consistent with this order.

(e) The 1776 Commission shall:

(i) facilitate the development and implementation of a ''Presidential 1776 Award'' to recognize student knowledge of the American founding, including knowledge about the Founders, the Declaration of Independence, the Constitutional Convention, and the great soldiers and battles of the American Revolutionary War;

(ii) in coordination with the White House Office of Public Liaison, coordinate bi-weekly lectures regarding the 250th anniversary of American Independence that are grounded in patriotic education principles, which shall be broadcast to the Nation throughout calendar year 2026;

(iii) upon request, advise executive departments and agencies regarding their efforts to ensure patriotic education is appropriately provided to the public at national parks, battlefields, monuments, museums, installations, landmarks, cemeteries, and other places important to the American founding and American history, as appropriate and consistent with applicable law;

(iv) upon request, offer advice and recommendations to, and support the work of Task Force 250 and the United States Semiquincentennial Commission regarding their plans to celebrate the 250th anniversary of American Independence; and

(v) facilitate, advise upon, and promote private and civic activities nationwide to increase public knowledge of and support patriotic education surrounding the 250th anniversary of American Independence, as appropriate and consistent with applicable law.

(f) The Department of Education shall provide funding and administrative support for the 1776 Commission, to the extent permitted by law and subject to the availability of appropriations.

(g) Members of the 1776 Commission shall serve without compensation but, as approved by the Department of Education, shall be reimbursed for travel expenses, including per diem in lieu of subsistence, as authorized by law for persons serving intermittently in the Government service (5 U.S.C. 5701–5707).

(h) Insofar as chapter 10 of title 5, United States Code (commonly known as the Federal Advisory Committee Act), may apply to the 1776 Commission, any functions of the President under that Act, except that of reporting to the Congress, shall be performed by the Secretary of Education, in accordance with the guidelines issued by the Administrator of General Services.

(i) The 1776 Commission shall terminate 2 years from the date of this order, unless extended by the President.

**Sec. 5**. *Additional Patriotic Education Measures.* (a) All relevant agencies shall monitor compliance with section 111(b) of title I of Division J of

Case: 1:25-cv-12765 Document #: 130-3 Filed: 07/21/26 Page 61 of 98 PageID #:2762



Public Law 108–447, which provides that ''[e]ach educational institution that receives Federal funds for a fiscal year shall hold an educational program on the United States Constitution on September 17 of such year for the students served by the educational institution,'' including by verifying compliance with each educational institution that receives Federal funds. All relevant agencies shall take action, as appropriate, to enhance compliance with that law.

(b) All relevant agencies shall prioritize Federal resources, consistent with applicable law, to promote patriotic education, including through the following programs:

(i) the Department of Education's American History and Civics Academies and American History and Civics Education-National Activities programs;

(ii) the Department of Defense's National Defense Education Program and Pilot Program on Enhanced Civics Education; and

(iii) the Department of State's Bureau of Educational and Cultural Affairs and Fulbright, U.S. Speaker, and International Visitor Leadership programs, as well as the American Spaces network.

**Sec. 6**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.



THE WHITE HOUSE,

*January 29, 2025.*

[FR Doc. 2025–02232

Filed 1–31–25; 11:15 am]

Billing code 3395–F4–P

Federal Register / Vol. 90, No. 56 / Tuesday, March 25, 2025 / Presidential Documents 13681

# Presidential Documents

**Executive Order 14243 of March 20, 2025**

## Stopping Waste, Fraud, and Abuse by Eliminating Information Silos

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

**Section 1**. *Purpose.* Purpose. Removing unnecessary barriers to Federal employees accessing Government data and promoting inter-agency data sharing are important steps toward eliminating bureaucratic duplication and inefficiency while enhancing the Government's ability to detect overpayments and fraud.

**Sec. 2**. *Definitions.* (a) ''Agency'' has the meaning given to it in section 3502 of title 44, United States Code, except that such term does not include the Executive Office of the President or any components thereof.

(b) ''Agency Head'' means the highest-ranking official of an agency, such as the Secretary, Administrator, or Director. With respect to multimember agencies, ''Agency Head'' means the Chairman or equivalent official.

**Sec. 3**. *Eliminating Information Silos.* (a) Agency Heads shall take all necessary steps, to the maximum extent consistent with law, to ensure Federal officials designated by the President or Agency Heads (or their designees) have full and prompt access to all unclassified agency records, data, software systems, and information technology systems—or their equivalents if providing access to an equivalent dataset does not delay access—for purposes of pursuing Administration priorities related to the identification and elimination of waste, fraud, and abuse. This includes authorizing and facilitating both the intra- and inter-agency sharing and consolidation of unclassified agency records.

(b) Within 30 days of the date of this order, Agency Heads shall, to the maximum extent consistent with law, rescind or modify all agency guidance that serves as a barrier to the inter- or intra-agency sharing of unclassified information specified in subsection (a) of this section. Agency Heads shall also review agency regulations governing unclassified data access, including system of records notices, and, within 30 days of the date of this order, submit a report to the Office of Management and Budget cataloging those regulations and recommending whether any should be eliminated or modified to achieve the goals set forth in this order. Regulatory modifications pursuant to this order are exempt from Executive Order 14192.

(c) Immediately upon execution of this order, Agency Heads shall take all necessary steps, to the maximum extent consistent with law, to ensure the Federal Government has unfettered access to comprehensive data from all State programs that receive Federal funding, including, as appropriate, data generated by those programs but maintained in third-party databases.

(d) Immediately upon execution of this order and without limiting the above directives, the Secretary of Labor and the Secretary's designees shall receive, to the maximum extent consistent with law, unfettered access to all unemployment data and related payment records, including all such data and records currently available to the Department of Labor's Office of Inspector General.

(e) This order supersedes any prior Executive Orders and rules or regulations subject to direct Presidential rulemaking authority to the extent they

serve as a barrier to the inter- or intra-agency sharing of unclassified information as specified in this order.

(f) Agency Heads shall conduct a review of classified information policies to determine whether they result in the classification of materials beyond what is necessary to protect critical national security interests and, within 45 days of the date of this order, submit a report to the Office of Management and Budget cataloguing those classified information policies and recommending whether any should be eliminated or modified to achieve the goals set forth in this order.

**Sec. 4**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*Washington, March 20, 2025.*

[FR Doc. 2025–05214
Filed 3–24–25; 8:45 am]
Billing code 3395–F4–P

Case: 1:25-cv-12765 Document #: 130-3 Filed: 07/21/26 Page 64 of 98 PageID #:2765



# Presidential Documents

Executive Order 14249 of March 25, 2025

## Protecting America's Bank Account Against Fraud, Waste, and Abuse

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

**Section 1**. *Purpose.* Promoting financial integrity and operational efficiency are critical responsibilities of the Federal Government. The Federal Government processes trillions of dollars annually in disbursements to individuals, businesses, and organizations, and in receipts from taxes, fees, and other payments to finance daily and long-term Government operations. These transactions flow into and out of the United States General Fund (General Fund), which might be thought of as America's bank account. In Fiscal Year 2024, $33.9 trillion flowed into the General Fund and $33.6 trillion flowed out of the account, including $5.87 trillion (less net interest) in benefits, grants, loans, vendor payments, and other disbursements.

The Department of the Treasury is the largest financial payment manager of the Federal Government and is responsible for safeguarding the General Fund, but lacks sufficient controls to track transactions flowing through the General Fund to determine if they were proper. To enforce sufficient controls and ensure accountability to American taxpayers, the Department of the Treasury requires financial information from executive departments and agencies (agencies) beyond what they currently provide.

Financial fraud threatens the integrity of Federal programs and undermines trust in Government. Agencies' past underinvestment in technology and longstanding challenges with access to accurate data has prevented them from more fully safeguarding taxpayer dollars against fraud and improper payments. The Government Accountability Office estimates that the Federal Government loses between $233 and $521 billion annually to fraud.

In addition to being an efficient steward of taxpayer funds, the Federal Government, on behalf of the American public, must seek to ensure that financial information is accurate and that there is transparency with respect to how taxpayer dollars are being used. Today, Federal funds are disbursed both by the Department of the Treasury and various Federal Government entities that are authorized to issue their own disbursements known as Non-Treasury Disbursing Offices (NTDOs). In Fiscal Year 2024, NTDOs were estimated to be responsible for 181 million payments totaling over $1.5 trillion (approximately 22 percent of all Federal Government dollars disbursed). This fragmentation of disbursing authority, together with the proliferation of non-standard financial management systems across the Federal Government, leads to expensive, disjointed, and duplicative financial reporting, lack of financial traceability, complicated financial management, opacity, increased operational risks, and decreased ability of the Department of the Treasury to provide centralized oversight.

This order promotes financial integrity by enabling the Department of the Treasury to more easily conduct improper payment and fraud prevention screening prior to disbursing funds on behalf of agencies. This order increases transparency and accountability by requiring agencies to provide the Department of the Treasury with the information needed to track transactions through the General Fund in greater detail. This order also promotes operational efficiency by returning disbursing functions to the Department of

the Treasury when possible and consolidating and standardizing core Federal financial systems.

**Sec. 2**. *Policy.* It is the policy of the United States to defend against financial fraud and improper payments, increase transparency and accountability around the Federal Government's operations and financial condition, increase efficiency, reduce costs, and enhance the security of Federal payments.

**Sec. 3**. *Treasury Verification of Agency Payments Information.* (a) The Secretary of the Treasury, in consultation with the Director of the Office of Management and Budget (OMB Director), shall update guidance and enhance systems to ensure that all payments made by the Department of the Treasury on behalf of agencies pursuant to the Secretary of the Treasury's disbursing authority, including 31 U.S.C. 3321, are subject to pre-certification verification processes established by the Secretary of the Treasury and conducted by agencies and the Department of the Treasury for the purposes of defending against financial fraud and improper payments, to the greatest extent permitted by law. Such guidance shall set forth guidelines for compliance with the Do Not Pay Working System as described in 31 U.S.C. 3351 *et seq.,* and such other payment, account, and payee validation programs and services that the Secretary of the Treasury and the OMB Director determine to be beneficial for reducing financial fraud and improper payments.

(b) In accordance with 31 U.S.C. 3354, the heads of all agencies shall cooperate with the Secretary of the Treasury to fulfill their obligations to determine payment or award eligibility through pre-certification and pre-award procedures, as determined by the Secretary of the Treasury, including pursuant to subsection (a) of this section and section 4 of this order to prevent fraud and improper payments.

(c) The Secretary of the Treasury is directed to minimize administrative barriers to accessing and using data to prevent fraud and improper payments by exercising the authority in 31 U.S.C. 3351 *et seq.* to waive the requirements of 5 U.S.C. 552(o), in consultation with the OMB Director, in any case or class of cases for computer matching activities, to the extent permissible by law.

(d) Within 90 days of the date of this order, agency heads shall review and modify, as applicable, their relevant system of records notices under the Privacy Act of 1974 to include a ''routine use'' that allows for the disclosure of records to the Department of the Treasury for the purposes of identifying, preventing, or recouping fraud and improper payments, to the extent permissible by law.

(e) The Secretary of the Treasury, in consultation with the OMB Director, shall issue guidance to agency heads on the circumstances in which agency heads, to the extent permissible by law, may provide the Secretary of the Treasury with access to data necessary for the purposes of detecting and preventing fraud and improper payments, as well as data for payment information verification (and not, for example, data such as health records).

**Sec. 4**. *Implementation and Compliance of Payment Verification.* (a) Agency heads, through designated agency officials (Certifying Officers or COs), who are responsible for verifying that disbursements made by the Federal Government are legal, proper, and correct, and for performing the duties in 31 U.S.C. 3528, shall comply with the disbursement requirements and instructions, including pre-certification requirements, published by the Secretary of the Treasury.

(b) The Secretary of the Treasury shall consider, as appropriate, issuing instructions to agencies to enforce the following pre-certification criteria for disbursement requests submitted by COs (Vouchers) before they are certified for payment by the CO:

(i) Funds are available at the time the obligation is incurred. If an obligation is incurred when funds are not available, then the CO shall not certify the payment.

(ii) The amount of the payment and the name of the payee on the Voucher are correct, in conformance with the Department of the Treasury's prescribed standard format.

(iii) A proper Social Security Number, Taxpayer Identification Number, Employer Identification Number, Individual Taxpayer Identification Number, or Payee ID Number is provided for each payee on the Voucher, as applicable.

(iv) The appropriation or fund from which the payment will be made is available for the purpose set forth in the Voucher and indicated with the appropriate Treasury Account Symbol/Business Event Type Code.

(v) Payees are not deceased individuals, to the greatest extent permitted by law.

(vi) The account number provided on the Voucher is held at a financial institution and is open, valid, and belongs to the payee or valid designee of payee.

(vii) Contracts or agreements are referenced on the Voucher by providing the contract number, referred to as the Procurement Instrument Identifier, where applicable.

(viii) Financial assistance awards (non-aggregate) are referenced on the Voucher by providing the award number, referred to as the Federal Award Identification Number, where applicable.

(ix) For summary schedules, the payments on the Voucher are submitted in conformance with the Department of the Treasury prescribed standard formats for such schedules.

(c) Agency heads shall submit payment files other than with respect to same-day payments to the Secretary of the Treasury or the Secretary's designee with sufficient lead time prior to the date of disbursement as determined by the Department of the Treasury and provided in the requirements and instructions issued pursuant to subsections (a) and (b) of this section, to allow for fraud and improper payment screening, to the extent permissible by law. With respect to same-day payments, agency heads shall submit payment files to the Secretary of the Treasury or the Secretary's designee as much in advance as reasonably practicable.

(d) In issuing requirements and instructions pursuant to subsection (a) of this section, the Secretary of the Treasury shall consider whether it would be appropriate to provide that the Department of the Treasury's Chief Disbursing Officer return to the relevant agency for reconciliation any payments that do not pass the pre-certification verification processes established pursuant to section 3(a) of this order and notify the designated CO.

(e) The Secretary of the Treasury shall include in the guidance issued pursuant to subsection (a) of this section, or in other regulations or guidance, a transparent process for agencies to request exemptions from some or all of the payment verification requirements for specific payments or categories of payments.

**Sec. 5**. *Core Financial System Consolidation.* (a) Within 180 days of the date of this order, the OMB Director shall issue guidance that directs agencies described in 31 U.S.C. 901(b) (CFO Act agencies) to consolidate their core financial systems.

(b) As soon as practicable, but not later than 180 days of the date of this order, the OMB Director, in consultation with the Secretary of the Treasury, shall issue guidance directing all non-CFO Act agencies to consolidate transactional financial management services under a single provider approved by the Department of the Treasury.

(c) As soon as practicable, all heads of CFO Act agencies shall use standard financial management solutions available through the Financial Management

Marketplace, administered by the Financial Management Quality Service Management Office.

(d) Agency heads shall ensure that core financial systems comply with Federal accounting and financial reporting standards and relevant regulations, orders, guidance documents, policy statements, and other agency actions published by the Department of the Treasury from time to time.

**Sec. 6**. *Reduction of NTDOs.* (a) Within 30 days of the date of this order, the Secretary of the Treasury shall assess whether to maintain disbursing authority that it has delegated to agencies pursuant to 31 U.S.C. 3321(b) and issue notices to revoke such delegations, as appropriate, in accordance with applicable law.

(b) The heads of agencies with disbursing authority under 31 U.S.C. 3321(c), including the Secretary of Defense, the Secretary of Homeland Security, and the Attorney General (but excluding, for the avoidance of doubt, the Supreme Court and other entities of the Federal Government outside the Executive Branch) will work with the Secretary of the Treasury to delegate the performance of their disbursing activities, other than with respect to classified payments, to the Department of the Treasury's Chief Disbursing Officer in accordance with applicable law.

(c) Notwithstanding subsections (a) or (b) of this section, the Secretary of the Treasury may continue to delegate disbursing authority to NTDOs at other agencies when doing so would align with significant Government priorities. Any remaining NTDOs are required to report daily to the Department of the Treasury's centralized accounting and reporting system in accordance with then-current Department of the Treasury guidance and applicable law.

(d) The Secretary of the Treasury shall develop a plan to centralize and manage all payments previously disbursed by NTDOs, ensuring seamless continuity of Government payments.

(e) The Secretary of the Treasury, in coordination with agency heads, shall establish a transition plan for agencies currently operating as NTDOs, including staffing adjustments, system integrations, and legal or regulatory modifications necessary for full consolidation.

(f) The heads of agencies with disbursing authority delegated to the agency under 33 U.S.C. 3321(b) shall decommission all internal payment systems and use the Department of the Treasury's disbursement systems, except and to the extent authorized by the Department of the Treasury or otherwise required by applicable law.

**Sec. 7**. *Reporting and Implementation Requirements.* (a) The heads of all agencies shall submit a compliance plan to the OMB Director within 90 days of the date of this order detailing their strategy for:

(i) transitioning disbursing authority to the Department of the Treasury, as applicable and as contemplated by this order;

(ii) updating and integrating systems with Department of the Treasury platforms;

(iii) procedures to verify payment information as contemplated by this order; and

(iv) transmitting information associated with improper payments to the Department of the Treasury in accordance with standards and reporting specifications established by the OMB Director in coordination with the Secretary of the Treasury as contemplated by this order.

(b) The Secretary of the Treasury shall submit an implementation report to the President through the Assistant to the President for Economic Policy within 180 days of the date of this order detailing progress on the matters set forth in this order.

(c) The Secretary of the Treasury and agency heads shall take all necessary steps to protect classified information and systems, as well as personally

identifiable information and tax return information, through the implementation of this order.

**Sec. 8**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.



THE WHITE HOUSE,
*March 25, 2025.*

[FR Doc. 2025–05524
Filed 3–27–25; 8:45 am]
Billing code 3395–F4–P

Federal Register / Vol. 90, No. 153 / Tuesday, August 12, 2025 / Presidential Documents 

# Presidential Documents

**Executive Order 14332 of August 7, 2025**

## Improving Oversight of Federal Grantmaking

By the authority vested in me as President by the Constitution and the laws of the United States of America, and to improve the process of Federal grantmaking while ending offensive waste of tax dollars, it is hereby ordered:

**Section 1**. *Purpose.* Every tax dollar the Government spends should improve American lives or advance American interests. This often does not happen. Federal grants have funded drag shows in Ecuador, trained doctoral candidates in critical race theory, and developed transgender-sexual-education programs. In 2024, one study claimed that more than one-quarter of new National Science Foundation (NSF) grants went to diversity, equity, and inclusion and other far-left initiatives. These NSF grants included those to educators that promoted Marxism, class warfare propaganda, and other anti-American ideologies in the classroom, masked as rigorous and thoughtful investigation.

The harm imposed by problematic Federal grants does not stop at propagating absurd ideologies. An unsafe lab in Wuhan, China—likely the source of the COVID–19 pandemic—engaged in gain-of-function research funded by the National Institutes of Health. The NSF gave millions to develop AI-powered social media censorship tools—a direct assault on free speech. Taxpayer-funded grants have also gone to non-governmental organizations that provided free services to illegal immigrants, worsening the border crisis and compromising our safety, and to organizations that actively worked against American interests abroad.

Even for projects receiving Federal funds that serve an ostensibly beneficial purpose, the Government has paid insufficient attention to their efficacy. For example, a significant proportion of the results of federally funded scientific research projects cannot be reproduced by external researchers. Even at Harvard and Stanford, once considered among America's most prestigious universities, senior researchers have resigned following accusations of data falsification. A substantial portion of many Federal grants for university-led research goes not to scientific project applicants or groundbreaking research, but to university facilities and administrative costs.

The grant review process itself also undermines the interests of American taxpayers. Writing effective grant applications is notoriously complex, and grant applicants that can afford legal and technical experts are more likely to receive funds—which can then further support these non-mission functions. In addition, there is insufficient interagency coordination and review by relevant subject matter experts to reduce duplication. As a result, the best proposals do not always receive funding, and there is too much unfocused research of marginal social utility.

In short, there is a strong need to strengthen oversight and coordination of, and to streamline, agency grantmaking to address these problems, prevent them from recurring, and ensure greater accountability for use of public funds more broadly. The Government holds tax revenue in trust for the American people, and agencies should treat it accordingly.

**Sec. 2**. *Definitions.* For purposes of this order:

(a) The term ''agency'' has the meaning given to it in section 551 of title 5, United States Code, except that such term includes only agencies that have the statutory authority to award, offer, or manage Federal grants

and does not include the Executive Office of the President or any components thereof.

(b) The term ''agency head'' means the highest-ranking official or officials of an agency, such as the Secretary, Administrator, Chairman, Director, Commissioners, or Board of Directors, unless otherwise specified in this order.

(c) The term ''Director'' means the Director of the Office of Management and Budget (OMB).

(d) The term ''discretionary award'' or ''discretionary grant'' means a grant that is a ''discretionary award'' as that term is defined in 2 CFR 200.1. It does not include programs where legislation establishes an entitlement to the funds on the part of the recipient, such as block grants; those awarded based on a statutory formula; or disaster recovery grants.

(e) The term ''funding opportunity announcement'' means a ''notice of funding opportunity'' as defined in 2 CFR 200.1, as it pertains to a discretionary award.

(f) The term ''grant'' means any ''grant agreement or grant'' as defined in 2 CFR 200.1, ''cooperative agreement'' as defined in 2 CFR 200.1, or similar award of financial assistance, including foreign assistance awards.

(g) The term ''regulation'' means an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the procedure or practice requirements of an agency, including, without limitation, regulations, interpretative rules, and statements of policy.

(h) The term ''senior appointee'' means an individual appointed by the President, a non-career member of the Senior Executive Service, or an employee encumbering a Senior Level, Scientific and Professional, or Grade 15 position in Schedule C of the excepted service.

**Sec. 3**. *Strengthening Accountability for Agency Grantmaking.* (a) Each agency head shall promptly designate a senior appointee who shall be responsible for creating a process to review new funding opportunity announcements and to review discretionary grants to ensure that they are consistent with agency priorities and the national interest. For the avoidance of doubt, this process shall not guarantee any particular level of review or consideration to funding applicants except as consistent with applicable law. As consistent with applicable law, this review process shall incorporate, at a minimum:

(i) review and approval of agency funding opportunity announcements by one or more senior appointees or their designees;

(ii) continuation of existing coordination with OMB;

(iii) to the extent appropriate to the subject matter of the announcements, review by designated subject-matter experts as identified by the agency head or the agency head's designee;

(iv) review of funding opportunity announcements and related forms to ensure that they include only such requirements as are necessary for an adequate evaluation of the application and are written in plain language with a goal of minimizing the need for legal or technical expertise in drafting an application;

(v) interagency coordination to determine whether the subject matter of a particular funding opportunity announcement has already been addressed by another agency announcement and, if so, whether one of the announcements should be modified or withdrawn to promote consistency and eliminate redundancy;

(vi) for scientific research discretionary grants, review by at least one subject matter expert in the field of the application, who may be a member of the grant review panel, the program officer, or an outside expert; and

(vii) pre-issuance review of discretionary awards to ensure that the awards are consistent with applicable law, agency priorities, and the national

interest, which shall involve in-person or virtual discussion of applications by grant review panels or program offices with a senior appointee or that appointee's designee.

(b) Agency heads shall designate one or more senior appointees to review discretionary awards on an annual basis for consistency with agency priorities and substantial progress. Such review shall include an accountability mechanism for officials responsible for selection and granting of the awards.

(c) Until such time as the process specified in subsection (a) of this section is in place, agencies shall not issue any new funding opportunity announcements without prior approval from the senior appointee designated under subsection (a) of this section, except as required by law.

**Sec. 4**. *Considerations for Discretionary Awards.* (a) Senior appointees and their designees shall not ministerially ratify or routinely defer to the recommendations of others in reviewing funding opportunity announcements or discretionary awards, but shall instead use their independent judgment.

(b) In reviewing and approving funding opportunity announcements and discretionary awards, as well as in designing the review process described in section 3(a) of this order, senior appointees and their designees shall, as relevant and to the extent consistent with applicable law, apply the following principles, including in any scoring rubrics used to assess grant proposals:

(i) Discretionary awards must, where applicable, demonstrably advance the President's policy priorities.

(ii) Discretionary awards shall not be used to fund, promote, encourage, subsidize, or facilitate:

(A) racial preferences or other forms of racial discrimination by the grant recipient, including activities where race or intentional proxies for race will be used as a selection criterion for employment or program participation;

(B) denial by the grant recipient of the sex binary in humans or the notion that sex is a chosen or mutable characteristic;

(C) illegal immigration; or

(D) any other initiatives that compromise public safety or promote anti-American values.

(iii) All else being equal, preference for discretionary awards should be given to institutions with lower indirect cost rates.

(iv) Discretionary grants should be given to a broad range of recipients rather than to a select group of repeat players. Research grants should be awarded to a mix of recipients likely to produce immediately demonstrable results and recipients with the potential for potentially longer-term, breakthrough results, in a manner consistent with the funding opportunity announcement.

(v) Applicants should commit to complying with administration policies, procedures, and guidance respecting Gold Standard Science.

(vi) Discretionary awards should include clear benchmarks for measuring success and progress towards relevant goals and, as relevant for awards pertaining to scientific research, a commitment to achieving Gold Standard Science.

(vii) To the extent institutional affiliation is considered in making discretionary awards, agencies should prioritize an institution's commitment to rigorous, reproducible scholarship over its historical reputation or perceived prestige. As to science grants, agencies should prioritize institutions that have demonstrated success in implementing Gold Standard Science.

(c) Nothing in this order shall be construed to discourage or prevent the use of peer review methods to evaluate proposals for discretionary awards or otherwise inform agency decision making, provided that peer review recommendations remain advisory and are not ministerially ratified,

routinely deferred to, or otherwise treated as de facto binding by senior appointees or their designees. Further, nothing in this order shall be construed to create any rights to any particular level of review or consideration for any funding applicant except as consistent with applicable law.

**Sec. 5**. *Revisions to the Uniform Guidance.* (a) The Director shall revise the Uniform Guidance and other relevant guidance to streamline application requirements and to further clarify and require all discretionary grants to permit termination for convenience, including when the award no longer advances agency priorities or the national interest, but subject to appropriate exceptions, including agreements entered into in furtherance of international trade agreements or those awarded by the Department of Commerce under title XCIX of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116–283), the CHIPS Act of 2022 (Public Law 117–167), or division F of the Infrastructure Investment and Jobs Act (Public Law 117–58).

(b) The Director shall further revise the Uniform Guidance and other relevant guidance to appropriately limit the use of discretionary grant funds for costs related to facilities and administration.

**Sec. 6**. *Implementation and Termination Clauses.* (a) Within 30 days of the date of this order, each agency head shall review the agency's standard grant terms and conditions and submit a report to the Director detailing:

(i) whether the agency's standard terms and conditions for discretionary awards permit termination for convenience and include the termination provisions described in 2 CFR 200.340(a), including the provisions that an award may be terminated by the agency ''if an award no longer effectuates the program goals or agency priorities'' or, in the case of a partial termination by the recipient, if the agency ''determines that the remaining portion of the Federal award will not accomplish the purposes for which the Federal award was made'';

(ii) whether the agency's standard terms and conditions for discretionary foreign assistance awards permit termination based on the national interest; and

(iii) the approximate number of active discretionary awards at the agency, as well as the approximate percentage of funding obligated under those awards that contains termination provisions allowing for termination under the circumstances described in subsection (i) of this section.

(b) Each agency head shall, to the maximum extent permitted by law and consistent with relevant Executive Orders or other Presidential directives, take steps to revise the terms and conditions of existing discretionary grants to permit immediate termination for convenience, or clarify that such termination is permitted, including if the award no longer advances agency priorities or the national interest. Each agency head shall ensure that such terms are included in all future discretionary grants and likewise shall take steps to revise all applicable regulations binding on or incorporated in discretionary grant terms and conditions to require such terms. Agency heads shall take action to incorporate these new terms and conditions into all future amendments to grant awards.

(c) To the extent practicable and consistent with applicable law, agency heads shall insert in future discretionary grant agreements terms and conditions that:

(i) prohibit recipients from directly drawing down general grant funds for specific projects without the affirmative authorization of the agency; and

(ii) require grantees to provide written explanations or support, with specificity, for requests for each drawdown.

**Sec. 7**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

(d) If any provision of this order, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this order and the application of its provisions to any other persons or circumstances shall not be affected thereby.

(e) The costs for publication of this order shall be borne by the Office of Management and Budget.

THE WHITE HOUSE,
*August 7, 2025.*

[FR Doc. 2025–15344
Filed 8–11–25; 11:15 am]
Billing code 3110–01–P

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

The Director

# MEMORANDUM

| | |
|---|---|
| **TO:** | Heads and Acting Heads of Departments and Agencies |
| **FROM:** | Charles Ezell, Acting Director, U.S. Office of Personnel Management |
| **DATE**: | January 21, 2025 |
| **RE**: | Initial Guidance Regarding DEIA Executive Orders |

---

Pursuant to its authority under 5 U.S.C. § 1103(a)(1) and (a)(5), the U.S. Office of Personnel Management ("***OPM***") is providing the following initial guidance to agencies regarding the President's executive orders titled *Ending Radical and Wasteful Government DEI Programs and Preferencing* and *Initial Rescissions of Harmful Executive Orders and Actions*, which repeals Executive Order 14035, *Diversity, Equity, Inclusion and Accessibility in the Federal Workforce*.

**Steps to Close Agency DEIA Offices**: In light of the above Executive Orders, each should take prompt actions regarding the offices and agency sub-units focusing exclusively on DEIA initiatives and programs (the "***DEIA offices***"). Specifically, agency heads should take the following steps:

1. No later than **5:00 pm EST on Wednesday, January 22, 2025**

    a. Send an agency-wide notice to employees informing them of the closure and asking employees if they know of any efforts to disguise these programs by using coded or imprecise language a template agency-wide notice is attached as Appendix 1.

    b. Send a notification to all employees of DEIA offices that they are being placed on paid administrative leave effective immediately as the agency takes steps to close/end all DEIA initiatives, offices and programs.[1] A template employee letter is attached as Appendix 2.

    c. Take down all outward facing media (websites, social media accounts, etc.) of DEIA offices.

---

[1] The authority for placing these employees on paid administrative leave is set forth in the OPM memorandum entitled "Guidance on Probationary Periods, Administrative Leave and Details" issued January 20, 2025.

d. Withdraw any final or pending documents, directives, orders, materials, and equity plans issued by the agency in response to now-repealed Executive Order 14035, *Diversity, Equity, Inclusion and Accessibility (DEIA) in the Federal Workforce* (June 25, 2021).

e. Cancel any DEIA-related trainings, and terminate any DEIA-related contractors.

2. No later than **12:00 pm EST on Thursday, January 23, 2025**, report to OPM on all steps taken to implement this memorandum, including:

   a. a complete list of DEIA offices and any employees who in those offices **as of November 5, 2024**,

   b. a complete list of all DEIA-related agency contracts **as of November 5, 2024**, and

   c. any agency plans to fully comply with the above Executive Orders and this memorandum.

3. No later than **5:00 pm EST on Friday, January 31, 2025**, submit to OPM:

   a. a written plan for executing a reduction-in-force action regarding the employees who work in a DEIA office. Agencies should coordinate with OPM in preparing these plans,

   b. a list of all contract descriptions or personnel position descriptions that were changed since November 5, 2024 to obscure their connection to DEIA programs.

Please contact Amanda Scales at amanda.scales@opm.gov if you have any questions regarding this memorandum. Please send any reports requested by this guidance memo to DEIAreports@opm.gov, with a copy to amanda.scales@opm.gov.

cc: Chief Human Capital Officers (CHCOs), Deputy CHCOs, Human Resources Directors, and Chiefs of Staff

**Appendix 1**

Template Email - Agency Head to Employees

Dear agency employees,

We are taking steps to close all agency DEIA offices and end all DEIA-related contracts in accordance with President Trump's executive orders titled *Ending Radical and Wasteful Government DEI Programs and Preferencing* and *Initial Rescissions of Harmful Executive Orders and Actions*.

These programs divided Americans by race, wasted taxpayer dollars, and resulted in shameful discrimination.

We are aware of efforts by some in government to disguise these programs by using coded or imprecise language. If you are aware of a change in any contract description or personnel position description since November 5, 2024 to obscure the connection between the contract and DEIA or similar ideologies, please report all facts and circumstances to DEIAtruth@opm.gov within 10 days.

There will be no adverse consequences for timely reporting this information. However, failure to report this information within 10 days may result in adverse consequences.

Thank you for your attention to this important matter.

**Appendix 2**

Template Email - Administrative Leave Notice (Sent to Employees)

Dear [Employee],

This email provides important information regarding your employment status. Effective January 2[_], 2025 at [__] [_]m EST, all employees within [ODEIA] will be placed on administrative leave with full pay and benefits. This administrative leave is not being done for any disciplinary purpose.

Please note the following:

- **Pay and Benefits:** You will continue to receive your full salary and benefits during the entirety of this administrative leave period.

- **Work Responsibilities:** You are not required or expected to perform any work-related tasks during this period of administrative leave.

- **Office Attendance:** You are not required or expected to come to the office during this time.

- **Email Access:** Your email access will be suspended. Please make sure that your address of record and contact information are current with your agency.

We will provide you with updates as soon as they are available. We appreciate your patience and cooperation.

If you have any concerns or questions, please contact [Designated Contact Person] at [Email].

Respectfully,

[Name/Title of Authorizing Official]

[Office/Agency]

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

The Director

# MEMORANDUM

| | |
|---|---|
| **TO:** | Heads and Acting Heads of Departments and Agencies |
| **FROM:** | Charles Ezell, Acting Director, U.S. Office of Personnel Management |
| **DATE**: | February 5, 2025 |
| **RE**: | Further Guidance Regarding Ending DEIA Offices, Programs and Initiatives |

---

Pursuant to its authority under 5 U.S.C. § 1103(a)(1) and (a)(5), the U.S. Office of Personnel Management ("***OPM***") is providing additional guidance regarding the President's executive orders, including those titled, "*Ending Radical and Wasteful Government DEI Programs and Preferencing*," "*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*," and "*Initial Rescissions of Harmful Executive Orders and Actions*."

**Equal Employment Opportunity Offices:**

To promote a federal workplace committed to equal dignity and respect, and to avoid expending precious taxpayer resources on wasteful and discriminatory programs, agencies should terminate all illegal DEIA initiatives. Agencies should therefore eliminate DEIA offices, policies, programs, and practices (including policies, programs, and practices outside of any DEIA offices) that unlawfully discriminate in any employment action or other term, condition, or privilege of employment, including but not limited to recruiting, interviewing, hiring, training or other professional development, internships, fellowships, promotion, retention, discipline, and separation, based on protected characteristics like race, color, religion, sex, national origin, age, disability, genetic information, or pregnancy, childbirth or related medical condition ("protected characteristics").[1]

Unlawful discrimination related to DEI includes taking action motivated, in whole or in part, by protected characteristics. To be unlawful, a protected characteristic does not need to be the sole or exclusive reason for an agency's action. Among other practices, this includes ending unlawful diversity requirements for the composition of hiring panels, as well as for the composition of candidate pools (also referred to as "diverse slate" policies).

This does not apply to, and agencies should retain, personnel, offices and procedures required by statute or regulation to counsel employees allegedly subjected to discrimination, receive discrimination complaints, collect demographic data, and process accommodation

---

[1] *See* 42 U.S.C. § 2000e-16; 29 C.F.R. § 1614.101.

requests.[2] Such functions can and should be transferred among personnel and offices at the agency if those functions were previously handled by a DEIA office that is subject to a reduction-in-force action. In doing so, agencies should take care that the functions of any such office are strictly limited to the duties within its statutory authority and that staffing levels are consistent with those responsibilities.

**Accessibility and Reasonable Accommodation:**

The Biden-Harris Administration conflated longstanding, legally-required obligations related to disability accessibility and accommodation with DEI initiatives. President Trump's executive orders require the elimination of discriminatory practices. Agencies should thus rescind policies and practices that are contrary to the Civil Rights Act of 1964 and the Rehabilitation Act of 1973. But agencies should not terminate or prohibit accessibility or disability-related accommodations, assistance, or other programs that are required by those or related laws.[3] In executing reduction-in-force actions regarding employees in DEIA offices, agencies should therefore retain the minimum number of employees necessary to ensure agency compliance with applicable disability and accessibility laws, including those requiring the collection, maintenance, and reporting of disability information.[4]

**Employee Resource Groups:**

The revocation of Executive Orders 13583 and 14035 removed two of the primary legal authorities for Employee Resource Groups ("ERGs"). Consistent with the President's orders, agencies should prohibit all discriminatory programs. They should thus prohibit ERGs that promote unlawful DEIA initiatives or advance recruitment, hiring, preferential benefits (including but not limited to training or other career development opportunities), or employee retention agendas based on protected characteristics.[5]

Nevertheless, agency heads retain the discretion to allow employees to host affinity group lunches, engage in mentorship programs, and otherwise gather for social and cultural events. When exercising this discretion, agency heads should consider whether activities under consideration are consistent with the "*Ending Radical and Wasteful Government DEI Programs and Preferencing*" and "*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*" executive orders, and the broader goal of creating a federal workplace focused on individual merit.

For any such activities which are retained, agencies must ensure that attendance at such events is not restricted (explicitly or functionally) by any protected characteristics, and that attendees are not segregated by any protected characteristics during the events. For example, it

---

[2] *See* 29 C.F.R. § 1614 et seq.

[3] *See, e.g.*, 29 U.S.C. §§ 729, 791; 29 C.F.R. § 1614 et seq.; 42 U.S.C. § 2000e et seq.

[4] *See, e.g.*, 29 C.F.R. § 1614.601.

[5] 5 C.F.R. § 251.202 (allowing agencies to provide support and agency resources to ERGs only where doing so would "benefit the agency.") Different considerations may apply where employees form workplace groups on the basis of similar interests or experiences, and not protected characteristics.

would be unlawful discrimination for an agency to limit attendance at an ethnic affinity group lunch to only members of the ethnic group, or to permit employees to discourage attendance by employees outside of the ethnic group. It would be similarly unlawful to host social or cultural event or other "inclusion"-related event or training while segregating participating employees into separate groups of "White" and "People of Color" (or other compositions based upon protected characteristics). Finally, to the extent that an agency exercises its discretion to permit ERGs, affinity group events, or other similar events, the agency may not draw distinctions based on any protected characteristic in granting permission to groups and events. For example, an agency cannot permit the formation of ERGs only for certain racial groups but not others, or only for one sex, or only certain religions but not others.

**Special Emphasis Programs:**

Agencies should promptly end illegal preferences and discrimination and restore merit-based equal employment opportunity. Agencies should accordingly reorganize and, to the extent necessary, eliminate Special Emphasis Programs that promote DEIA based on protected characteristics in any employment action or other term, condition, or privilege of employment, including but not limited to recruiting, interviewing, hiring, training or other professional development, internships, fellowships, promotion, retention, discipline, and separation. Consistent with the President's directives and civil rights law, including Executive Order 11478 and 29 C.F.R. § 1614.101 *et seq*., agencies should focus personnel efforts on rewarding individual excellence.

**Other Authorities:**

The Constitution vests the executive power in the President.[6] The President accordingly sets Executive Branch policy. It is the President's policy to eliminate all unlawful discrimination in the federal workforce. Agencies should therefore adhere to the President's orders rather than non-binding opinions and guidance promoting DEIA through ERGs, Special Emphasis Programs, or otherwise.

cc: Chief Human Capital Officers (CHCOs), Deputy CHCOs, Human Resources Directors, and Chiefs of Staff

---

[6] *See Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020).

# Chapter 6: Financial Assistance

## Section 6.5 – Department of Homeland Security (DHS) Standard Terms and Conditions

**Table of Contents**


Chapter 6: Financial Assistance ........................................................ 1
Section 6.5 – Department of Homeland Security (DHS) Standard Terms and Conditions ........................................................ 1
Introduction….. ........................................................ 1
Responsibilities ........................................................ 2
Policy……….. ........................................................ 2
1. Assurances, Administrative Requirements, Cost Principles, Representations and Certifications ........................................................ 3
2. General Acknowledgements and Assurances ........................................................ 3
3. Standard Terms and Conditions ........................................................ 4
3-1. Laws and Regulations ........................................................ 4
3-2. Executive Orders ........................................................ 17
3-3. DHS Policy ........................................................ 17


## Introduction

This section provides the policy for the Department of Homeland Security (DHS) Standard Terms and Conditions. These DHS Standard Terms and Conditions are referenced in the Notice of Award which includes all terms and conditions of a specific award. The Notice of Funding Opportunity (NOFO) for each DHS program describes program requirements and may include program specific terms and conditions.

Revisions from the previous DHS Standard Terms and Conditions dated April 18, 2025, are due to changes in statutes, regulations, and executive orders. The following terms are added for Fiscal Year (FY) 2026:

a. American Security Drone Act of 2023.

b. Executive Order 14332, Improving Oversight of Federal Grantmaking.

The following terms are updated:

a. Communication and Cooperation with the Department of Homeland Security and Immigration Officials.

b. Termination of a Federal Award.

c. National Environmental Policy Act (NEPA) of 1969.

The following terms are removed:

a. Civil Rights Civil Liberties (CRCL) Evaluation Tool.

b. Limited English Proficiency (Civil Rights Act of 1964, Title VI).

Future revisions will be captured in a summary of changes within this policy section.

These DHS Standard Terms and Conditions are effective April 16, 2026. This section will be updated, as necessary to comply with the statutes, regulations in Title 2 Code of Federal Regulations (C.F.R.), agency regulations, executive orders, and DHS policy.

## Responsibilities

All recipients, including pass-through entities and their subrecipients, are responsible for complying with the DHS Standard Terms and Conditions.

## Policy

The DHS Standard Terms and Conditions apply to all new federal awards of federal financial assistance (federal awards) for which the federal award date occurs in FY 2026, and flow down to subrecipients unless a term or condition specifically indicates otherwise. For Federal continuation awards made in subsequent Fiscal Years (FYs), the current[1] DHS Standard Terms and Conditions apply unless otherwise specified in the terms and conditions of the continuation awards. The United States has the right to seek judicial enforcement of these terms and conditions.

[1] For example, the FY 26 DHS Standard Terms and Conditions (T&Cs) apply to FY 26 continuation awards unless otherwise specified in the continuation memorandum. The continuation memorandum identifies the applicable FY DHS Standard T&Cs for the award.

These FY 2026 DHS Standard Terms and Conditions are also maintained on the DHS website at https://www.dhs.gov/publication/dhs-standard-terms-and-conditions.

## 1. Assurances, Administrative Requirements, Cost Principles, Representations and Certifications

Recipients must complete either the Office of Management and Budget (OMB) Standard Form 424B Assurances – Non- Construction Programs, or OMB Standard Form 424D Assurances – Construction Programs, as applicable. Certain assurances in these documents may not be applicable to your program and the DHS financial assistance office (DHS FAO) may require applicants to certify additional assurances. Applicants are required to fill out the assurances, as instructed.

## 2. General Acknowledgements and Assurances

a. Recipients are required to follow the applicable provisions of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards in effect as of the federal award date and located in Title 2, Code of Federal Regulations, Part 200 and adopted by DHS at 2 C.F.R. § 3002.10.

b. All recipients and subrecipients must acknowledge and agree to provide DHS access to records, accounts, documents, information, facilities, and staff pursuant to 2 C.F.R. § 200.337.

   1) Recipients must cooperate with any DHS compliance reviews or compliance investigations.

   2) Recipients must give DHS access to examine and copy records, accounts, and other documents and sources of information related to the federal award and permit access to facilities and personnel.

   3) Recipients must submit timely, complete, and accurate reports to the appropriate DHS officials and maintain appropriate backup documentation to support the reports.

   4) Recipients must comply with all other special reporting, data collection, and evaluation requirements required by law, federal regulation, Notice of Funding Opportunity, federal award specific terms and conditions, and/or DHS Component program guidance. Organization costs related to data and evaluation are allowable. The definition of data and evaluation costs is in 2 C.F.R. § 200.455(c), the full text of which is incorporated by reference.

# 3. Standard Terms and Conditions

## 3-1. Laws and Regulations

| Laws and Regulations | Terms and Conditions | Authorities |
|---|---|---|
| ***Age Discrimination Act of 1975*** | Recipients must comply with the *Age Discrimination Act of 1975*, Public Law 94-135 (codified as amended at Title 42, U.S. Code § 6101 *et seq*.), which prohibits recipients from discriminating on the basis of age in any program or activity receiving federal financial assistance. | Public Law 94-135 (codified as amended at Title 42, U.S. Code § 6101 *et seq*.) |
| ***American Security Drone Act of 2023*** | Recipients must comply with the *American Security Drone Act of 2023*, of the *National Defense Authorization Act for Fiscal Year 2024*, Pub. L. 118-31 (41 U.S.C. § 3901 note prec.), which prohibits the procurement and operation of covered unmanned aircraft systems manufactured or assembled by covered foreign entities. | 41 U.S.C. § 3901 note prec. |
| ***Americans with Disabilities Act of 1990*** | Recipients must comply with the requirements of Titles I, II, and III of the *Americans with Disabilities Act*, Pub. L. 101-336 (1990) (codified as amended at 42 U.S.C. §§ 12101– 12213), which prohibits recipients from discriminating on the basis of disability in the operation of public entities, public and private transportation systems, places of public accommodation, and certain testing entities. | Pub. L. 101-336 (1990) (codified as amended at 42 U.S.C. §§ 12101–12213) |
| ***Civil Rights Act of 1964* – Title VI** | Recipients must comply with the *Civil Rights Act of 1964*, which provides that no person in the United States will, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. DHS implementing regulations are in 6 C.F.R. Part 21. The Federal Emergency Management Agency's (FEMA) implementing regulations are in 44 C.F.R. Part 7. | Pub. L. 88-352 (codified as amended at 42 U.S.C. § 2000d *et seq*.<br><br>6 C.F.R. Part 21.<br><br>44 C.F.R. Part 7. |
| ***Civil Rights Act of 1968* – Title VIII** | Recipients must comply with Title VIII of the *Civil Rights Act of 1968*, Pub. L. 90-284 (codified as amended at 42 U.S.C. § 3601 *et seq*.) which prohibits recipients from discriminating in the sale, rental, financing, and advertising of dwellings, or in the provision of services in connection. therewith, on the basis of race, color, national origin, religion, disability, familial status, and sex, as implemented by the U.S. Department of Housing and Urban Development at 24 C.F.R. Part 100. The prohibition on disability discrimination includes the requirement that new multifamily housing with four or more dwelling units— i.e., the public and common use areas | Pub. L. 90-284 (codified as amended at 42 U.S.C. § 3601 *et seq*.)<br><br>24 C.F.R. Part 100<br><br>24 C.F.R. Part 100, Subpart D. |

| | | |
|---|---|---|
| | and individual apartment units (all units in buildings with elevators and ground-floor units in buildings without elevators)—be designed and constructed with certain accessible features. See 24 C.F.R. Part 100, Subpart D. | |
| **Communication and Cooperation with the Department of Homeland Security and Immigration Officials** | (1) The Department of Homeland Security will analyze whether the conditions in this section will be applied to any grant program in a way that is consistent with the specific statutes that apply to each grant program because the purpose of each grant program has a nexus to immigration activities, law enforcement, or national security, including preventing and responding to acts of terrorism and extremism, and DHS may tailor the conditions in this section to a specific grant program. DHS will clarify in the grant documents whether and how the terms in this section apply to each grant.<br><br>(2) Where applicable, recipients and subrecipients of funds under an award must agree that they will comply with the following requirements related to coordination and cooperation with DHS and immigration officials:<br><br>(a) They must comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with DHS regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. §§ 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: 1) sending such information to, or requesting or receiving such information from, Federal immigration officials; 2) maintaining such information; or 3) exchanging such information with any other Federal, State, or local government entity;<br><br>(b) They must comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. | 8 U.S.C. §§ 1373 and 1644<br><br>8 U.S.C. § 1324<br><br>28 U.S.C. § 1746 |

| | | |
|---|---|---|
| | § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes;<br><br>(c) That they will honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance;<br><br>(d) That they will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien; and<br><br>(e) That they will not leak or otherwise publicize the existence of an immigration enforcement operation.<br><br>(3) The recipient must certify under penalty of perjury pursuant to 28 U.S.C. § 1746 and using a form that is acceptable to DHS, that it will comply with the requirements of this term. Additionally, the recipient agrees that it will require any subrecipients or contractors to certify in the same manner that they will comply with this term prior to providing them with any funding under this award.<br><br>(4) The recipient agrees that compliance with this term is material to the Government's decision to make or continue with this award and that the Department of homeland Security may terminate this grant, or take any other allowable enforcement action, if the recipient fails to comply with this term. | |
| ***CHIPS and Science Act of 2022*** | (1) Recipients of DHS research and development (R&D) awards must report to the DHS Component research program office any finding or determination of sex based and sexual harassment and/or an administrative or disciplinary action taken against principal investigators (PI) or co-investigators (Co-PI) to be completed by an | Pub. L. 117-167 |

| | | |
|---|---|---|
| | authorized organizational representative (AOR) at the recipient institution.<br><br>(2) Notification. An AOR must disclose the following information to agencies within 10 days of the date that the finding is made, or 10 days from when a recipient imposes an administrative action on the reported individual, whichever is sooner. Reports should include:<br><br>(a) Award number,<br><br>(b) Name of PI or Co-PI being reported,<br><br>(c) Awardee name,<br><br>(d) Awardee address,<br><br>(e) AOR name, title, phone, and email address,<br><br>(f) Indication of the report type:<br><br>(i) Finding or determination has been made that the reported individual violated awardee policies or codes of conduct, statutes, or regulations related to sexual harassment, sexual assault, or other forms of harassment, including the date that the finding was made.<br><br>(ii) Imposition of an administrative or disciplinary action by the recipient on the reporting individual related to a finding/determination or an investigation of an alleged violation of recipient policy or codes of conduct, statutes, or regulations, or other forms of harassment.<br><br>(iii) The date and nature of the administrative/disciplinary action, including a basic explanation or description of the event, which should not disclose personally identifiable information regarding any complaints or individuals involved. Any description provided must be consistent with the *Family Educational Rights in Privacy Act*. | |

| | | |
|---|---|---|
| | (3) Definitions.<br><br>(a) An "authorized organizational representative (AOR)" is an administrative official who, on behalf of the proposing institution, is empowered to make certifications and representations and can commit the institution to the conduct of a project that an agency is being asked to support as well as adhere to various agency policies and award requirements.<br><br>(b) "Principal investigators and co-principal investigators" are award personnel supported by a grant, cooperative agreement, or contract under Federal law.<br><br>(c) A "reported individual" refers to recipient personnel who have been reported to a federal agency for potential sexual harassment violations.<br><br>(d) "Sex based harassment" means a form of sex discrimination and includes harassment based on sex, sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity.<br><br>(e) "Sexual harassment" means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when this conduct explicitly or implicitly affects an individual's employment, unreasonably interferes with an individual's work performance, or creates an intimidating, hostile, or offensive work environment, whether such activity is carried out by a supervisor or by a co-worker, volunteer, or contractor. | |
| **Copyright** | Recipients must affix the applicable copyright notices of 17 U.S.C. §§ 401 or 402 to any work first produced under federal awards and also include an acknowledgement that the work was produced under a federal award (including the federal award number and federal awarding agency). As detailed in 2 C.F.R. § 200.315, a federal awarding agency reserves a royalty-free, nonexclusive, and irrevocable right to reproduce, publish, or otherwise use the work for federal purposes and to authorize others to do so. | 17 U.S.C. §§ 401 or 402<br><br>2 C.F.R. § 200.315 |
| **Debarment and** | Recipients must comply with the non- | 2 C.F.R. Part 180 |

| | | |
|---|---|---|
| **Suspension** | procurement debarment and suspension regulations implementing Executive Orders 12549 and 12689 set forth at 2 C.F.R. Part 180 as implemented by DHS at 2 C.F.R. Part 3000. These regulations prohibit recipients from entering into covered transactions (such as subawards and contracts) with certain parties that are debarred, suspended, or otherwise excluded from or ineligible for participation in federal assistance programs or activities. | 2 C.F.R. Part 3000<br><br>Executive Orders 12549 and 12689 |
| ***Drug Free Workplace Act of 1988*** | Recipients must comply with the *Drug-Free Workplace Act of 1988* and drug-free workplace requirements in Subpart B (or Subpart C, if the recipient is an individual) of 2 C.F.R. Part 3001, which adopts the government-wide implementation of the *Drug-Free Workplace Act of 1988*. | 41 U.S.C. §§ 8101-8106<br><br>2 C.F.R. Part 3001<br><br>2 C.F.R. Part 182 |
| **Duplicative Costs** | Recipients are prohibited from charging any cost to this federal award that will be included as a cost or used to meet cost sharing requirements of any other federal award in either the current or a prior budget period. However, recipients may shift costs that are allowable under two or more federal awards where otherwise permitted by federal statutes, regulations, or the federal award terms and conditions. | 2 C.F.R. § 200.403(f) |
| ***Education Amendments of 1972* (*Equal Opportunity in Education Act*) – Title IX** | Recipients must comply with the requirements of Title IX of the Education Amendments of 1972, Pub. L. 92-318 (codified as amended at 20 U.S.C. § 1681 *et seq.*), which provide that no person in the United States will, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal financial assistance. DHS implementing regulations are codified at 6 C.F.R. Part 17. FEMA's implementing regulations are in 44 C.F.R. Part 19. | Pub. L. 92-318 (codified as amended at 20 U.S.C. § 1681 *et seq.*)<br><br>6 C.F.R. Part 17.<br><br>44 C.F.R. Part 19. |
| ***Energy Policy and Conservation Act of 1975*** | Recipients must comply with the requirements of the *Energy Policy and Conservation Act*, Pub. L. No. 94-163 (1975) (codified as amended at 42 U.S.C. § 6201 *et seq.*), which policies relating to energy efficiency that are defined in the state energy conservation plan issued in compliance with the *Energy Policy and Conservation Act of 1975*. | Pub. L. 94-163 (codified as amended at 42 U.S.C. § 6201 *et seq.*) |
| **Equal Treatment of Faith-Based Organizations** | Recipients must comply with the equal treatment policies and requirements contained in 6 C.F.R. Part 19 and other applicable statutes, regulations, and guidance governing the participations of faith-based organizations in individual DHS programs. It is DHS policy to ensure the equal treatment of faith-based organizations in social service programs | 6 C.F.R. Part 19 |

| | | |
|---|---|---|
| | administered or supported by DHS or its component agencies, enabling those organizations to participate in providing important social services to beneficiaries. | |
| ***False Claims Act* and Program Fraud Civil Remedies** | Recipients must comply with the requirements of the *False Claims Act*, 31 U.S.C. §§ 3729- 3733, which prohibits the submission of false or fraudulent claims for payment to the Federal Government and details the administrative remedies for false claims and statements made. | 31 U.S.C. §§ 3729-3733<br><br>31 U.S.C. §§ 3801-3812 |
| **Federal Anti-Discrimination Laws Material to the Government's Payment Decisions Under the *False Claims Act*** | Recipients must agree that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of 31 U.S.C. § 3729(b)(4) (Definition of "material").<br><br>(1) Definitions. As used in this term –<br><br>(a) DEI means "diversity, equity, and inclusion."<br><br>(b) DEIA means "diversity, equity, inclusion, and accessibility."<br><br>(c) Discriminatory equity ideology has the meaning set forth in Section 2(b) of Executive Order 14190.<br><br>(d) Federal anti-discrimination laws mean Federal civil rights law that protect individual Americans from discrimination on the basis of race, color, sex, religion, and national origin.<br><br>(e) Illegal immigrant means any alien, as defined in 8 U.S.C. § 1101(a)(3), who has no lawful immigration status in the United States.<br><br>(2) Grant award certification.<br><br>(a) By accepting the grant award, recipients are certifying that:<br><br>(i) They do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws; and<br><br>(ii) They do not, and will not during the term of this award, operate any | 31 U.S.C. § 3729(b)(4)<br><br>8 U.S.C. § 1101(a)(3)<br><br>2 C.F.R. § 200.346<br><br>Executive Order 14190 |

| | | |
|---|---|---|
| | program that benefits illegal immigrants or incentivizes illegal immigration.<br><br>(3) DHS reserves the right to suspend payments in whole or in part and/or terminate financial assistance awards if the Secretary of Homeland Security or the Secretary's designee determines that the recipient has violated any provision of subsection (2).<br><br>(4) Upon suspension or termination under subsection (3), all funds received by the recipient shall be deemed to be in excess of the amount that the recipient is determined to be entitled to under the Federal award for purposes of 2 C.F.R. § 200.346. As such, all amounts received will constitute a debt to the Federal Government that may be pursued to the maximum extent permitted by law. | |
| **Federal Debt Status** | All recipients are required to be non-delinquent in their repayment of any federal debt. Examples of relevant debt include delinquent payroll and other taxes, audit disallowances, and benefit overpayments. | OMB Circular A-129 |
| ***Fly America Act*** | Recipients must comply with Preference for U.S. Flag Air Carriers (Certificated Air Carriers List \| US Department of Transportation) for international air transportation of people and property to the extent that such service is available, in accordance with the *International Air Transportation Fair Competitive Practices Act of 1974*, 49 U.S.C. § 40118, and the interpretative guidelines issued by the Comptroller General of the United States in the March 31, 1981, amendment to Comptroller General Decision B-138942. | 49 U.S.C. § 40118<br><br>Amendment to Comptroller General Decision B-138942 |
| ***Hotel and Motel Fire Safety Act of 1990*** | Recipients must ensure that all conference, meeting, convention, or training space funded entirely or in part by federal award funds complies with the fire prevention and control guidelines of Section 6 of the *Hotel and Motel Fire Safety Act of 1990.* | 15 U.S.C. § 2225a |
| ***John S. McCain National Defense Authorization Act of Fiscal Year 2019*** | Recipients, subrecipients, and their contractors and subcontractors are prohibited from obligating or expending federal award funds on certain telecommunications and video surveillance products and contracting with certain entities for national security reasons described in section 889 of the *John S. McCain National Defense Authorization Act for Fiscal Year 2019,* 2 C.F.R. §§ 200.216, 200.327, 200.471, and Appendix II to 2 C.F.R. Part 200. | Pub. L. 115-232 (2018)<br><br>2 C.F.R. §§ 200.216, 200.327, 200.471<br><br>Appendix II to 2 C.F.R. Part 200 |
| **Lobbying** | None of the funds provided under a federal | 31 U.S.C. § 1352 |

| | | |
|---|---|---|
| **Prohibitions** | award may be expended by the recipient to pay any person to influence, or attempt to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any federal action related to a federal award or contract, including any extension, continuation, renewal, amendment, or modification. Recipients must file a lobbying certification form found on Grants.gov Lobbying Form as described in Appendix A to 6 C.F.R. Part 9, and file a lobbying disclosure form as described in Appendix B to 6 C.F.R. Part 9 found on Grants.gov as the Disclosure of Lobbying Activities (SF-LLL). | 6 C.F.R. Part 9<br><br>Appendix A to 6 C.F.R. Part 9<br><br>Appendix B to 6 C.F.R. Part 9 |
| ***National Environmental Policy Act*** | Recipients must comply with the requirements of the *National Environmental Policy Act of 1969*, (NEPA). | Pub. L. 91-190 (1970) (codified as amended at 42 U.S.C. § 4321 *et seq.*) |
| **National Security Presidential Memorandum-33 (NSPM-33) and Provisions of the *Science and CHIPS Act of 2022*** | (1) Recipient research institutions ("covered institutions") must comply with the requirements in NSPM-33 and provisions of Pub. L.117-167, Section 10254 (codified at 42 U.S.C. § 18951) certifying that the institution has established and operates a research security program that includes elements relating to:<br><br>(a) cybersecurity;<br><br>(b) foreign travel security;<br><br>(c) research security training; and<br><br>(d) export control training, as appropriate.<br><br>(2) Definition. "Covered institutions" means recipient research institutions receiving federal Research and Development (R&D) science and engineering support "in excess of $50 million per year." | Pub. L. 117-167, Section 10254 (codified at 42 U.S.C. § 18951) |
| **Patents and Intellectual Property Rights** | Recipients are subject to the *Bayh-Dole Act*, 35 U.S.C. § 200 *et seq*. and applicable regulations governing inventions and patents, including the regulations issued by the Department of Commerce at 37 C.F.R. Part 401 (Rights to Inventions Made by Nonprofit Organizations and Small Business Firms under Government Awards, Contracts, and Cooperative Agreements) and the standard patent rights clause set forth at 37 C.F.R. § 401.14. | 35 U.S.C. § 200 *et seq.*<br><br>37 C.F.R. § 401.14 |
| **Procurement of Recovered Materials** | States, political subdivisions of states, and their contractors must comply with Section 6002 of the | Pub. L. 89-272 (1965) (codified as |

| | | |
|---|---|---|
| | *Solid Waste Disposal Act*, Pub. L. 89-272 (1965) (codified as amended by the *Resource Conservation and Recovery Act* at 42 U.S.C. § 6962) and 2 C.F.R. § 200.323. The requirements of Section 6002 include procuring only items designated in guidelines of the Environmental Protection Agency (EPA) at 40 C.F.R. Part 247 that contain the highest percentage of recovered materials practicable, consistent with maintaining a satisfactory level of competition. | amended by the *Resource Conservation and Recovery Act* at 42 U.S.C. § 6962)<br><br>40 C.F.R. Part 247<br><br>2 C.F.R. § 200.323 |
| ***Rehabilitation Act of 1973*** | Recipients must comply with the requirements of Section 504 of the *Rehabilitation Act of 1973*, Pub. L. 93-112 (codified as amended at 29 U.S.C. § 794), which provides that no otherwise qualified handicapped individuals in the United States will, solely by reason of the handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. | Pub. L. 93-112 (codified as amended at 29 U.S.C. § 794) |
| **Reporting Recipient Integrity and Performance Matters** | If the total value of any currently active grants, cooperative agreements, and procurement contracts from all federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of the federal award, then the recipient must comply with the requirements set forth in the government-wide federal award term and condition for Recipient Integrity and Performance Matters in 2 C.F.R. Part 200, Appendix XII, the full text of which is incorporated by reference. | 2 C.F.R. Part 200, Appendix XII |
| **Reporting Subawards and Executive Compensation** | For federal awards that total or exceed $30,000, recipients are required to comply with the government-wide federal award term and condition on Reporting Subawards and Executive Compensation set forth at 2 C.F.R. Part 170, Appendix A, the full text of which is incorporated by reference. | 2 C.F.R. Part 170, Appendix A |
| **Required Use of American Iron, Steel, Manufactured Products, and Construction Materials** | (1) Recipients of a federal award from a financial assistance program that provides funding for infrastructure are hereby notified that none of the funds provided under this federal award may be used for a project for infrastructure unless:<br><br>(a) all iron and steel used in the project are produced in the United States—this means all manufacturing processes, from the initial melting stage through the application of coatings, occurred in the United States;<br><br>(b) all manufactured products used in the project are produced in the United | 2 CFR Part 184 |

| | | |
|---|---|---|
| | States—this means the manufactured product was manufactured in the United States; and the cost of the components of the manufactured product that are mined, produced, or manufactured in the United States is greater than 55 percent of the total cost of all components of the manufactured product, unless another standard for determining the minimum amount of domestic content of the manufactured product has been established under applicable law or regulation; and<br><br>(c) all construction materials are manufactured in the United States—this means that all manufacturing processes for the construction material occurred in the United States.<br><br>(2) The Buy America preference only applies to articles, materials, and supplies that are consumed in, incorporated into, or affixed to an infrastructure project. As such, it does not apply to tools, equipment, and supplies, such as temporary scaffolding, brought to the construction site and removed at or before the completion of the infrastructure project. Nor does a Buy America preference apply to equipment and furnishings, such as movable chairs, desks, and portable computer equipment, that are used at or within the finished infrastructure project but are not an integral part of the structure or permanently affixed to the infrastructure project.<br><br>(3) *Waivers.* When necessary, recipients may apply for, and the agency may grant, a waiver from these requirements. The agency should notify the recipient for information on the process for requesting a waiver from these requirements.<br><br>a. When the Federal agency has determined that one of the following exceptions applies, the federal awarding official may waive the application of the domestic content procurement preference in any case in which the agency determines that: | |

| | | |
|---|---|---|
| | i. applying the domestic content procurement preference would be inconsistent with the public interest;<br><br>ii. the types of iron, steel, manufactured products, or construction materials are not produced in the United States in sufficient and reasonably available quantities or of a satisfactory quality; or<br><br>iii. the inclusion of iron, steel, manufactured products, or construction materials produced in the United States will increase the cost of the overall project by more than 25%.<br><br>b. A request to waive the application of the domestic content procurement preference must be in writing. The agency will provide instructions on the format, contents, and supporting materials required for any waiver request. Waiver requests are subject to public comment periods of no less than 15 days and must be reviewed by the Made in America Office.<br><br>c. There may be instances where a federal award qualifies, in whole or in part, for an existing waiver described at "Buy America" Preference in FEMA Financial Assistance Programs for Infrastructure \| FEMA.gov.<br><br>(4) *Definitions*. The definitions applicable to this term are set forth at 2 C.F.R. § 184.3, the full text of which is incorporated by reference. | |
| **Subrecipient Monitoring and Management** | Pass-through entities must comply with the requirements for subrecipient monitoring and management. | 2 C.F.R. §§ 200.331-333 |
| **System for Award Management and Unique Entity Identifier Requirements** | Recipients are required to comply with the requirements set forth in the governmentwide federal award term and condition regarding the System for Award Management and Unique Entity Identifier Requirements in 2 C.F.R. Part 25, Appendix A, the full text of which is incorporated reference. | 2 C.F.R. Part 25, Appendix A |
| **Termination of a Federal Award** | (1) By DHS. DHS may terminate a federal award, in whole or in part, for the following reasons:<br><br>(a) If the recipient fails to comply with the terms and conditions of the federal award; | 2 C.F.R. § 200.340<br><br>2 C.F.R. §§ 200.344-200.345<br><br>Pub. L. 116-283 |

| | | |
|---|---|---|
| | (b) With the consent of the recipient, in which case the parties must agree upon the termination conditions, including the effective date, and in the case of partial termination, the portion to be terminated;<br><br>(c) Pursuant to the terms and conditions of the federal award; or<br><br>(d) For convenience, pursuant to Executive Order 14332, Improving Oversight of Federal Grantmaking, including when the award no longer advances agency priorities or the national interest, but subject to appropriate exceptions, including agreements entered into in furtherance of international trade agreements or those awarded by the Department of Commerce under title XCIX of the *William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021* (Public Law 116-283), the *CHIPS and Science Act of 2022* (Public Law 117-167), or Division F of the *Infrastructure Investment and Jobs Act* (Public Law 117-58).<br><br>(2) By the Recipient. The recipient may terminate the federal award, in whole or in part, by sending written notification to DHS stating the reasons for such termination, the effective date, and in the case of partial termination, the portion to be terminated. However, if DHS determines that the remaining portion of the federal award will not accomplish the purposes for which the federal award was made, DHS may terminate the federal award in its entirety.<br><br>(3) Notice. Either party will provide written notice of intent to terminate for any reason to the other party no less than 30 calendar days prior to the effective date of the termination.<br><br>(4) Compliance with Closeout Requirements for Terminated Awards. The recipient must continue to comply with closeout requirements in 2 C.F.R. §§ 200.344-200.345 after an award is terminated. | Pub. L. 117-167<br><br>Pub. L. 117-58, Division F<br><br>Executive Order 14332 |
| ***Trafficking Victims Protection Act of 2000*** | Recipients must comply with the requirements of the government-wide federal award term and condition which implements *Trafficking Victims Protection Act of 2000*, Pub. L. 106-386, § 106 (codified as amended at 22 U.S.C. § 7104). The | Pub. L. 106-386, § 106 (codified as amended at 22 U.S.C. § 7104) |

| | | |
|---|---|---|
| | federal award term and condition is in 2 C.F.R. § 175.105, the full text of which is incorporated by reference. | 2 C.F.R. § 175.105 |
| **Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (*USA PATRIOT Act of 2001*)** | Recipients must comply with the requirements of Pub. L. 107-56, Section 817 of the *USA PATRIOT Act*, which amends 18 U.S.C. §§ 175–175c. | Pub. L. 107-56<br><br>18 U.S.C. §§ 175-175c |
| **Whistleblower Protection Act** | Recipients must comply with the statutory requirements for whistleblower protections in 10 U.S.C § 4701 and 41 U.S.C. § 4712. | 10 U.S.C § 4701<br><br>41 U.S.C. § 4712 |

## 3-2. Executive Orders

| Executive Order | Terms and Conditions |
|---|---|
| **All Executive Orders Related to Grants** | Presidential Executive Orders. Recipients must comply with the requirements and actions of Presidential executive orders related to grants (also known as federal assistance and financial assistance), including those published after the date of this publication, the full text of which are incorporated by reference. |
| **Executive Order 14332, Improving Oversight of Federal Grantmaking** | Draw Down of Funds. Recipients are prohibited from directly drawing down general grant funds for specific projects without the affirmative authorization of DHS. Recipients must provide written payment justification, with specificity, for requests for each drawdown. |
| **Executive Order 13513, Federal Leadership on Reducing Text Messaging While Driving** | Federal Leadership on Reducing Text Messaging While Driving. Recipients are encouraged to adopt and enforce policies that ban text messaging while driving recipient-owned, recipient-rented, or privately owned vehicles when on official government business or when performing any work for or on behalf of the Federal Government. Recipients are also encouraged to conduct the initiatives of the type described in Section 3(a) of Executive Order 13513. |
| **Executive Order 13224, Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism** | Terrorist Financing. Recipients must comply with Executive Order 13224 and applicable statutory prohibitions on transactions with, and the provisions of resources and support to, individuals and organizations associated with terrorism. Recipients are legally responsible for ensuring compliance with the Executive Order and laws. |

### 3-3. DHS Policy

| DHS Policy | Terms and Conditions |
|---|---|
| **Acknowledgement of Federal Funding from DHS** | Recipients must acknowledge their use of federal award funding when issuing statements, press releases, requests for proposal, bid invitations, and other documents describing projects or programs funded in whole or in part with federal award funds. |
| **Activities Conducted Abroad** | Recipients must coordinate with appropriate government authorities when performing project activities outside the United States obtain all appropriate licenses, permits, or approvals. |
| **Collection and Use of Personally Identifiable Information** | (1) Recipients who collect personally identifiable information (PII) as part of carrying out the scope of work under a federal award are required to have a publicly available privacy policy that describes standards on the usage and maintenance of the PII they collect.<br><br>(2) Definition. DHS defines "PII" as any information that permits the identity of an individual to be directly or indirectly inferred, including any information that is linked or linkable to that individual. Recipients may also find the DHS Privacy Impact Assessments: Privacy Guidance and Privacy Template as useful resources respectively. |
| **Non-Supplanting Requirements** | Recipients of federal awards under programs that prohibit supplanting by law must ensure that federal funds supplement but do not supplant non-federal funds that, in the absence of such federal funds, would otherwise have been made available for the same purpose. |
| **Notice of Funding Opportunity (NOFO) Requirements** | All the instructions, guidance, limitations, scope of work, and other conditions set forth in the NOFO for this federal award are incorporated by reference. All recipients must comply with any such requirements set forth in the NOFO. If a condition of the NOFO is inconsistent with these terms and conditions and any such terms of the federal award, the condition in the NOFO shall be invalid to the extent of the inconsistency. The remainder of that condition and all other conditions set forth in the NOFO shall remain in effect. |
| **SAFECOM** | Recipients receiving federal awards made under DHS programs that provide emergency communication equipment and its related activities must comply with the SAFECOM Guidance for Emergency Communication Grants, including provisions on technical standards that ensure and enhance interoperable communications. The SAFECOM Guidance is updated annually and can be found at Funding and Sustainment \| CISA. |
| **Use of DHS Seal, Logo, and Flags** | Recipients must obtain written permission from DHS prior to using the DHS seals, logos, crests, or reproductions of flags, or likenesses of DHS agency officials. This includes use of DHS component (e.g., FEMA, CISA, etc.) seals, logos, crests, or reproductions of flags, or likenesses of component officials. |