UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF CHICAGO, *et al.*, Plaintiffs, | ) | No. 25 C 12765 |
| v. | ) | Judge Shah |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Introduction**

The Department of Homeland Security requires that recipients of federal grants comply with certain conditions. The requirements are authorized by statute and are not unconstitutional or arbitrary and capricious. The court should award summary judgment to defendants.

**Background**

The president has issued several executive orders setting forth policy priorities. One is Executive Order 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025), *Ending Radical and Wasteful Government DEI Programs and Preferencing*. The order's stated purpose is to eliminate "illegal and immoral discrimination programs, going by the name 'diversity, equity, and inclusion' (DEI)," in the government. *Id*. § 1. It instructs every agency and department to "terminate, to the maximum extent allowed by law," grants or contracts that are "equity-related." *Id*. § 2(b)(i).

Another is Executive Order 14,173, 90 Fed. Reg. 8633, titled *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*. That order's stated purpose is to "enforc[e] our civil-rights laws" by "ending illegal preferences and discrimination." *Id*. § 1. It contains a certification

provision instructing agency heads to "include in every contract or grant award" a requirement that the recipient "certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws" because that certification is material to the government's payment decisions. *Id.* § 3(b)(iv)(A)-(B).

Consistent with those two executive orders, DHS revised its standard terms and conditions for all new federal awards of financial assistance for Fiscal Years 2025 and 2026. Dkt. 128 (Second Am. Compl.) ¶ 7. Relevant here, the terms and conditions require recipients to agree that they will comply with two requirements.

*First*, the Standard Conditions say that recipients "must comply with all applicable Federal anti-discrimination laws," including by not "operat[ing] any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination law" or by engaging in "a discriminatory prohibited boycott." *Id.* at Ex. A § C.XVII(2)(a)(i)-(ii). Plaintiffs refer to this as the "Discrimination Condition," Dkt. 128 ¶ 8, though it might be more accurately called the "Anti-Discrimination Condition," since its stated purpose is to end discrimination.

*Second*, the Standard Conditions say that recipients "must comply with the requirements of Presidential Executive Orders related to grants." Dkt. 128 at Ex. A § C.XXXI. The parties are calling this the "EO Condition."

Plaintiffs are public municipalities that allegedly "have received or been awarded, or anticipate receiving or being awarded, grants or subgrants under one or more" grant programs administered by DHS (mostly by FEMA). Dkt. 128 (Second Am. Compl.) ¶¶ 16-30, 33, 44. They bring this suit under the theory that the conditions are unlawful and violate the separation of powers principle, the Spending Clause, and the APA. *Id.* ¶¶ 296-367. The court granted a preliminary injunction enjoining both conditions. Dkt. 72. Defendants appealed, Dkt. 86, but that appeal has

been stayed pending a resolution of *Chicago Women in Trades v. Trump*, No. 25-2144 (7th Cir.). After plaintiffs amended their complaint to add new plaintiffs, the court granted a second preliminary injunction. Dkt. 93, 111. Plaintiffs then filed a second amended complaint, adding more plaintiffs and challenging new "Termination Conditions" for FY 2026. Dkt. 128 ¶¶ 12, 273.

## Argument

The court lacks jurisdiction, plaintiffs lack standing, and on the merits DHS acted within its statutory and regulatory authority and did not violate the APA.

### I. No Jurisdiction

Generally, federal district courts lack jurisdiction to "order the payment of money under" the APA, because the federal government's waiver of sovereign immunity for claims seeking non-monetary relief "does not extend to orders to enforce a contractual obligation to pay money." *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (quotation omitted). The APA's limited waiver also does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). The Tucker Act is one such statute that "grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *California*, 604 U.S. at 651 (quoting 28 U.S.C. § 1491(a)(1)). That Act provides that the "Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1), and it "impliedly forbids" bringing "contract actions" against "the government in federal district court." *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) (citation omitted). This barrier ensures that contract claims against the United States are challenged in a court that has "unique

expertise." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

The Supreme Court has emphasized the exclusive scope of the Court of Federal Claims' Tucker Act jurisdiction. The Court recently stayed an order to make payments based on grants, because the federal government was likely to succeed in showing that the district court lacked jurisdiction to bar the termination of education-related grants, since the injunction was effectively an order "to enforce a contractual obligation to pay money." *California*, 604 U.S. at 651. The Court also stayed a judgment vacating the termination of grants, because the APA's limited waiver does not provide district courts with jurisdiction "to order relief designed to enforce any obligation to pay money pursuant to those grants." *NIH v. Am. Pub. Health Ass'n*, 145 S.Ct. 2658 (2025) (quotation omitted). This court should follow these stay rulings to the extent that plaintiffs are seeking to enforce an obligation to pay money to currently held grants. (Baltimore allegedly has already accepted its grant award (Dkt. 128 ¶ 165), making its desired relief fundamentally contractual.) As in *California* and *NIH*, any entitlement that plaintiffs might have to the funding they seek to preserve arises solely on the basis of their grant awards; they have no statutory or constitutional right to the funding. The claims are contractual and are not properly cloaked as an effort to seek equitable relief under the Constitution or APA. *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (district court lacks jurisdiction over case that "is in its essence contractual") (quotation omitted); *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) (presence of constitutional issue "does not erase the jurisdiction of the Court of Federal Claims").

## II. No Standing

Plaintiffs also lack standing. To have Article III standing, a plaintiff must allege an injury in fact that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409

(2013) (quotation omitted). The injury "must be 'concrete and particularized,' and 'actual or imminent, not conjectural or hypothetical.'" *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Here, the Anti-Discrimination Condition has not caused plaintiffs any injury in fact, and they do not claim any intent to violate federal anti-discrimination law. *See Speech First*, 968 F.3d at 638 (plaintiff must show "intention to engage in a course of conduct arguably affected by the policy"). To the extent that they believe DHS does not share their understanding of anti-discrimination law, such disagreement would not be redressed by an injunction against the condition.

Plaintiffs also lack standing to challenge the Termination Conditions, but they do not appear to challenge any *actual* terminations—perhaps because the Supreme Court has emphasized that challenges to grant terminations must be brought exclusively in the Court of Federal Claims. *NIH*, 145 S.Ct. 2658. Rather, they allege a "strong interest" in "obtaining clarity regarding their rights." *Id*. ¶ 293. That sounds like a request for an advisory opinion, which courts do not give. A fear of a possible *future* injury is too speculative to provide a basis for standing. For standing, an injury must be "imminent," and although "imminence" is "concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotations omitted). Plaintiffs say that they "expect" to "apply for and receive" future grants but "cannot be certain that they will be able to rely on" them. Dkt. 128 ¶ 295. That sort of conjecture is too speculative to support standing. *Maybe* DHS will award and then terminate a future grant. (Though it is not obvious why DHS would take that inefficient approach.) Or maybe the grants plaintiffs have in mind will not be awarded at all—in which case the Termination Conditions would be irrelevant. Or maybe the

grants will be awarded and retained. Or maybe a future termination will be justified—or maybe not. Whatever may happen, the Supreme Court has been "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Clapper*, 568 U.S. at 413. Plaintiffs would have this court do exactly that, and the court should decline the invitation.

## III. Statutory and Regulatory Authority for Challenged Conditions

On the merits, the challenged conditions are not unlawful. DHS implemented the conditions within its statutory authority and in a manner consistent with past conditions.

### A. Anti-Discrimination Condition

Title VI of the Civil Rights Act of 1964 requires that recipients of federal assistance must comply with federal anti-discrimination laws. 42 U.S.C. § 2000d. The statute "authorize[s]" and "direct[s]" federal agencies that award federal funds to effectuate section 2000d by issuing rules and regulations, *id*. § 2000d-1, meaning that DHS is required to ensure that all grant awards comply with federal law. DHS must administer federal awards in a manner that ensures "that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. § 200.300(a). All requirements must then be communicated to recipients and incorporated into the awards directly or by reference in the terms and conditions of the federal award. *Id*.

DHS did that here. It provided terms and conditions and specifically told recipients of federal funds that they "must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4)," including by not "operat[ing] any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws" or "engag[ing] in" any "discriminatory prohibited

boycott." Dkt. 128 at Ex. A § C.XVII. DHS then incorporated by reference EO 14,190, which provides examples of illegal discrimination, including programs that stereotype or demean people on the basis of race, color, sex, or national origin. EO 14,190 § 2(b). The provisions make plain that recipients cannot violate federal anti-discrimination laws, including by using protected characteristics "as a stereotype or negative." *E.g., Students for Fair Admissions v. Harvard*, 600 U.S. 181, 213 (2023) (race can "never" be used as "a stereotype or negative").

There is nothing novel about requiring recipients of federal funding to certify that any programs they run comply with federal anti-discrimination law. Such a certification "does not place upon a recipient any unanticipated burdens because any recipient must anticipate having to comply with the law." *Guardians Ass'n v. Civ. Serv. Comm'n*, 463 U.S. 582, 629-30 (1983) (Marshall, J., dissenting). Indeed, another court rejected a similar challenge to a DEI certification program, finding that the plaintiffs had not shown that they were likely to succeed because they had not shown "that the provision goes beyond targeting DEI programs that violate federal antidiscrimination law." *S.F. A.I.D.S. Found. v. Trump*, 786 F.Supp.3d 1184, 1200, 1221-22 (N.D. Cal. 2025), *appeal filed*, No. 25-4988 (9th Cir. 2025). And the Fourth Circuit unanimously granted the government's motion for a stay in a case challenging Executive Order 14,173, which directs federal agencies to require grant recipients to certify that they do not operate unlawful DEI programs. *See* Order, *National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025); *see also County of King v. Turner*, 2026 WL 2489361, *7 (9th Cir. Aug. 25, 2026) (finding "nothing wrong with conditioning grant funds on assurance that recipients" will implement funded programs "in a non-discriminatory manner").

Further, the Anti-Discrimination Condition simply requires recipients to certify their compliance with existing law. Plaintiffs' incorrect premise is that grantees are required to violate

anti-discrimination laws by complying with the Standard Conditions. But they are not asked to sign on to the administration's policy preferences or even its *views* about the proper interpretation of federal anti-discrimination laws. All they must do is agree not to violate the laws currently in place. And plaintiffs cannot show that they actually disagree with DHS about how the federal anti-discrimination laws actually apply to any particular set of facts. *See S.F. A.I.D.S. Found.*, 786 F.Supp.3d at 1221 ("Plaintiffs have not provided sufficient evidence that the government has enforced or plans to enforce the Certification Provision in a way that implicates DEI programs beyond those that 'violate any applicable Federal anti-discrimination law.'").

**1. No Separation of Powers Violation**

The Anti-Discrimination Condition does not violate any separation-of-powers principles. Plaintiffs' claim that no term of the relevant grant-related statutes authorizes DHS to impose the challenged conditions is not a constitutional claim, and the APA provides a statutory path for judicial review. In any case, DHS is authorized and indeed is *required* to include conditions to ensure that recipients comply with federal anti-discrimination laws. 2 C.F.R. § 200.300(a).

*First*, *Dalton v. Specter*, 511 U.S. 462 (1994), forecloses plaintiffs' ability to raise statutory arguments with constitutional dressing. The Court reversed a circuit court that had held "that whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id*. at 471. The Court explained that its cases "do not support the proposition that every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id*. at 472. Rather, the Court has "often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id*. So claims "simply alleging that the President [or another executive officer] has exceeded his statutory authority are not 'constitutional' claims,

subject to judicial review." *Id*. at 473; *New York v. NSF*, 793 F.Supp.3d 562, 606 (S.D.N.Y. Aug. 1, 2025) (challenge to directives and grants was statutory, not constitutional, under *Dalton*).

*Second*, even if the constitutional claim were cognizable, the APA provides a path of judicial review. *NRC v. Texas*, 605 U.S. 665 (2025). Non-statutory review under the court's equity power provides a "catch-all remedy" only when "no statute specifies a path of judicial review." *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 662 (7th Cir. 1995) (emphasis added). Because non-statutory review "could become an easy end-run around the limitations" of "judicial-review statutes," the Court has "strictly limited" it. *NRC*, 605 U.S. at 681. A non-statutory review claim "is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Id.* at 681-2. Non-statutory review is "unavailable if, as is usually the case, a statutory review scheme provides . . . a meaningful and adequate opportunity for judicial review, or if a statutory review scheme forecloses all other forms of judicial review." *Id*. at 681 (quotation omitted).

Here, a statutory path of judicial review under the APA exists. *Puerto Rico v. United States*, 490 F.3d 50 (1st Cir. 2007). The APA allows plaintiffs seeking non-monetary relief to seek "judicial review" on whether final agency action and action leading up to it are "contrary to constitutional rights." 5 U.S.C. §§ 702, 704, 706(2)(B). But if "the APA" can "provide adequate relief," as the APA could here, then "an equitable remedy via non-statutory review ought not to be available." 33 Fed. Prac. & Proc. Judicial Review § 8307 (2d ed.) (May 22, 2025 update); *Ctr. for Biological Diversity*, 453 F.Supp.3d 11, 48 (D.D.C. Apr. 2, 2020) (plaintiff cannot bring "an equitable claim when a statutory cause of action is available" under APA).

*Finally*, plaintiff's separation-of-powers claim fails on the merits because DHS fully complied with the relevant governing statutes by including the Anti-Discrimination Condition in its grant terms and conditions. Indeed, DHS is *required* to include conditions to ensure that

recipients comply with anti-discrimination law. *See* 2 C.F.R. § 200.300(a). That Congress did not specifically spell out that DHS must enforce anti-discrimination laws in each statute governing grant programs does not mean DHS is not required to—or does not have the authority to—ensure that recipients follow those laws. The requirement that recipients of federal funding follow the law is not new. *Guardians*, 463 U.S. at 629-30 (Marshall, J., dissenting). Federal agencies have required recipients to certify their compliance with federal laws—including anti-discrimination laws—for decades. *Id*. Here, the Anti-Discrimination Condition requires recipients to certify that they are honoring their preexisting obligation to follow the law with respect to DEI programs—a limitation that is merely narrower than routine compliance-with-all-laws certifications, which plaintiffs do not argue violates separation-of-powers principles. (The same analysis applies to plaintiffs' *ultra vires* claims: the claims fail because the APA provides a path for judicial review, and DHS has authority to include the challenged conditions.)

**2. No Spending Clause Violation**

The Constitution's Spending Clause, U.S. Const. art. I, § 8, cl. 1, does not apply because it limits only Congress's power to legislate and has no application to Executive Branch decisions about how to expend congressionally appropriated funds. *See Bd. of Educ. for the Silver Consol. Schs. v. McMahon*, 2025 WL 2017177, *10 (D.N.M. July 18, 2025) (plaintiffs cannot state claim under Spending Clause without alleging congressional action, because clause "is only implicated when Congress imposes a spending or funding condition") (quotation omitted). And even if the Spending Clause applied, plaintiffs' challenge would still fail because the condition is unambiguous and relates to the general purpose of enforcing anti-discrimination law.

The Spending Clause requires statutes to be "in pursuit of the general welfare" and "unambiguous, clearly communicating" the consequences of "participation in the federally funded

scheme." *Mayweathers v. Newland*, 314 F.3d 1062, 1066 (9th Cir. 2022). The condition must "bear *some relationship* to the purpose of the federal spending," *New York v. United States*, 505 U.S. 144 (1992), which is as a "low-threshold" test. *Cal. ex rel. Becerra v. Sessions*, 284 F.Supp.3d 1015, 1034 (N.D. Cal. 2018). Congress may "further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (quotation omitted).

Here, the Anti-Discrimination Condition is unambiguous, requiring compliance "with all applicable Federal anti-discrimination laws," including when operating "any programs that advance DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws" or engaging in a "discriminatory prohibited boycott." Dkt. 128 at Ex A § C.XVII(2)(a)(i)-(ii). To comply with the Spending Clause's clear notice requirement, Congress need only make clear that acceptance of funds obligates States to comply with a condition. *Pennhurst State v. Halderman*, 451 U.S. 1, 18 (1981). A State's obligations under a Spending Clause program may be "largely indeterminate," as long as Congress gives "clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with" the condition. *Id*. at 24-25. States make an "informed choice" when the federal government simply makes clear that acceptance of federal money obligates the States to comply with a condition. *Id*. at 25. Indeed, a statute complies with the Spending Clause when its "intention to impose a condition is expressed clearly," even though the precise operation of a funding condition "is perhaps unpredictable." *Mayweathers*, 314 F.3d at 1067. A statute need not "list every factual instance" in which a funding recipient "will fail to comply with a condition," because requiring such specificity "would prove too onerous, and perhaps, impossible." *Id*.

Here, DHS's requirement that recipients certify that any DEI programs they operate

comply with federal anti-discrimination law cannot reasonably be viewed as impermissible; it is subsumed within the broader certification prohibiting funding recipients from operating *any* programs that violate federal anti-discrimination law. Plaintiffs' position that the provision is ambiguous ignores both the Supreme Court—which recently reinforced longstanding precedent that stereotyping and discrimination against some races for the benefit of other races are illegal, *Students for Fair Admissions*, 600 U.S. at 211-12—and Congress's express requirement for recipients to comply with federal anti-discrimination law and for agencies to effectuate that law when awarding federal funding. 42 U.S.C. §§ 2000d, 2000d-1. The condition is also reasonably related to the expenditure's purpose. The reasonable-relation requirement is a "low-threshold" test, *Becerra*, 284 F.Supp.3d at 1034, and is "not demanding." *L.A. v. Barr*, 929 F.3d 1163, 1175 (9th Cir. 2019). The Supreme Court "has never struck down a condition on federal grants based on th[e] relatedness prong." *Id*. Agencies have long applied grant conditions like the Anti-Discrimination Condition to further all types of purposes and objectives. *E.g.*, 2 C.F.R. § 200.303(b) (requiring all grant recipients to comply with Constitution and federal statutes and regulations). The conditions simply prevent the expenditure of federal funds on activities that violate the law. *See New York v. DOJ*, 951 F.3d 84, 107 (2d Cir. 2020) ("the idea of States and localities seeking federal funds to enforce their own laws while themselves hampering the enforcement of federal laws, or worse, violating those laws" is "disquieting").

**B. EO Condition**

DHS included within its Standard Condition a requirement that all recipients comply with all executive orders relating to grants only. Dkt. 128 at Ex. A § C.XXXI. The condition is reasonable and merely requires recipients to confirm compliance with executive orders that relate to grants that recipients voluntarily agree to receive.

### 1. No Separation of Powers Violation

As with the Anti-Discrimination Condition, plaintiffs' challenge to DHS's ability to impose the EO Condition is a statutory claim disguised as a constitutional one. The claim fails on that basis, for the reasons explained above, and even if plaintiffs did have a constitutional claim, it would be precluded by the APA's statutory path for judicial review, again as explained above.

Regardless, DHS is *required* to incorporate into the terms of its grants "national policy requirements," including those flowing from executive orders. 2 C.F.R. § 200.211(c)(1)(ii); *see also* 2 C.F.R. § 200.300. DHS has applied similar conditions for several years, and the EO Condition is not even new: in 2021, 2022, and 2023, DHS's Standard Conditions required recipients to follow "relevant Executive Guidance." *See* Dkt. 62 at 19 n.5.

### 2. No Spending Clause Violation

The EO Condition does not violate the Spending Clause; it is both unambiguous and related to the purpose of the grants. Like prior conditions, the EO Condition merely requires plaintiffs to comply with executive orders in the same manner as they would have to follow federal statutes or regulations. *See Mayweathers*, 314 F.3d at 1067. The condition passes the "low-threshold" test of being reasonably related to the purpose of expenditure. *See Becerra*, 284 F.Supp.3d at 1034. DHS is required to ensure that all grants comply with federal law, and the EO Condition does that.

## C. Termination Conditions

The Termination Conditions are not unlawful, either. Courts have long recognized that statutory authority granting an agency discretion to establish or administer a federal program ordinarily encompasses some authority to discontinue it. *California Sea Urchin Comm'n v. Bean*, 883 F.3d 1173, 1184 (9th Cir. 2018) ("[W]here the agency has discretion to implement an experimental program, it can reasonably interpret the statute to allow it to terminate that program

if the statute's purpose is no longer being served."); *Penn. v. Lynn*, 501 F.2d 848, 855-56 (D.C. Cir. 1974) (HUD has discretion to suspend programs where it as "adequate reason to believe that they are not serving Congress's purpose"). Moreover, 2 C.F.R. § 200.340(a)(4) expressly provides that an agency may terminate an award "pursuant to the terms and conditions of the Federal award, including . . . if an award no longer effectuates the program goals or agency priorities." So DHS simply did what federal regulation contemplates.

## IV. No APA Violation

Plaintiffs' claims are no more cognizable when framed as APA violations.

### A. Non-Reviewability of Discretionary Grants

Seven of the grants in question—abbreviated as HMGP, SAFER, AFG, FP&S, TSGP, PSGP, and STC—are discretionary, and there are no standards that the court could apply to review the application of the Anti-Discrimination or EO Condition for a discretionary grant. Agencies are free to reject applications for discretionary grants. Before "any review at all may be had, a party must first clear the hurdle of § 701(a)," *Heckler v. Chaney*, 470 U.S. 821, 828 (1985), which precludes review under the APA if the challenged action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). In such a case, the statute "can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely." *Heckler*, 470 U.S. at 830.

An agency's allocation of funds is presumptively committed to agency discretion because "very point" is "to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way," which is why grant-award decisions are presumptively unreviewable. *Lincoln v. Virgil*, 508 U.S. 182, 191-92 (1993). Here, the conditions are unreviewable for the discretionary grants. None of the authorizing statutes limit DHS's discretion to issue funding or forbid DHS from requiring compliance with

federal anti-discrimination law or executive directives. *E.g.*, 15 U.S.C. § 2229(c)(1) (AFG); 42 U.S.C. § 5170c(a) (HMGP). So the decisions are presumptively unreviewable.

**B. Merits**

Even on the merits, the APA claims fail. The conditions' implementation was neither arbitrary nor capricious. Judicial review under the arbitrary-or-capricious standard "is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). All an agency must do is act "within a zone of reasonableness." *Id*. Plaintiffs urge that DHS exceeded its authority to implement the Anti-Discrimination and EO Conditions, but as explained DHS is *required* to enforce federal anti-discrimination laws and has the authority to require funding recipients to follow executive orders. Both fall within the zone of reasonableness. As for the Termination Conditions, it is hard to see how it could be arbitrary and capricious for an agency to reserve the right to terminate grants based on its priorities. Perhaps a *particular* termination of a grant could plausibly be said to be arbitrary and capricious, but the adoption of a rule is not arbitrary and capricious simply because it could potentially be applied in some arbitrary and capricious way at some unknown point in the future.

**Conclusion**

For the above reasons, the court should grant summary judgment in defendants' favor.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: Alex Hartzler
ALEX HARTZLER
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-1390
alex.hartzler@usdoj.gov